**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH BUONAURO, an individual, SAL R. SOTTILE, an individual, and THE BOBBY BUONAURO CLINIC, INC., an Illinois Corporation, | ) ) ) ) |
| Plaintiffs, | ) ) Case No. |
| v. | ) ) |
| CITY OF BERWYN, a Municipal Corporation | ) Jury Demanded ) ) |
| Defendant. | ) |

FILED: NOVEMBER 21, 2008
08CV6687
JUDGE ST. EVE
MAGISTRATE JUDGE ASHMAN
EDA

## COMPLAINT

Plaintiffs, Elizabeth Buonauro, Sal R. Sottile, and The Bobby Buonauro Clinic, Inc., by

their attorneys, Robert A. Carson and Mark E. Abraham of Gould & Ratner LLP, complain of

the defendant City of Berwyn, stating as follows:

1.     This is an action brought pursuant to (1) Title II of the Americans with

Disabilities Act of 1990 (the "**ADA**") , 42 U.S.C. §§ 12131-12134, (2) Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794 (a) (the "**Rehab Act**"), (3) Section 1983 of the Civil

Rights Act of 1871, 42 U.S.C. § 1983, ("**Section 1983**") based on the City's violation of the

Equal Protection Clause, and (4) the laws of the state of Illinois. The Plaintiffs seek, *inter alia*,

declaratory and injunctive relief and damages resulting from the City of Berwyn's conduct in

prohibiting the plaintiffs from opening a substance abuse clinic to address and alleviate the needs

of disabled persons who are addicted to alcohol and narcotics.

411743.6

### The Parties

2.      The Plaintiffs, Elizabeth Buonauro ("**Buonauro**") and Sal R. Sotille ("**Sottile**") are individuals who reside together as husband and wife in the City of Berwyn, Illinois.

3.      Plaintiff The Bobby Buonauro Clinic, Inc. (the "**Clinic**") is a corporation organized under the laws of the State of Illinois, and maintains its principal place of business in Evanston, Illinois.

4.      Buonauro is the Executive Director of the Clinic and Sottile is its Assistant Director.

5.      Defendant, City of Berwyn is a municipal corporation whose physical boundaries lie in the southwest suburban area adjacent to Chicago, Illinois, within the Northern Judicial District of Illinois.

6.      This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. Section 1331, as it arises under the laws of the United States, pursuant to 28 U.S.C. § 1343 as it seeks redress for deprivation of equal protection of laws, and with respect to state law claims, supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.      This Court has authority pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure to grant the requested declaratory and other appropriate relief.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b).

9.      Plaintiffs bring this suit on behalf of themselves and also to redress the rights of the disabled drug and alcohol addicted individuals that they serve.

## COMMON ALLEGATIONS

10.     The Clinic has operated a substance abuse clinic since 2002, located at 1029 W. Howard Street, Evanston, Illinois.

11.     The business of the Clinic is to provide counseling and treatment to persons who have histories of alcohol and/or opiate drug dependence and who are addicted to alcohol and/or opiate drugs, such as heroin, Vicodin, Tylenol #3 and #4, morphine, and Oxycodone ("Opioid Drugs").

12.     The Clinic operates as a for profit enterprise, providing service in exchange for fees. The vast majority of the patients of the Clinic pay for services through a health insurance plan.

13.     The patients of the Clinic include opiate addicts, who as part of their treatment receive a regimen of methadone maintenance treatments.

14.     Methadone maintenance treatment ("Opioid Agonist Treatment") is a state and federally regulated and licensed treatment modality. Substance Abuse & Mental Health Services Administration/Center for Substance Abuse Treatment ("SAMHSA/CSAT") regulations that govern the operation of methadone treatment programs describe this treatment modality as "*the medical treatment* of narcotic addiction." 42 C.F.R. Part 8.2.

15.     Under the SAMHSA/CSAT regulations, Opioid Treatment Programs provide medical and rehabilitative services and programs to those disabled individuals suffering from Opioid Addiction. Such treatment normally includes dispensing of Opioid Agonist Treatment together with other medical and rehabilitative services, all under the supervision of licensed physician(s).

16.    As an Opioid Treatment Program ("OTP"), the Clinic maintains a current, valid certification from SAMHSA and, as such, is qualified by the Secretary and the Attorney General under section 303(g)(1) of the Controlled Substances Act (21 U.S.C. 823(g)(1)) to dispense Opioid Drugs in the treatment of Opioid Addiction.

17.    In or about 2007, Elizabeth Buonauro and her husband Sal Sottile conceived a plan to open a new substance abuse clinic in Berwyn, Illinois. They planned to open the facility as a second location for the Clinic (i.e., in addition to its Evanston location), to be managed by Sal Sottile as Assistant Director.

18.    Working together with Buonauro, Sottile determined that Berwyn and its surrounding areas were underserved for substance abuse treatment centers. After months of research and investigation, in January 2008 they identified a location to open the new clinic at 3245 S. Grove Avenue (Suites 104-106), in Berwyn, commonly known as the Oudeh Medical Building.

19.    The proposed location was and is an excellent location to serve and fulfill the need among addicted persons in and around Berwyn, and is in close proximity to MacNeal Hospital. The other tenants in the building are all medical clinics.

20.    On or about January 21, 2008, Sottile approached Mr. Richard Oudeh, the landlord for the Oudeh Medical Building with a proposal to lease the described premises. They reached agreement for a lease, expressly conditioned upon the Clinic obtaining a City of Berwyn business license to operate at said premises.

21.    On January 21, 2008, on behalf of the Clinic, Sottile and Buonauro completed an application for business license from the City of Berwyn.

22.     A City of Berwyn staff person asked Buonauro at the time of the application whether this application was "for a methadone clinic". Buonauro responded in the affirmative, stating in essence methadone treatment is one of the services offered by the Clinic.

23.     On January 24, 2008, the City of Berwyn denied the application for business license, noting that the business required "zoning approval" and further stating "the reason for the this denial is based on our 2005 zoning ordinance, retail overlay district, Section 1258.13", and further stating "because of this regulation, it will be necessary for you to seek a variation from the Berwyn Zoning Board of Appeals."

24.     On January 25, 2008, following the above direction, Sottile sought zoning approval from the Zoning Board of Appeals.

25.     After due public notice, on March 18, 2008 the Zoning Board of Appeals conducted a public hearing and, being fully informed of pertinent details concerning the proposed substance abuse clinic, the Zoning Board of Appeals unanimously recommended approval of the Clinic at the subject location. **See March 18, 2008 Resolution unanimously adopted by the Zoning Board of Appeals, attached as Exhibit A.**

26.     The City of Berwyn City Council placed the matter on its agenda for April 8, 2008. At the April 8, 2008 meeting, the City Council rejected the resolution to permit the Clinic to operate at said premises. With the City Council tied 4-4, Mayor Michael A. O'Connor cast the tie-breaking vote against the resolution.

27.     On information and belief, after the City's Law Department reviewed the propriety of the City's actions, the City remanded the matter to the Zoning Board of Appeals for a determination of use type and upon determination of such type, application of the appropriate standards under the Berwyn Zoning Code.

28.     The City of Berwyn Zoning Code provides as follows:

A.     *Clinic or Medical Health Center*: "Clinic" or "medical health center" means an establishment where patients are admitted for study and treatment by two or more licensed physicians and their professional associates, practicing medicine together. §1240.04 (30).

B.     *Group Medical Center*: "Group Medical Center" means two or more doctors practicing in any branch of patient care such as medical practitioners, general or specialized, including, but not limited to, orthopedic, dental, surgical, chiropractic, ophthalmologic, allergy, internal medicine, cardiovascular, gastroenterological and osteopathic practitioners, sharing the same reception room or other general on-site area, including any one or more of the following:

A.     Practicing as a professional corporation or partnership;

B.     Sharing the profits of the practice;

C.     Sharing an on-site laboratory and/or pharmacy arrangement; and

D.     Sharing an on-site X-ray facility.

§1240.04 (63).

29.     The Zoning Board of Appeals found that the proposed substance abuse clinic met the criteria for a Group Medical Center, and as such, the Clinic should have been approved as a conditional use without reference to the retail overlay district. On information and belief, the Zoning Board of Appeals so informed the City Council. **See June 4, 2008 Letter from Milton Persin to Tom Pavlik, attached as Exhibit B.** The City Council again placed the application on its agenda with proper public notice, for July 8, 2008. On July 8, 2008, the City Council passed a resolution to permit operation of the Clinic at the Oudeh Medical Building, with 4 voting in favor, 2 against, and 2 absent. **See July 8, 2008 Minutes and July 14, 2008 letter from Thomas Pavlik to Milton Persin, attached as Exhibits C and D respectively.**

30.     In the days following the July 8, 2008 approval, Berwyn Mayor Michael A. O'Connor successfully embarked upon a personal and political crusade to organize community

opposition to the Clinic. With his knowledge and complicity, flyers were circulated in the City of Berwyn community calling for a "Community Meeting to discuss proposed methadone clinic in the 3300 block of Grove Avenue" for Wednesday July 16, to be held in a municipal parking lot. True and correct copies of two such flyers are attached as **Group Exhibit E**.

31.     One of the flyers for the July 16 Meeting stated, in part, that "Methadone is an addictive drug used to treat heroin addicts and other drug users… If opened, this Clinic may serve hundreds of heroin addicts and other drug users daily…"

32.     At the "Community Meeting" on July 16, members of city council, including those who were absent for the July 8, 2008 vote, and various community members voiced concerns about bringing drug addicts into the community, perceived hazards to public safety, perceived unhealthy influence on children, potential increase in crime, etc. The gathering developed a "lynch mob mentality" – plaintiff Elizabeth Buonauro attempted to address the gathering and was shouted off the stage.

33.     Mayor Michael A. O'Connor's campaign chairperson announced at the July 16 "community meeting" that the gathering could be considered a "kickoff" for the mayor's re-election campaign. Mayor Michael A. O'Connor is up for re-election in April of 2009.

34.     Although stating on July 13, 2008 that "these types of clinics are necessary but not in the heart of our most important business district," on or about July 18, 2008, Berwyn Mayor Michael A. O'Connor proposed to the City Council an ordinance to place a referendum on the November ballot which would prohibit **all** methadone clinics in the City of Berwyn, further evidencing discriminatory intent. **See July 13, 2008 email from Mayor Michael A. O'Connor and July 18, 2008 communication from Berwyn Mayor Michael A. O'Connor to Members of the City Council, attached as Exhibits J and K respectively.**

7

35.     Community animosity and collective discriminatory intent is evidenced in the

following excerpts from emails and correspondence (**see attached Group Exhibit F**) received

by village officials prior to the next city council meeting to be held on July 22, 2008.

- The clinic will not only treat drug addicts in Berwyn but possibly thousands of others, bringing in a population with a strong tendency to commit crime. This will unavoidably result in an increase in crime… Also how will the community react if one [of] the users of the Methadone Clinic commits a homicide or rape?

- The highly addictive nature of this drug (and heroin) makes people hooked on it desperate to have it, desperate for money to pay for it and thus more likely to impulsively commit crimes like theft and prostitution in order to get it. The highly addictive nature of this drug (and heroin) may make addicts want to live close to their source. I fear that while patients (in large numbers) from other neighborhoods are waiting for their train, they'll take a tour of the Depot District and decide they want to live near their source. The highly addictive nature of the drug (and heroin) make methadone clinics a target market for heroin dealers. I appreciate the anecdotal stories from the parent whose daughter didn't get help and the nurse practitioner who said "If one patient is saved… it will all be worth it." Well, not to me. The overwhelming evidence about these clinics is that they are bad for neighborhoods/communities.

- If Berwyn has junkies, use the money to hire more Police… We don't need any more gangbanger, spraypainters tromping thru Berwyn to get their free drugs.

- …[C]onsider the impact it will have on the residents of this area, our property values, our crime rates, not to mention the safety and security of all residents.

- Do they realize how much crime will be brought into the area?? You are going to have inner city junkies hopping on the Metra and sleeping outside of this place waiting for them to open. Are we going to have to worry about walking through our neighborhood? Where we park our cars? Whether or not we may step on a needle.

- So this Meth lab, will it be close enough for our children to watch as they eat their ice-cream cones from the family ice cream shop […]? When I walk my dog with my children, and we go to the depot district, how should I explain the low life outside? We are trying to clean up Berwyn's image – why don't we work on that, instead of trying to clean up people coming from outside our community?

- Statistics indicate methadone maintenance therapy is not 100% -- it does not work on all – especially those court ordered into treatment, those with multiple addictions, and those unsavory characters who statistically will not succeed in drug treatment into our community. When those who fail treatment turn to illegal

activity to support their addiction, will they return to their home communities which are likely already controlled by gangs or will they look to our community as fresh territory?

- How will you feel when someone you know gets mugged by a desperate addict as they are coming out of the bank with some cash?

- Why don't we just put up a housing project for the addicts to live in while we are it… The idea of a meth clinic being in our family path makes every cell of my body cringe…

- Why are we asking the riff-raff and gangbangers from Chicago and the west side to jump off at our Depot? I can not think of any reason why this would be a good idea…

- It is a fact that when one of these clinics opens up that instead of the drug addicts going home they hang around the clinic or the neighborhood so they don't have to travel back to it, it is a fact that when this done these drug addicts like to look around at houses and see which ones are good targets to get money from for their drugs, since not all of these drug users have insurance that will pay for their drugs…

- If/when this clinic comes to our city, we most definitely will see a rise in crime and I'm sure there will be **A LOT** of unnecessary police hours spent, on these disgusting slime balls… I didn't cause them to do drugs and they are not 'just like you and me'!

- Drug addicts from Chicago taking the train out to Berwyn get their fix, like our image is not bad enough?

36.     Alderman Robert Lovero and Alderman Nona Chapman, who had both voted in

favor of permitting the Clinic at the Oudeh Medical Building at the July 8, 2008 City Council

Meeting acknowledged in correspondence to their constituents that there was no legitimate

reason to deny the Clinic to operate:

> I [Alderman Robert Lovero] voted for the clinic because **legally there was no legitimate reason to deny**. The building they are going in consists of medical related offices and clinics. It will not be generating retail taxes in the district and therefore does not violate the intent of the retail overlay, especially since the whole building is considered a medical clinic. The use is consistent. The zoning board reviewed this petition and after concluding it should be approved, the Council remanded it back for reconsideration. The Executive Secretary of the Board, an attorney and a gentleman who has directed the ZBA for as long as I can

remember, on both occasions determined that the initial denial from the City should never have occurred and **there was no reason to send the matter to zoning in the first place, nor any legal reason to deny the use of this office space by the clinic**. In addition, the circumstances surrounding this applicant, was further incentive for me to not incur yet another lawsuit against the City because of a **total disregard of proper procedure...**

**See July 11, 2008 email from Alderman Lovero to constituent, attached as Exhibit G (emphasis added).**

The owners requested space in a medical office building with related offices and clinics, and yes, it is in the Depot District. The "use" does not violate the intent of the retail overlay, because the whole building is considered medical offices/clinic... The Executive Secretary of the Board, an attorney and a gentleman who has directed the Zoning Board of Appeals for at least 20 years, determined that the initial denial from the City Council should never have occurred. **It should not have gone to zoning in the first place, because there was no legal reason to deny the use of this office space by this clinic**... I [Alderman Nona Chapman] spoke with 3 independent attorneys and asked the hard questions, from my discussion with them, I do not see any way out but to allow this clinic... **I voted for the clinic because legally there was no legitimate reason to deny it.**

**See Letter from Alderman Nona Chapman to Constituents, attached as Exhibit H (emphasis added).**

There was a public hearing @ the Zoning Board of Appeals. It was a 7-0 vote in favor. The City council remanded it back to zoning and were told we basically did not have a chance. We can't afford to waist (sic) hundreds of thousands unless the citizens really care. **How can we win when Zoning approved this issue?** No one came to the Zoning and raised any concerns, it was published and announced... ...[I]f it is better to spend the money for legal action, and try to deny the clinic. I will do so. (Many communities have lost)...

**See email from Alderman Nona Chapman to Constituent, attached as Exhibit I (emphasis added).**

37.     At the next Berwyn City Council meeting, held on July 22, 2008, the minutes

from the immediately preceding July 8 meeting were read, in accordance with normal and

customary practice. Those minutes stated:

The law department submitted a communication regarding the Bobby Buonauro Clinic, 3245 Grove Avenue. After discussion, Chapman made a motion, seconded by Phelan, to concur and approve as recommended by

the zoning board that Conditional Use be granted in this C-2 District thereafter, the motion carried by the following role call: Yeahs: Chapman, Skryd, Phelan, Lovero. Nays: Weiner, Erickson. Excused: Ramos, Day.

38.     Alderman Nona Chapman presented three motions: First to reconsider the above resolution, second to amend the above resolution, and third to deny the request of conditional use to be granted in a C-2 District regarding the Clinic, 3245 Grove Avenue. All three motions were seconded by Alderman Joel Erickson, and the foregoing motions were passed by unanimous roll call vote, without prior notice and without any discussion. Also at the July 22, 2008 Berwyn City Council Meeting, the Mayor formally submitted an Ordinance to Prohibit Methadone Clinics in Berwyn. Alderman Joel Erickson then moved to concur and prepare an advisory referendum for the November 2008 ballot to ban methadone clinics from being considered as "Medical Clinics" and referred the Ordinance and Referendum to the Law Department for drafting. **See July 22, 2008 Minutes from Berwyn City Council Meeting, attached as Exhibit L.**

39.     Commencing in January 2008, and continuing to July 2008, the Clinic has incurred substantial expense in pursuit of its plan to open a new substance abuse clinic at the Oudeh Medical Building, including but not limited to rent on the subject premises, architectural fees and associated expenses to fit the space for use as a substance abuse clinic, legal expense, application fees and publication expenses relating to applications to the City of Berwyn.

40.     The plaintiffs continued to pay rent on the subject premises through September 2008. On September 24, 2008, the landlord Richard Oudeh informed plaintiffs that he would no longer lease the premises to the Clinic, as such lease was contingent on a valid business license from the City of Berwyn and no such business license was forthcoming.

41.     On information and belief, the subject premises, or suitable alternate premises in Berwyn, could be available for lease for the proposed substance abuse clinic upon issuance of a valid business license from the City of Berwyn.

42.     The proposed substance abuse clinic to be located at the Oudeh Medical Center constitutes a "Medical Clinic" pursuant to the City of Berwyn zoning ordinance.

43.     As a "Medical Clinic" the proposed Clinic constitutes a valid pre-existing use at the Oudeh Medical Center, as several other Medical Clinics currently operate at the subject premises and have so operated for years.

44.     In the alternative, the proposed clinic constitutes a "Group Medical Center," under the City of Berwyn zoning ordinance.

45.     Further pleading in the alternative, as a "Group Medical Center" upon approval by the Zoning Board of Appeals on March 18, 2008 and by the City Council on July 8, 2008, the proposed Clinic at the Oudeh Medical Center constitutes a valid conditional use under City of Berwyn zoning ordinance, Section 1258.02-h.

46.     The City of Berwyn has failed and refused to issue a business license for the proposed substance abuse clinic for the primary reason that the mayor, the city council, and members of the public harbor discriminatory intent and animus, and desire to deny the prospective patients access to services within the City of Berwyn by reason of their disability.

### COUNT I – AMERICANS WITH DISABILITIES ACT CLAIM

47.     Plaintiffs incorporate the allegations in paragraphs 1 through 48 above as if fully set forth herein.

48.     The Americans with Disabilities Act was enacted in 1990 to eliminate pervasive societal discrimination against individuals with disabilities. 42 U.S.C. § 12101.

12

49.     Title 11 of the ADA and its implementing regulations prohibit public entities from discriminating against individuals with disabilities.  Section 12132 of the Act provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.
>
> 42 U.S.C. § 12132.  See also 28 C.F.R. §§ 35.130 (b)(1)(i),(ii) and (iv), 35.130(b)(3)(i), 35.130(b)(6), and 35.103(d).

50.     The ADA's regulations further prohibit public entities from discriminating against an entity because of its relationship with an individual with a disability.  The regulations provide:

> A public entity shall not exclude or otherwise deny equal services, programs or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.
>
> 28 C.F.R. § 35.130(g).

51.     Title IV of the ADA prohibits public entities from interfering with an individual's exercise of his or her rights under the ADA.  Section 12203(b) provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.
> 42 U.S.C. § 12203 (b).  *See also* 28 C.F.R. § 35.134(b).

52.     The "public entities" that are subject to the ADA's non-discrimination mandates include any local government and any department, agency or other instrumentality of a local government.  42 U.S.C. § 12131 (l); 28 C.F.R. § 35.104.

53.     The term "individual with a disability" includes individuals with histories of alcohol or drug dependence as well as individuals who are receiving or seeking treatment for such conditions.  42 U.S.C. § 1221 (b) and (c); 28 C.F.R. §§ 35.104 and 35.131 (a)(2) and (b)(1).

13

54.     The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.  42 C.F.R. § 12131(2); 28 C.F.R. § 35.104.

55.     The Clinic's patients are individuals with histories of alcohol and drug dependencies and individuals who are participating in or seeking methadone maintenance treatment and are individuals with disabilities who are protected against discrimination under the ADA.

56.     Defendant is a public entity within the meaning of the ADA and its implementing regulations and are subject to the non-discrimination requirements of the ADA in all activities.

57.     Zoning decisions and actions are activities, services or programs within the meaning of the ADA and its implementing regulations.

58.     By reason of their drug and alcohol addictions, the Clinic's patients and the prospective patients possess and/or possess a record of one or more physical or mental impairments that substantially limit one or more of their major life activities, including but not limited to significant impairments in their ability to care for one's self, establish and maintain healthy relationships with and interacting with others, performing basic social functions, parenting, working, learning, processing and executing day-to-day tasks.

59.     Alternatively, because of their drug and alcohol addictions, the Clinic's patients and the prospective patients are regarded by the Defendant and/or because of the Defendants attitudes toward the Clinic's disabled patients are regarded as possessing one or more physical or mental impairments that substantially limits one or more of their major life activities, including but not limited to significant impairments in their ability to care for one's self, establish and

14

maintain healthy relationships with and interacting with others, performing basic social functions, parenting, working, learning, processing and executing day-to-day tasks.

60.    The Clinic's patients and prospective patients are qualified individuals with a disability who with or without reasonable modifications to rules, policies, or practice or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendant.

61.    Pursuant to Title 12 of the Americans with Disabilities Act, 42 U.S.C. Section 12132 et seq., by denying Plaintiffs' application for a license to operate the proposed substance abuse center, subjecting Plaintiffs to community opposition, effectively imposing and continuing a de facto moratorium on the siting of all methadone treatment programs and denying the Clinic the right to occupy its chosen location, the City of Berwyn has intentionally denied and continues to threaten to deny Plaintiffs (and the disabled patients they serve) equal services, programs or activities and have engaged in intentional discrimination against Plaintiffs and acted to deny Defendant the right to operate the proposed substance abuse clinic on the basis of the Clinic's patients' disabilities.

62.    The City of Berwyn failed to properly follow its own rules and procedures and in doing so, intentionally discriminated against Plaintiffs on the basis of the Clinic's patients' disabilities.

63.    Upon information and belief, the City of Berwyn, acting through its legislative and executive authorities, was influenced by community opposition and hostility toward methadone clinics generally and has a history of opposition to such clinics.

64.    Upon information and belief, the City of Berwyn (through its aldermen, staff, employees, and/or administrators) held and participated in community meetings and made

discriminatory statements on subjects such as drug or opiate addicts, methadone clinics, the patients of such clinics, the Clinic, and the Clinic's prospective patients.

65.     Upon information and belief, the City of Berwyn engaged in discrimination by departing from the normal procedural sequences, failing to follow recognized rules of procedure, and failing to follow proper procedures.

66.     The City of Berwyn has refused to provide reasonable modifications in and accommodations to its aforementioned policies, practices, or procedures as necessary to avoid discrimination on the basis of disabilities of the Clinic's patients and prospective patients.

67.     The City of Berwyn has enacted and followed rules and procedures which disproportionately impact disabled people, namely the Clinic's patients and prospective patients.

68.     The accommodations that Plaintiffs seek to the City of Berwyn's zoning laws and policies are reasonable and are not at odds with the underlying purposes of the City of Berwyn's zoning laws.

69.     The accommodations that Plaintiffs seek to the City of Berwyn's zoning laws and policies will not impose undue financial or administrative burdens on the City or require a fundamental alteration in the nature of the program.

70.     As a direct result of the violations of the Americans with Disabilities Act, the plaintiffs have suffered damages in the form of actual out of pocket expenses as previously described, and lost profits.

71.     As a further direct result of the defendant's violations of the Americans with Disabilities Act, disabled persons, comprised of drug and/or alcohol addicted persons who could benefit from the services offered by the Clinic have been and will continue to be denied the benefit of those services.

WHEREFORE, the plaintiffs, Elizabeth Buonauro, Sal R. Sottile, and The Bobby

Buonauro Clinic, Inc. pray for judgment against the defendant City of Berwyn, awarding

relief as follows:

      A.    Issuing a preliminary and permanent injunction prohibiting enforcement of the July 22, 2008 "reconsideration" and amendment of the July 8, 2008 City Council vote which had approved the proposed substance abuse clinic, and further directing the City of Berwyn, its officials and staff to issue a business license for the Clinic forthwith, and further prohibiting the City of Berwyn, its officials and staff from interfering with the development and opening of the Clinic as proposed;

      B.    Declaring, pursuant to 28 U.S.C. § 2201, that Defendant's discriminatory actions as set forth above, violate the Americans With Disabilities Act, 42 U.S.C. §§ 12132 and 12203(b) and regulations, 28 C.F.R. §§ 35.130(a), 35.130(b)(l)(i), (ii) and (iv), 35.130(b)(3)(i), 35.130(b)(6), 35.103(d) and (g), and 35.134(b);

      C.    Permanently enjoining Defendant from implementing zoning regulations, ordinances, or enforcing any policy that has the effect of excluding substance abuse and methadone maintenance programs from the City of Berwyn or imposing different or more burdensome zoning requirements on methadone treatment programs than on medical offices or clinics;

      D.    Declaring that the proposed substance abuse clinic constitutes a valid pre-existing use at the Oudeh Medical Center, or in the alternative, declaring that such use constitutes a valid conditional use as a Group Medical Practice under the City of Berwyn zoning ordinance; and further declaring any ordinance which in intent and/or application prohibits opening a substance abuse clinic in the City of Berwyn constitutes an unlawful and invalid violation of the Americans with Disabilities Act;

      E.    Awarding the plaintiffs' damages in an amount to be established at trial;

      F.    Ordering Defendant to pay Plaintiffs' attorneys fees, pursuant to 42 U.S.C. Section 12205, plus costs; and

      G.    Awarding punitive damages in the amount of $1,000,000 for the City of Berwyn's intentional discrimination which it carried out with malice or reckless indifference to Plaintiffs' federally protected rights.

## COUNT II – REHABILITATION ACT CLAIM

    72.    Plaintiffs incorporate the allegations in paragraphs 1 through 73 above as if fully

set forth herein.

73.     The Rehabilitation Act of 1973 (the "Rehab Act") prohibits discrimination on the basis of disability in programs conducted by Federal agencies, in programs receiving Federal financial assistance, in Federal employment, and in the employment practices of Federal contractors.

74.     Section 504(a) of the Rehab Act provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. Section 794(a).

75.     As noted *supra*, the City of Berwyn has illegally discriminated against Plaintiffs and Plaintiffs' prospective patients, which conduct violates the Rehab Act.

76.     As stated in the preceding paragraphs, the City of Berwyn was required to (and failed to) modify its zoning laws to prevent the discrimination referenced *supra*, as such a modification was necessary to ensure that Plaintiffs and Plaintiffs' prospective patients have equal access to the benefits of that program.

WHEREFORE, the plaintiffs, Elizabeth Buonauro, Sal Sottile, and The Bobby Buonauro Clinic, Inc. pray for judgment against the defendant City of Berwyn, awarding relief as follows:

A.      A preliminary and permanent injunction prohibiting enforcement of the July 22, 2008 "reconsideration" and amendment of the July 8, 2008 city council vote which had approved the proposed substance abuse clinic, and further directing the City of Berwyn, its officials and staff to issue a business license for the Clinic forthwith, and further prohibiting the City of Berwyn, its officials and staff from interfering with the development and opening of the Clinic as proposed;

B.      Declaring, pursuant to 28 U.S.C. § 2201, that Defendant's discriminatory actions as set forth above, violate the Rehabilitation Act of 1973, including 29 U.S.C. Section 794(a).

C. Permanently enjoining Defendant from implementing zoning regulations, ordinances, or enforcing any policy that has the effect of excluding substance abuse and methadone maintenance programs from the City of Berwyn or imposing different or more burdensome zoning requirements on methadone treatment programs than on medical offices or clinics;

D. Declaring that the proposed substance abuse clinic constitutes a valid pre-existing use at the Oudeh Medical Center, or in the alternative, declaring that such use constitutes a valid conditional use as a Group Medical Practice under the City of Berwyn zoning ordinance; and further declaring any ordinance which in intent and/or application prohibits opening a substance abuse clinic in the City of Berwyn constitutes an unlawful and invalid violation of the Rehab Act;

E. Awarding the plaintiffs' damages in an amount to be established at trial;

F. Ordering Defendant to pay Plaintiffs' attorneys fees, plus costs; and

G. Awarding punitive damages in the amount of $1,000,000 for the City of Berwyn's intentional discrimination which it carried out with malice or reckless indifference to Plaintiffs' federally protected rights.

## COUNT III – SECTION 1983 (EQUAL PROTECTION)

77. Plaintiffs incorporate the allegations in paragraphs 1 through 73 above as if fully set forth herein.

78. The City of Berwyn has violated Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment by (as set forth in the preceding paragraphs) failing to follow proper legislative procedures.

79. The City of Berwyn's decision to deny Plaintiffs' license application was arbitrary, vindictive, and made with illegitimate animus and ill will, and the City's zoning laws were applied and enforced with a discriminatory intent and purpose.

80. The City of Berwyn failed to base its decision to deny Plaintiffs' request for a license on any rational basis or legitimate governmental objectives but instead unilaterally disregarded its proper and customary procedures and discriminated against Plaintiffs vowing that

they would not allow a methadone clinic in their neighborhood regardless of how much of the taxpayers' money was spent in litigation.

WHEREFORE, the plaintiffs, Elizabeth Buonauro, Sal Sottile, and Bobby Buonauro Clinic, Inc. pray for judgment against the defendant City of Berwyn, awarding relief as follows:

      A.     A preliminary and permanent injunction prohibiting enforcement of the July 22, 2008 "reconsideration" and amendment of the July 8, 2008 city council vote which had approved the proposed substance abuse clinic, and further directing the City of Berwyn, its officials and staff to issue a business license for the Clinic forthwith, and further prohibiting the City of Berwyn, its officials and staff from interfering with the development and opening of the Clinic as proposed;

      B.     Declaring, that Defendant's discriminatory actions as set forth above, violate the Equal Protection Clause of the Fourteenth Amendment;

      C.     Permanently enjoining Defendant from implementing zoning regulations, ordinances, or enforcing any policy that has the effect of excluding substance abuse and methadone maintenance programs from the City of Berwyn or imposing different or more burdensome zoning requirements on methadone treatment programs than on medical offices or clinics;

      D.     Declaring that the proposed substance abuse clinic constitutes a valid pre-existing use at the Oudeh Medical Center, or in the alternative, declaring that such use constitutes a valid conditional use as a Group Medical Practice under the City of Berwyn zoning ordinance; and further declaring any ordinance which in intent and/or application prohibits opening a substance abuse clinic in the City of Berwyn constitutes an unlawful and invalid violation of the Equal Protection Clause of the Fourteenth Amendment;

      E.     Awarding the plaintiffs' damages in an amount to be established at trial;

      F.     Ordering Defendant to pay Plaintiffs' attorneys fees pursuant to 42 U.S.C. Section 12205, plus costs; and

      G.     Awarding punitive damages in the amount of $1,000,000 for the City of Berwyn's for Defendant's intentional discrimination which it carried out with malice or reckless indifference to Plaintiffs' federally protected rights.

## COUNT IV – DECLARATORY JUDGMENT – INVALID UNDER ILLINOIS LAW

81.     Plaintiffs incorporate the allegations in paragraphs 1 through 73 above as if fully set forth herein.

82.     The City Council's votes on July 22, 2008 with respect to the Clinic failed to comply with the requirements of the Illinois Open Meetings Act, 5 ILCS 120/1, et. seq., the Illinois Municipal Code, 65 ILCS 5/1-1-1, et. seq., and/or parliamentary Rules of Procedure adopted by the City of Berwyn for conduct of city business.

83.     As such, the July 22, 2008 vote which reconsidered, reversed and denied the request of conditional use to be granted regarding the Clinic is invalid and unenforceable under Illinois law.

WHEREFORE, the Plaintiffs Elizabeth Buonauro Sal R. Sottile and the Bobby Buonauro Clinic, Inc. pray for judgment against the City of Berwyn, awarding relief as follows:

A.     Issuing a declaratory judgment stating that the July 22, 2008 City Council vote in regard to the clinic is invalid and unenforceable;

B.     A preliminary and permanent injunction prohibiting enforcement of the July 22, 2008 "reconsideration" of the July 8, 2008 City Council vote approving the proposed substance abuse clinic, and further directing the City of Berwyn, its officials and staff to issue a business license for the clinic forthwith, and further prohibiting the City of Berwyn, its officials and staff from interfering with the development and opening of the clinic as proposed;

C.     Awarding the plaintiffs' damages as allowable by law, in an amount to be established at trials;

D.     Awarding plaintiffs their attorneys fees and costs as allowable by law.

Plaintiffs demand trial by jury.

Elizabeth Buonauro, Sal Sottile, and The
Bobby Buonauro Clinic, Inc.,

By: / s / Robert A. Carson
    One of Their Attorneys

Robert A. Carson (ID No. 3126935)
Mark E. Abraham (ID No. 6269303)
Gould & Ratner LLP
222 N. LaSalle Street, 8th Floor
Chicago, IL 60601
(312) 236-3003
(312) 236-3241 (fax)

Exhibit A

RESOLUTION

## LEGAL DESCRIPTION

The following described Real Estate situated in the County of Cook, in the State of Illinois, to wit:

THE NORTH 20 FEET OF LOT 19 AND ALL OF LOTS 20 AND 21 IN BLOCK 8 IN BERWYN, A
SUBDIVISION OF PART OF SECTION 31, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD
PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

## COMMON ADDRESS

3245 S. Grove Avenue

## REQUEST BY APPLICANT

Operate a Medical Clinic

## APPLICANT-(Individually and Collectively)

The Bobby Buonauro Clinic-Sal R. Sottile

## DATE OF PUBLIC HEARING

March 18, 2008

## DATE OF PUBLIC NOTICE PUBLICATION

February 28, 2008, Berwyn Gazette Newspaper

## MEMBERS PRESENT

Messrs: Castaldo, Fejt, Miller, Chrastka, Persin and Mrs. Laureto &
Hernandez.

**WHEREAS, IT IS HEREBY RESOLVED by the BERWYN ZONING
BOARD OF APPEALS, (the "BOARD"), in a PUBLIC MEETING of the
BOARD on the___18th___ day of___March___, in the year_2008___,
having considered all the facts presented at the Hearing of this
matter;**

**WHEREAS, the APPLICANT has been duly informed that: (a) if
the BOARD fully or partially approves the request of the APPLICANT
and the CITY COUNCIL concurs in such decision; or (b) if the CITY
COUNCIL fully or partially approves the request even though the
BOARD has rejected the request of the APPLICANT or if the BOARD
has made no recommendation to the CITY COUNCIL; the APPLICANT
must obtain a building permit within SIX (6) MONTHS after the date
that the ORDINANCE is enacted;**

**The BOARD has reached its decision after considering the
testimony of the witnesses and the documents presented both prior
to and during the Hearing, briefly set forth as follows:**

0953

1. Mr. Sal R. Sottile, the Assistant Director, who is also an architect, testified on behalf of the applicant, with some help from the applicant, Elizabeth Buonauro and the owner of the property, Richard Oudeh. He testified that the first floor area contained six (6) separate medical offices, and Bobby Buonauro Medical Clinic intends to lease a certain area in the building, on the first floor, which was previously leased to three separate Doctors. The leased area measures about 30' X 70', 2,100 square feet, and extends from about the middle of the building east to the alley, which is at both the north and east sides of the building. This is in fact designated as a Medical Facility Building, the second floor has doctors offices, and the other 3 medical offices on the first floor will remain.

2. In regard to the Area to be leased, the owner stated that one of the doctors moved out a little less than a year ago, another about a month ago, and the last doctor will move at this time. (Mr. Persin stated that since one of the offices to be leased has been vacant for more than 6 months, according to the new amendment to the RO Retail Overlay District, the applicant needs to get an approval of the Conditional Use.)

3. The applicant will operate an out patient substance abuse Medical Clinic which includes alcohol and drug prescription abuse. Mrs. Buonauro stated that she has a similar successful Medical Clinic in Evanston Illinois, which has been in operation for about 6 years, and that clinic will remain open along with this Berwyn location. She is not a Doctor, but her expertise is in directing and supervising such a clinic, and she will be the Executive Director of the business. Mr. Sottile will be the assistant Director, and she intends to hire 2 or 3 licensed medical doctors who specialize in this type of practice, 2 to 3 counselors, about 3 nurses, one full time and 2 part time administrative clerical persons. (This differs a little from what was told to the area investigator.)

They must and will conform to the standards as required by the Center of Substance Abuse Treatment located in Washington D.C. (CSAT); will be accredited by the National Council of Accreditation for Drug Abuse; counselors will be licensed by the State of Illinois; and the business shall operate under the jurisdiction of the Illinois Drug Enforcement Administration.

4.  Hours of operation will be from 5:00 A.M. to 12:00 P.M. Monday through Friday and 7:00 A.M. to 10:00 A.M. on Saturday, with no hours on Sunday. Most of their patients come in before they go to work and the hours of operation best accommodate their patients. They expect an average of around 100 patients a day. There is a fast turn-over as most are only on the premises for about 10 minutes.

5. This leased space in the building, as is the case for all offices in the building, will have its own heating and air-conditioning unit. They expect to have a reception area with the office area to the east. The main entrance is from the building lobby at the front of the building at Grove Avenue with an emergency exit at the alley east end of the leased area. There is no parking on site so all parking is on the street. The City of Berwyn is planning to build a 5 level parking garage across the street on the site of the present municipal garage, and this will certainly alleviate the parking problems. Most of the patients will be from the immediate area, and many will walk to the clinic and parking will be for very short periods. A MacNeal Hospital representative, who was present at the hearing, stated that although MacNeal has some substance abuse programs, none provide the same services as in this proposed clinic.

6. They will do some remodeling and will have two regular washrooms and one handicap washroom. They will not request any government subsidies and all patients bills are paid by insurance or by the patients personally. The fact that there is no direct street entrance to the clinic and no big sign, gives the patients the privacy they desire which makes this an excellent location for such a clinic.

7. Mrs. Mary Esther Hernandez, the area investigator, presented a written report which is incorporated by reference in this resolution. She met with Sal Sottile and Elizabeth Buonaro and they told her that this clinic is for treatment of substance abuse. They will treat people for drugs, alcohol, DUI assessment and intervention. It will be a 100% paid for service clinic. The initial staff will consist of 2 doctors, 1 director, 2 counselors, 3 nurses, 1 receptionist, 1 director and 1 security guard. They will be leasing what was previously three Doctors offices and the building is known as the Oudeh Building. Entrances and exits are through the front door of the building and a hall leads the way to the entrance and exit. There is a municipal parking lot for employees and a parking deck is scheduled to be built down the street. Mrs. Hernandez voted in favor of granting the Conditional Use to operate a Medical Clinic as described.

8. Messrs: Castaldo, Fejt, Miller, Chrastka, Persin and Mrs. Laureto all agreed with the area investigator and voted to grant a Conditional Use as requested. The final vote was 7 to 0 in favor of granting a Conditional Use for the applicant to operate a Medical Clinic as described in this RO Retail Overlay District in accordance with the testimony at the hearing and documents presented.

This resolution was adopted unanimously on the 18th day of March, 2008.

BERWYN ZONING BOARD OF APPEALS

_Milton F. Persin_
Milton F. Persin-Executive Secretary

0956

CONDITIONAL USE ORDINANCE # _____

Be it ordained by the City of Berwyn that:

Whereas, the question of granting the Conditional Use included in this ordinance was referred to the Board of Zoning Appeals to hold a Public Hearing thereon;
Whereas, such Public Hearing was held after Public Notice was given in the manner provided by law;
Whereas, the said Board has made a report containing findings of fact, and has recommended the granting of said Conditional Use;
Whereas, the Applicant THE BOBBY BUONAURO CLINIC- ELIZABETH BUONAURO Has agreed to adhere to the Building Code of the City of Berwyn, Illinois;
Whereas, the Applicant has agreed that the representations made to the Zoning Board of Appeals and all other matters considered and as decided by the Zoning Board of Appeals shall be binding upon the Applicant and all of ITS & HER _____ privies, successors and assigns;

AND WHEREAS, THE FINDINGS AND RECOMMENDATIONS OF THE ZONING BOARD OF APPEALS ARE HEREBY ADOPTED AND MADE A PART HEREOF;

NOW THEREFORE, be it ordained by the City Council of the City of Berwyn, Illinois:
Common address is 3245 S. Grove Avenue and legally described as follows:

The following described Real Estate situated in the County of Cook, in the State of Illinois, to wit:

THE NORTH 20 FEET OF LOT 19 AND ALL OF LOTS 20 AND 21 IN BLOCK 8 IN BERWYN, A SUBDIVISION OF PART OF SECTION 31, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

A Conditional Use is hereby granted to allow the operation of a Medical Clinic in this RO Retail Overlay District in accordance with the testimony at the hearing, documents presented, and the resolution.

This Ordinance shall become and be effective immediately upon its passage, approval and publication in the manner prescribed by law.

Passed this_____day of_____, _____.

Number Voting Yes:_____ Number Voting No:_____

Absent:_____ Abstain_____

Approved this _____day of_____,_____.

ATTEST:.

_____
Michael O'Connor-Mayor

_____
Tom Pavlik- City Clerk

0952

Exhibit B

*Milton F. Persin*

ATTORNEY AT LAW
3525 CASS COURT - UNIT 505
OAKBROOK, ILLINOIS 60523

(630)655-4323 FAX:(630)655-4358

June 4, 2008

Tom Pavlik
City Clerk
6700 W. 26th street
Berwyn, Illinois 60402

RE: Bobby Buonauro Clinic-3245 Grove Avenue

FAX TO: 708-788-2675 Pages __3__ ; Time:_____ .

Dear Tom:

I received a copy of the letter dated 5/30/08 that you sent to Joel Chrastka and I did communicate with Joel by telephone.

The Board was asked to have a hearing on an appeal from the decision of a City Official declining a business permit for a Medical Office as a restricted use in a Retail Overlay District. The Board heard all the evidence and unanimously approved the Conditional Use. I believe that the resolution as presented to the City Council contains all the facts in regard to the proposed business and the documents and area investigators written report within the file further supplements the testimony at the hearing.

It seems that the City Council is asking the Zoning Board of Appeals to answer some questions that can be answered by review of the resolution. Remanding this back to the Zoning Board will involve questioning the same witnesses and getting the same answers. If the City Council needs some additional investigation, they have the authority to obtain such information direct from the applicant as the Zoning Board of Appeals has no jurisdiction to make such a request after a final decision is rendered. As to the kind of use determination, this is a legal question and should be answered by the City Attorney or an outside Law Firm after review of the facts in the resolution.

2

Here are my other comments:

The Board made a decision based on a declination for a Medical Office in an RO Retail Overlay District.    See following definitions and Sections:

92. MEDICAL OFFICE.  "Medical Offices" means an office generally in the category of medical offices, OTHER THAN GROUP   MEDICAL CENTERS, including........"

63. GROUP  MEDICAL CENTER. "Group Medical Center"  means "TWO OR MORE DOCTORS   PRACTICING IN ANY BRANCH OF PATIENT CARE......"

1258.14-c-2C-Includes Medical Offices as a restriction in the   Retail Overlay District, BUT THERE IS NO RESTRICTION THAT APPLIES TO A GROUP MEDICAL CENTER.

1258.02- h: A Group Medical  Center is allowed as a Conditional Use.

See Paragraph 3 of the  resolution where Mr. Sal R. Sottile, the Assistant Director for the proposed Medical Facility,  testified that they will be hiring  2 to 3 licensed doctors and see Paragraph 7 of the resolution where Mrs. Hernandez, the area investigator  in her investigation report, states that she was told that the initial staff will consist of 2 doctors.

Based on this  testimony and information in the file, this Medical  Clinic should have the status of a Group Medical Center as defined in #63. Therefore, the conclusion is that the Conditional Use that was granted should have been granted without reference to the RO Retail  Overlay District as it is not listed as a Restricted Use, and should  also apply generally  as a Conditional Use in this  C-2 District.

I hope the above will help you  in your final  determination.

Sincerely

Milton F. Persin

cc- Joel Chrastka
    Mayor Michael A. O'Connor

0692

Exhibit C

**MICHAEL A. O'CONNOR**
**MAYOR**

**THOMAS J. PAVLIK**
**CITY CLERK**

## MINUTES
## BERWYN CITY COUNCIL
## JULY 8, 2008

1. The Berwyn City Council was called to order by Mayor O'Connor at 8:14 p.m. Upon the call of the roll, the following responded present: Chapman, Weiner, Skryd, Phelan, Lovero, Erickson. Absent: Ramos, Day. Thereafter, Lovero made a motion, seconded by Chapman, to excuse Aldermen Ramos and Day. The motion carried.

2. The Pledge of Allegiance was recited and a moment of silence was observed for the safety of our armed forces, police, firefighters, and paramedics.

3. The Open Forum portion of the meeting was announced. The Mayor recognized Nancy Hildwein, 3545 Harvey who spoke on overflow of garbage in the alley, see attached statement read into record, Sue Stopka, 2714 Highland spoke regarding a continuing rodent problem, Brandon Williams, representative of the Grove Condos, 3300 Grove, spoke regarding problems at Salerno's nightclub on weekends and presented a statement to the Mayor and 1st ward alderman and then read statement into record, see attached, Maggie Lorenc of AFSCME Council #31,employees local union, spoke regarding layoffs and no contract and stated that she has filed 13 new grievances and currently has 3 grievances in arbitration, and asked the elected officials to stop the layoffs of 8 AFSCME employees and also presented a petition and presented a copy for the record, the Mayor recognized other AFSCME workers who addressed the Council regarding layoffs and asking the Mayor not to go forward with the planned layoffs, Alderman Skryd spoke regarding the Berwyn Cicero Council on Aging and the proposal by the governor to cut 1 hundred million dollars, from the state budget, for the Illinois Department on Aging, see attached.

4. The minutes of the regular Berwyn City Council meeting of June 24, 2008 and the amended Committee of the Whole minutes of June 24, 2008 were submitted. Thereafter, Lovero made a motion, seconded by Skryd, to concur and approve as submitted and amended. The motion carried by a voice vote.

5. Chapman made a motion, seconded by Skryd, to suspend the rules and bring forward item J-10. The motion carried. Item J-10 is a communication from Carl Reina, Centennial Chairman, regarding Centennial

recap. Thereafter, the Mayor recognized Carl Reina, who gave a power point presentation, see attached. Thereafter, Clerk Pavlik questioned if a detailed account of revenues and expenditures will be made available. Mr. Reina stated that they will be available from the Finance department. Alderman Skryd also recognized building director, Dan LeBeau, for his creation of the Centennial logo. Thereafter, Phelan made a motion, seconded by Skryd, to accept the matter as informational. The motion carried by a voice vote.

6. Skryd made a motion, seconded by Erickson, to suspend the rules and bring forth item F-1 and F-2. The motion carried. Item F-1 is a communication from the Mayor regarding the retirement of Deputy Fire Chief, Michael Farnsworth. Thereafter, Lovero made a motion, seconded by Chapman, to accept the matter as informational and extended congratulations, thanks for services, and best wishes in future endeavors. The motion carried by a voice vote.

7. The Mayor submitted a communication regarding the appointment of Sam Molinaro as Deputy Fire Chief. Thereafter, Erickson made a motion, seconded by Lovero, to concur and approve the appointment as submitted. The motion carried by the following roll call: Yeas: Chapman, Weiner, Skryd, Phelan, Lovero, Erickson. Nays: none. Excused: Ramos, Day. Thereafter, the Clerk administered the Oath of Office and the Mayor and Council members extended congratulations.

8. The Berwyn Development Corporation submitted an Intergovernmental Agreement and a Resolution between the Cook County Assessor and the City of Berwyn for access to Geographic System (GIS). Thereafter, Erickson made a motion, seconded by Chapman, to concur and **adopt** the Resolution as presented and to authorize the corporate authorities to affix their signatures thereto. The motion carried by a unanimous roll call vote with Ramos and Day excused.

9. The Berwyn Development Corporation submitted a communication regarding a request for a Commercial loan for Garv's Inn in an amount not to exceed $105,000. Thereafter, Erickson made a motion, seconded by Skryd, to concur and approve as submitted. The motion carried by a unanimous roll call vote with Ramos and Day excused.

10. The Berwyn Development Corporation submitted a communication regarding TIF application for Valle's Produce, 6323 W. Cermak, in an amount not to exceed $19,000. Thereafter, Skryd made a motion, seconded by Chapman, to concur and approve as submitted. The motion

BERWYN CITY COUNCIL MEETING
JULY 8, 2008

carried by the following roll call: Yeas: Chapman, Weiner, Skryd, Phelan, Lovero. Nays: Erickson. Excused: Ramos, Day.

11. Chapman made a motion, seconded by Skryd, to suspend the rules and bring forth item J-4. The motion carried. Item J-4 is a communication from the Law department regarding Metra Train Lease, Parking Resolution. Thereafter, Chapman made a motion, seconded by Lovero, to concur and approve as submitted. The motion carried by a unanimous roll call vote with Ramos and Day excused.

12. The Mayor submitted a communication regarding the appointment of Jill Bambenek to the Berwyn Library Board to complete the unexpired term of Matt Scharf which expires on June 12, 2010. Thereafter, Erickson made a motion, seconded by Chapman, to concur and approve the appointment as submitted. The motion carried by a unanimous roll call vote with Ramos and Day excused.

13. The Clerk submitted a communication regarding a Public Hearing to be held on August 12, 2008 at 5:45 p.m., concerning   Chapter 1204.04 section #54, Zoning code, to change the definition of "Single Housekeeping Unit". Thereafter, Erickson made a motion, seconded by Skryd, to concur and to authorize the Clerk to publish and post.   The motion carried by a unanimous roll call vote with Ramos and Day excused.

14. The Clerk submitted a communication regarding a referral to the Cook County States Attorney, Public Integrity Bureau regarding a June 24, 2008 referral and requesting approval to duplicate the tape of the closed Fire and Police Committee meeting of December 13, 2007 as requested by the States Attorney.   Thereafter, Erickson made a motion, seconded by Chapman, to concur and approve as submitted and grant permission to copy and forward tape. The motion carried by a unanimous roll call vote with Ramos and Day excused.

15. Lovero made a motion, seconded by Chapman, to suspend the rules and bring forth items I-1, I-6, J-3, and G-3 and make germane to I-6. The motion carried.   Item I-6 is a communication from Alderman Lovero requesting that the 5 Public Works employees, that were laid off, be reinstated, as prescribed by the authority in Chapter 242, Section .08(b) of the Codified Ordinances.  Thereafter, Lovero made a motion, seconded by Skryd, to concur and approve as submitted. Thereafter, Lovero was allowed to summarize all 4 communications which reiterated reinstatement of public works employees and to stop any further layoffs of city employees, and to request a special meeting of the City Council to address budget issues. After the motion and the second, the Mayor read another statement into

3

record regarding the financial situation of the city; the statement was not submitted to the Clerk for the record. Thereafter, the Mayor recognized the motion which carried by the following roll call: Yeas: Chapman, Weiner, Skryd, Phelan, Lovero. Nays: Erickson. Excused: Ramos, Day. The Mayor then stated that he will veto this communication and continue layoffs as planned. Thereafter, the Clerk tried to clarify veto procedures for the record, the Mayor failed to recognize the Clerk's request.

16. Alderman Weiner submitted a communication regarding Aldermanic Health Insurance. Thereafter, Weiner made a motion, seconded by Skryd, to refer the matter to the Committee of the Whole. The motion carried by a voice vote.

17. Alderman Phelan submitted a communication regarding 2 hour diagonal parking at 16th and Wesley. After discussion, Phelan made a motion, seconded by Chapman, to refer the matter to the Traffic Engineer. The motion carried by a voice vote.

18. Alderman Phelan submitted a communication regarding trees at 21st and Wesley. After discussion, Phelan amended his communication to include withholding any issuance of future building permits to Michael Adams or any sub contractor, or any development, in which he is involved, until the matter is remedied. Thereafter, Phelan made a motion, seconded by Lovero, to concur and approve as amended. The motion carried by the following roll call: Yeas: Chapman, Weiner, Skryd, Phelan, Lovero. Nays: Erickson. Excused: Ramos, Day.

19. Alderman Phelan submitted a communication regarding employee conduct as discussed in the Committee of the Whole. Thereafter, Phelan made a motion, seconded by Skryd, to refer the matter to the Administration Committee for investigation. The motion carried by the following roll call: Yeas: Chapman, Skryd, Phelan, Lovero. Nays: Weiner, Erickson. Excused: Ramos, Day.

20. Alderman Erickson submitted a communication regarding Petition for Referendum. Thereafter, Erickson made a motion, seconded by Weiner, to refer the matter to the Committee of the Whole. The motion carried by a voice vote.

21. The Law department submitted a communication regarding the Bobby Buonauro Clinic, 3245 Grove Avenue. After discussion, Chapman made a motion, seconded by Phelan, to concur and approve as recommended by the Zoning Board that Conditional Use be granted in this C-2 District.

4

BERWYN CITY COUNCIL MEETING
JULY 8, 2008

Thereafter, the motion carried by the following roll call: Yeas: Chapman, Skryd, Phelan, Lovero. Nays: Weiner, Erickson. Excused: Ramos, Day.

22. The Law department submitted an ordinance entitled:

**AN ORDINANCE ALLOWING A VARIATION FROM THE ZONING CODE FOR THE PROPERTY COMMONLY KNOWN AS 7102 34TH STREET, BERWYN, ILLINOIS AND WHICH IS LOCATED IN AN A-1 ZONING DISTRICT**

Thereafter, Chapman made a motion, seconded by Skryd, to concur and **adopt** the ordinance as presented and to authorize the corporate authorities to affix their signatures thereto. The motion carried by a unanimous roll call vote with Ramos and Day excused.

23. Weiner made a motion, seconded by Skryd, to extend the meeting beyond 10:00 p.m. per ordinance. The motion carried by a unanimous roll call vote.

24. The Law department submitted a Parking Ordinance for temporary visitor parking passes. Thereafter, Chapman made a motion, seconded by Skryd, to defer the matter for 2 weeks for review. The motion carried by a voice vote.

25. The Law department submitted a communication requesting the settlement and 08 CV 3528 (U.S. District Court for the Northern District of Illinois) in the amount of $20,000. Thereafter, Erickson made a motion, seconded by Weiner, to concur and approve for payment. The motion carried by a unanimous roll call vote with Ramos and Day excused.

26. The Finance director submitted a communication regarding the approval of the Financial Report. Chapman made a motion to defer for 2 weeks. After discussion, the motion was withdrawn. Thereafter, Weiner made a motion, seconded by Erickson, to concur and approve as submitted. The motion carried by a unanimous roll call vote with Ramos and Day excused.

27. The Finance director submitted a communication regarding the approval of the Purchasing policy. After discussion, Erickson made a motion, seconded by Weiner, to concur and approve as submitted. The motion carried by a unanimous roll call vote with Ramos and Day excused.

28. The Building director submitted a communication regarding the amendment to Ordinance 1472, Remodeling and Alteration. Thereafter, Skryd made a

5

BERWYN CITY COUNCIL MEETING
JULY 8, 2008

motion, seconded by Chapman, to refer the matter to the Ordinance and Resolutions committee for draft. The motion carried by a voice vote.

29.   Consent Agenda, items K-1 through K-20 were submitted:
    K-1  The Budget chairman submitted the payroll for June 25, 2008 in the total amount of $828,367.85.
    K-2  The Budget chairman submitted the payables for July 8, 2008 in the total amount of $747,563.33.
    K-3  The Pav YMCA requested for a rummage sale on August 23, 2008
    K-4  The Girl Scouts, Il Crossroads Council requested permission to conduct the 2008 Fall Product Activity from October 10th thru October 26th 2008, and Cookie Sales from January 1st through March 22, 2009
    K-5  Ace Hardware requested a Sidewalk Sale on August 30, 2008
    K-6  Block party for 3300 Wenonah on August 23, 2008
    K-7  Block party for 2300 Elmwood on August 2, 2008
    K-8  Block party for 1300 Wenonah on July 26, 2008
    K-9  Block party for 3800 Kenilworth on August 2, 2008
    K-10 Block party for 6400 W.33rd St. on July 12, 2008
    K-11 Block party for 3500 Clinton on August 16, 2008
    K-12 Block party for 1600 Grove on July 26, 2008
    K-13 Block party for 1800 Maple on August 2, 2008
    K-14 Block party for 3200 Maple on August 23, 2008
    K-15 Block party for 1800 Clinton on August 2, 2008
    K-17 Block party for 3500 Wenonah on August 16, 2008
    K-18 Block party for 3400 Home on July 26, 2008
    K-19 Block party for 6800 W. 29th Place on August 23, 2008
    K-20 Block party for 6900 W. 30th Place on August 9, 2008
    Thereafter, Lovero made a motion, seconded by Erickson, to concur and Approve by Omnibus Vote Designation. The motion carried by a voice vote.

30.   The Mayor called for a Special Committee of the Whole meeting for Tuesday, July 15
    And Wednesday, July 16, 2008 at 7:30 p.m. to review and discuss budgetary cuts.
    The Mayor called for a Committee of the Whole meeting on Tuesday, July 22, 2008 at 7:00 p.m. for referrals.
    The Mayor announced a Special Committee of the Whole for Tuesday, July 29, 2008 at 7:30 p.m., for a BDC Status Presentation, with a tentative location at the BDC, 3322 Oak Park Avenue.

31.   Alderman Skryd announced an Administration meeting, as previously called, for Monday, July 14, 2008 at 6:00 p.m. for referrals

33. Alderman Chapman requested a joint Administration, Budget, and Public Works committee meeting for Tuesday, July 15th and Wednesday, July 16th at 7:30 p.m. for solutions to layoffs. The Mayor stated that she is not the Chair of any of these committees and can not call the meeting and ruled Chapman "Out of Order".

34. There being no further business to come before the meeting, same was, after a motion by Weiner, seconded by Phelan, to adjourn at the hour of 10:16 p.m. The motion carried by a voice vote.

Respectfully submitted,

Thomas J. Pawlik
City Clerk

7

Exhibit D



THE CITY OF **BERWYN, ILLINOIS**    *Building A New Berwyn*

MICHAEL A. O'CONNOR, *Mayor*

6700 West 26th Street • Berwyn, Illinois 60402-0701
Telephone: (708) 788-2660 • Fax: (708) 788-2675 • www.berwyn-il.gov

# THOMAS J. PAVLIK
## CITY CLERK

July 14, 2008

Mr. Milton Persin
Executive Secretary
Zoning Board of Appeals
3525 Cass Court- Unit 505
Oak Brook, Ill., 60523

     Re:   Item #21 –July 8, 2008, City Council Meeting
            Bobby Buonauro Clinic-3245 S. Grove Avenue

Dear Milt:

At the July 8, 2008 Berwyn City Council meeting, the Council was in receipt of your letter of June 18, 2008 in which you reiterated the Zoning Board's review of testimony by Mr. Sottile and final decision by the Board  regarding the operation of a Group Medical Clinic as a Conditional Use, at the above mentioned address.

The City Council concurred with your recommendation and that of your Board, to approve the Conditional Use to operate the Medical Clinic.

Respectfully submitted,

Thomas J. Pavlik
City Clerk

TJP/lps
cc:    Building Director
       Collector
       Sottile-3437 Grove Avenue
       File

Exhibit E

# A Methadone Clinic in Berwyn??

*Methadone is an addictive drug used to treat heroin addicts and other drug users.
*The Berwyn City Council voted to allow a Methadone Clinic to open at 3245 Grove
*If opened, this clinic may serve hundreds of heroin addicts and other drug users daily.
*There are two opportunities for residents to voice their concerns about this issue:

## AN OPEN AIR TOWN MEETING
### Wednesday July 16TH 6:00 p.m.
### Municipal Parking Lot, 3300 Grove Ave.

Mayor O'Connor has invited our Aldermen, the Building
Owner and Representatives from the Bobby Buonauro
Methadone Clinic to address the residents.

## BERWYN CITY COUNCIL MEETING
### July 22nd, 8:00 p.m. City Hall
OPEN FORUM
Concerned residents will speak out about the Methadone Clinic
and the effect on our neighborhood.

We are opposed and need your help!

# A show of resident concern is critical.
### Please attend and invite your neighbors!

The City of Berwyn  Michael A. O'Connor
Mayor

**A Century of Progress with Pride**

6700 West 26th Street   Berwyn, Illinois 60402-0701   Telephone: (708) 788-2660   Fax: (708) 788-2567
www.berwyn-il.gov

# To All Concerned Residents and Business Owners

# Proposed Methadone Clinic Approved!

**Mayor O'Connor is opposed to the clinic and is holding a Community Meeting to answer questions and concerns about the Methadone Clinic approved by majority of alderman at council meeting.**

**What:**   **Community Meeting to discuss proposed Methadone Clinic in the 3300 block of Grove Ave.**

**When:**   **Wednesday, July 16th**

**Where:**   **Municipal Parking Lot in the 3300 block of Grove Ave.**

**Time:**   **6:00 PM**

**Invited are the alderman that voted for this clinic:**
      **Nona Chapman, Michele Skryd, Mike Phelan, Robert Lovero**

**Also invited are the Assistant Director of the Clinic and the owner of the Building**

0046

Exhibit F



Windows Live™   Home   Hotmail   Spaces   OneCare   MSN                                   markweiner1@hotmail.com
Sign out

**FW: Methadone Clinic proposal**

From: **Anthony Harris** (
Sent: Sun 7/13/08 4:23 PM

To: Mark Weiner (markweiner1           ; Mary Rodriguez (                    ; marybeth lewanski
           ); Melinda Espinoza                     ); Michael Joseph Raymond (                    ); Passarelli
(                    ); Pat Raymond (                    ); Paul Fuentes (                    ); Richard Bruen
(rbruen@odelsonsterk.com); Sean Gallagagher (b                    ); Shelley Titzer (                    ); Ted Korbos
(                    ); Timothy Dzwonowski (                    ); Todd Bittorf (                    ); Tom Covell
(                    ); Tom McLain (                    ); Tommaso Lesnick (                    ); Wilmer Rutt
(                    ); xByran xByran (                    ); Zoltan Karacsony (                    )

Methadone....mht (2.1 KB)
If you're having problems downloading attachments, please sign in again and select "Remember me
on this computer".
Sign in again

Hello Everyone,

THIS IS IMPORTANT! Methadone Clinic to open in Depot District! There will be a meeting in the
municipal parking lot on Grove Avenue in the 3300 block at 6 pm on Wednesday, July 16th to discuss
the clinic. Please read the forward at the end of this email and forward!

I have been researching the problems of methadone clinics.  I believe that I have reached some definitive
conclusions and a methadone clinic should not be located in the Depot District. The location of this clinic
has been chosen because of its nearness to public transportation and will, therefore, attract a very large
number of drug addicts from all along the Burlington Metra line. The clinic will not only treat drug
addicts in Berwyn but possibly thousands of others, bringing in a population with a strong tendency to
commit crime. This will unavoidably result in an increase in crime. The owners of the clinic will make
money hand over fist; however, the community as a whole will suffer.

The clinic will be located 3245 Grove Avenue and that is a District 100 approved path for students to
cross the Metra Tracks to go to school. So every school day, there will be a mix of drug addicts and
young students. I do not believe that any parent will approve of this.

Several aldermen have expressed the fear of a costly law suit if the Methadone Clinic is denied a permit. I
believe that fighting a law suit will be much cheaper than the police fighting the increase in crime as a
result of the Methadone Clinic. It would be pennies on the dollar. Also how will the community react if
one to the users of the Methadone Clinic commits a homicide or rape?

Please forward this email to all of your neighbors and friends in Berwyn.  If your friends do not have
email please speak with them directly.

This is important and we must address this issue ASAP.

Thanks,

Tony

Please read the Mayor's email attached

---

Date: Sun, 13 Jul 2008 09:51:29 -0700
From: tshonder
Subject: Fwd: Methadone Clinic proposal
To: soirana               ; maryann               ; dmcalzada               ; lpanico               ;
liz.berg               ; jimmydeece               ; allbrightcleaning               ; karen.bacidore               ;
tishmcmahon               ; Richoly               ; camamikecollins               ; Blanca.gonzale               ;
delbowa               ; bkd               ; tom               ; acharris3444               ;
jdramirez40               tomkat6504               , Leah.Gonzale               ;
slachowicz               tgoddess               ; marywink

Note: forwarded message attached.

--Forwarded Message Attachment--

Post From Shelly - Meth Clinic - 'AT&T Yahoo! Mail'    Page 1 of 1

Case: 1:08-cv-06687 Document #: 1 Filed: 11/21/08 Page 47 of 92 PageID #:47



I think if we think this through, it is more of a "Not In Anyone's Backyard" attitude. Of course, the first reaction is an outcry against this clinic in Berwyn, but I'm really hearing (and I agree) that methadone clinics do NOT belong in anyone's neighborhood because of the criminal element associated with them. Methadone is addictive and it sounds like the ultimate goal is not to get patients to be drug-free, it is just to get people to stop using heroin. Methadone becomes more like insulin to a diabetic...no plan to ever stop taking it. That is why it is big money! Earlier in this thread, the clinic owner stated that only 30 or 35% of patients would be covered by insurance implying that MOST patients will be private pay and it is expensive. The highly addictive nature of this drug (and heroin) makes people hooked on it desperate to have it, desperate for money to pay for it and thus more likely to impulsively commit crimes like theft and prostitution in order to get it. The highly addictive nature of this drug (and heroin) may make addicts want to live close to their source. I fear that while patients (in large numbers) from other neighborhoods are waiting for their train, they'll take a tour of the Depot District and decide they want to live near their source. The highly addictive nature of the drug (and heroin) make methadone clinics a target market for heroin dealers.

I appreciate the anecdotal stories from the parent whose daughter didn't get help and the nurse practitioner who said "If one patient is saved...it will all be worth it." Well, not to me. The overwhelming evidence about these clinics is that they are bad for neighborhoods/communities.

**I believe that this fight needs to be taken beyond Berwyn.** Maybe there should be pressure put on state legislators to draft a law that limits/regulates where methadone clinics can be opened. I think there are other laws like this regarding adult book stores. Personally, I think this type of clinic should be even more strictly limited to large hospital campuses like UIC or Rush or Loyola and Industrial Parks. Just pushing it to someone else's neighborhood (because we perceive Berwyn as "better than over there") is not right and also is only a temporary solution until another methadone clinic comes along.

« *Last Edit: **Today** at 07:48:58 AM by Shelley* »

Scott Lennon

**Mayor O'Connor**

| | | |
|---|---|---|
| **From:** | Jurgaitis, Richard | **Sent:** Wed 7/16/2008 1:18 PM |
| **To:** | 3rdward@berwyn-il.gov | |
| **Cc:** | Diane Jurgaitis (E-mail); Mayor O'Connor; Gerard J. Pater | |
| **Subject:** | Proposed Methadone CLinic | |
| **Attachments:** | | |

Alderman Weiner;

Yesterday I learned of plans to build a methadone clinic in Berwyn.

I am opposed to it.

If Berwyn has junkies , use the money to hire more Police.

If they are illegal aliens... deport them.

If you want to build the " clinic " build it right next to the Police station.

We dont need any more gangbanger, spraypainters tromping thru Berwyn to get their free drugs.


Rich Jurgaitis

| ⊕ This message was sent with high importance. |
|---|

**Mayor O'Connor**

| From: | Mayor O'Connor | | Sent: | Fri 7/18/2008 8:25 AM |
|---|---|---|---|---|
| To: | Mayor O'Connor | | | |
| Cc: | | | | |
| Subject: | FW: Methadone clinic???? | | | |
| Attachments: | | | | |

---

**From:** James J. Frank
**Sent:** Thursday, July 17, 2008 10:02 AM
**To:** Jeanmarie Hajer; Mayor O'Connor
**Subject:** FW: Methadone clinic????
**Importance:** High

---

**From:** Sexton, Erica
**Sent:** Thursday, July 17, 2008 7:45 AM
**To:** CustService
**Subject:** Methadone clinic????
**Importance:** High

Good Morning,

My husband and I are very concerned about some news we heard last night. We were out taking a walk when someone stopped us. It was someone else from our neighborhood that had just come from a community meeting.

**She told us that they are looking to put in a methadone clinic by Salerno's on Windsor and Grove.**

Who is their right mind decided this? *Why wasn't the community made aware of this*? You would think this would be posted all over the neighborhood to get the community to go to the town hall meetings to stop this...

Do they realize how many school children will pass by the location on a regular basis? There are at least 2 schools in walking distance and the kids go to the candy store that is going to be right next store to this place....

Do they realize how much crime will be brought into the area??? You are going to have inner city junkies hopping on the Metra and sleeping outside of this place waiting for them to open. Are we going to have to worry about walking through our neighborhood? Where we park our cars? Whether or not we may step on a needle?

The residents of the apartment building we live in are mainly elderly. Are they now going to have to worry about push-in robberies? Whether or not they can go out after dark? If they can even sit out and enjoy the evening?

My husband and I have been living in the area for about 4 years now and have come to love the depot district. This clinic going into the area is going to kill it. Do we need to get someone who cares in that office?

Has this been decided or can we still stop this? If this is not stopped, you can be sure that we will be leaving the area for somewhere safer...

Regards,

Erica & Timothy Sexton

Berwyn, IL

---

**Mayor O'Connor**

| From: | Kate Sutter | | Sent: | Wed 7/16/2008 9:01 PM |
|---|---|---|---|---|
| To: | Nona N. Chapman (External Contact) | | | |
| Cc: | Mayor O'Connor | | | |
| Subject: | Proposed Methadone Clinic | | | |
| Attachments: | | | | |

Dear Alderwoman Chapman,

I am a resident of the 1st Ward of Berwyn. I attended the Open Public Meeting this evening regarding the proposed Methadone clinic in the Depot District. I am writing you this email to share with you my sincere and deep disappointment in this clinic being approved for our neighborhood.

I am an eight year resident of Berwyn, and a four year resident of the 1st ward. I am extremely proud of our community, and deeply concerned about the ramifications of this clinic opening. I have personal experience with heroin addicts, and methadone addicts. A family member of mine has been battling heroin addiction for over 15 years. He steals from whomever he can (family, friends, or strangers), he has little regard for anyone with authority, in fact, he has little regard for anyone who cannot provide him with his next fix. Last I heard, he was mixing his heroin use with his methadone treatments. He has never been to my home, as I do not want him to know where I live for fear of theft, vandalism, and harassment. Again, this is a member of my FAMILY.

I did read your letter that was poorly distributed in our area. (I found mine half buried underneath a window box in front of my home while I was gardening. It was not in the mailbox, as I would guess a letter of this importance would be placed.) I do understand your perception of your decision to vote in favor of this clinic. However, I would challenge you to also consider the impact it will have on the residents of this area, our property values, our crime rates, not to mention the safety and security of all residents.

As your constituent (and having voted for you in past elections), I ask you to change your vote to NO on July 22, in order to continue promoting the betterment of Berwyn. Your response to this will effect my vote in the next election.

I am willing to do what I can as a resident of beautiful Berwyn to support denying this clinic accommodations in our city. Please call on me if there is anything I can do.

Sincerely,

Kate Walczak

**Note:** The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer. Thank you. Fellowes, Inc.

-----------------------------------------------

Windows Live™   Home   Hotmail   Spaces   OneCare   MSN                                    markweiner1@hotmail.com
                                                                                          Sign out

Inbox
Junk
Drafts
Sent
Deleted (44)

Manage folders
Add an e-mail
account

Today
Mail
Contacts
Calendar

New    Reply    Reply all    Forward    Delete    Junk          Move to ▾              Options ❓

⚠ Attachments, pictures, and links in this message have been blocked for your safety.   Show content

**FW: meth clinic**
From: **Michele DiMaso** ,
⚠ This message may be dangerous.   Learn more
Sent: Fri 7/11/08 10:19 PM
To: aldchapmanward1... ; 2ndward@berwyn-il.gov; 3rdward@berwyn-il.gov; 4thward@berwyn-il.gov; 5thward@berwyn-il.gov;
6thward@berwyn-il.gov; 7thward@berwyn-il.gov; joel@berwynfirst.com; mocommor@ci.berwyn.il.us; moconnor@ci.berwyn.il.us

I sent this to Nona.
I now send it to all parties involved.
To Major O'Connor- THANK YOU.  You are an outstanding man.

---

From:
To: aldchapmanward1.
Subject: meth clinic
Date: Fri, 11 Jul 2008 15:01:03 -0500

Nona,
My name is Michele DiMaso and I lived in your ward.
I am amazed at the lack of judgment going on around Berwyn.
I moved here with my family four years ago.  I picked Berwyn for its
sense of pride and community.  It seemed like a great place to raise my
twin boys.

So this Meth lab, will it be close enough for our children to watch as they eat their ice-cream cones
from the family ice cream shop "over the rainbow"?

When I walk my dog with my children, and we go to the depot district, how should I explain the low life outside?

There are two other recovery centers already in Berwyn.  Why do we need a third?

Why was this voted on when two alderman could not attend?

We are trying to clean up Berwyn's image- why don't we work on that, instead of trying to clean up people coming
from outside our community?

I could come up with a list the length of my arm on issues that need addressing in our community.

Please stop and think.

RE-VOTE!!!!!!!!!!!
Thank you
Michele DiMaso
                ell phone call any time.

---

Use video conversation to talk face-to-face with Windows Live Messenger. Get started.

---

Making the world a better place one message at a time. Check out the i'm Talkathon.

Have a fast connection and want more features? Try the full version to see message previews in your inbox. (It's free, too.)

© 2008 Microsoft | Privacy | Legal                                        Help Central | Account | Feedback

# Thomas J. Pavlik

**From:** aldchapmanward1@aol.com
**Sent:** Friday, September 26, 2008 7:04 AM
**To:** Thomas J. Pavlik
**Subject:** Fwd: Opposition of the Bobby Buonauro Clinic Re: FOIA 08-210

-----Original Message-----
From: aldchapmanward1@aol.com
To: ~~~~~~~~~~~~~~~
Sent: Wed, 16 Jul 2008 1:31 pm
Subject: Re: Opposition of the Bobby Buonauro Clinic

Gloria,

There was a public hearing @ the Zoning Board of Appeals. It was a 7-0 vote in favor. The city council remanded it back to zoning and we were told we basically did not have a chance. We can't afford to waist hundreds of thousands unless the citizens really care. How can we win when Zoning approved this issue? No one came to the Zoning and raised any concerns, it was published and announced.

Unless I sent out this letter, who would have known? I need feedback and we were not getting any.

In order to reconsider my vote I need to hear from residents like yourself. I will do what my constituents request when I get some responses. That is why I distributed the letter, if it is better to spend the money for legal action, and try to deny the clinic, I will do so. (Many communities have lost.) I appreciate your response and it will be counted.

Thanks,

Nona

-----Original Message-----
From: orlando cruz < ___
To: AldChapmanWard1@aol.com
Sent: Tue, 15 Jul 2008 6:56 pm
Subject: Opposition of the Bobby Buonauro Clinic

Dear Ald Chapman:

I am writing with great opposition to the proposed placement of the Bobby Buonauro Clinic in the Depot District. In your letter to the residents of the 1st ward you mention the clinic has been attempting to open in Berwyn for 2 years now. Why has it taken you two years to raise this issue with the residents of the ward? In the mere day I have been aware of this issue I have reviewed statistics on opiate addiction and methadone maintenance therapy which has only heightened my concern and raised several

questions. First, is heroin use high in south Berwyn? Why is this clinic opening in a community that is not plagued with heroin users? Statistics indicate methadone maintenance therapy is not 100%--it does not work on all--especially those court ordered into treatment, those with multiple addictions, and those involved in criminal activity. Therefore, if this clinic opens in the depot district, we will be inviting unsavory characters who statistically will not succeed in drug treatment into our community. When those who fail treatment turn to illegal activity to support their addiction, will they return to their home communities which are likely already controlled by gangs or will they look to our community as fresh territory? Supporters of methadone clinics claim clinics take users off the street and decrease crime statistics. This argument makes sense on the west side of Chicago; however, the depot district does not have users on the street and crime attributable to heroin use. Furthermore, other research indicates the success of methadone clinics vary widely. Therefore, how successful is the Buonauro Clinic, do they screen their employees, what percentage of their clients are court ordered into treatment and have multiple addictions? Since the clinic will be close to many locations serving children, are any of their clients or staff sex offenders?

My husband and I are both medical professionals with doctorate degrees. We moved to Berwyn to be close to the medical district on the west side of Chicago, yet loved the quiet community of south Berwyn. If this clinic opens, we will certainly be leaving the community and other young professionals will not find a methadone clinic an attractive aspect of the neighborhood.

Finally, the impression I got from your letter was that you were opposed to the clinic, but didn't want the headache of fighting the clinic. I can assure you this tax paying voter would love for my tax money to fund this battle.

Thank you for your time,
Gloria Cruz
34th and Wenonah

---

The Famous, the Infamous, the Lame - in your browser. Get the TMZ Toolbar Now!

---

Find phone numbers fast with the New AOL Yellow Pages!

9/27/2008

You forwarded this message on 7/11/2008 5:54 PM.

**Mayor O'Connor**

| From: | Nick Bisesi | | Sent: | Fri 7/11/2008 5:01 PM |
|---|---|---|---|---|
| To: | Nona N. Chapman (External Contact) | | | |
| Cc: | 7thward@berwyn-il.gov; 3rdward@berwyn-il.gov; 2ndward@berwyn-il.gov; 4thward@berwyn-il.gov; Mayor O'Connor; joel@berwynfirst.com; 5thward@berwyn-il.gov; 6thward@berwyn-il.gov | | | |
| Subject: | Methadone Clinic - Please explain | | | |
| Attachments: | | | | |

Nona,

I am very concerned about the proposed methadone clinic in the depot district. I heard you voted yes to this issue in re-vote when the opposing aldermen were not present. I believe this issues deserves a re-vote with all aldermen present.

Aren't we trying to bring up the image of Berwyn. Your vote most certainly does not help the cause. The depot district should be built up with family-friendly businesses. It's a sad fact that when I want to take a nice afternoon out with my family, I go to the depot district in LAGRANGE, not my own town. There are times when I'm actually embarrassed to tell people I live in Berwyn. When my family moved here several years ago, I saw much potential for the depot district. I was excited and have been looking forward to great things. What a disappointment it has been to see it stagnate and remain largely unchanged, but hey, at least we all got free flags on the 4th of July!

I would like to know what possible reason you could have to think it is OK to have a methadone clinic in our downtown area near a preschool, a children's dance studio, an ice cream shop and.... wait for it...a bank! Brilliant! How will you feel when someone you know gets mugged by a desperate addict as they are coming out of the bank with some cash? Or worse yet, a child gets hurt or molested. Who will be held accountable? And what of the businesses nearby? They will certainly be affected in a negative way. I for one won't be bringing any business to Citizen's bank. Instead of reinvigorating the area, this clinic will cause it to go downhill further. This one seems like a no-brainer.

This clinic sounds like a most ridiculous idea, but I'd like to give you the benefit of a doubt. I assume you must have a very compelling reason for voting in favor of this (in an election year), so I'd like to give you the opportunity to explain yourself to me. I expect a timely response.

Sincerely,

Nick Bisesi
1st Ward Resident

Page 1 of 1

Windows Live Hotmail

Windows Live™    Home    Hotmail    Spaces    OneCare    MSN                                markweiner1@hotmail.com
                                                                                                      Sign out

Inbox
Junk
Drafts              New      Reply     Reply all    Forward     Delete     Junk          Move to ▾          Options  ⚙
Sent
Deleted (44)        Meth Clinic in Berwyn?

Manage folders      From:  Gayle Bisesi (
                           ⚑ You may not know this sender.  Mark as safe  |  Mark as unsafe
Add an e-mail       Sent:  Fri 7/11/08 5:11 PM
account             To:    aldchapmanward1
                    Cc:    5thward@berwyn-il.gov; 3rdward@berwyn-il.gov; 2ndward@berwyn-il.gov; 6thward@berwyn-il.gov; moconnor@ci.berwyn.il.us;
Today                      7thward@berwyn-il.gov; joel@berwynfirst.com; 4thward@berwyn-il.gov
Mail
Contacts            Dear Nona:
Calendar
                    As an expecting mother of the Berwyn Community, I am outraged to hear
                    that you, a fellow woman and leader of our community, would vote yes to
                    approving a meth clinic in our depot district. Let me ask you, do you
                    have children? What could you possibly be thinking? Why don't we just
                    put up a housing project for the addicts to live in while we are at it!
                    Oh my goodness....... if it's not one thing it's another. Our school
                    system not to long ago battled a case against a music teacher being
                    tried for 18 different counts of sexual abuse in 6 Berwyn schools.
                    What will this new venture bring to our community? People have warned
                    me about Berwyn and how it's not so great. I'm starting to believe it.
                    What a shame. All the beautiful trees and friendly people cannot
                    continue to mask what's really going on here nor shall we ideally sit
                    by while decisions like this are passed. We have a voice and intend to
                    use it!!

                    My husband and I love to take walks and go from South Berwyn over the
                    tracks to Proska Park all of the time - night and day. We have always
                    felt safe and enjoy this community. The idea of a meth clinic being in
                    our family path makes every cell of my body cringe. This is a serious
                    decision and I have no idea why anyone would say yes to this. Here we
                    thought our biggest concern would be teaching our child how to cross
                    Ogden at the light or how to be safe by the trains in the depot. Now
                    it will be, stay away from the depot district period!! Really now, why
                    can't we get a movie theater or Borders or nice shops that will draw
                    revenue to our district? Please explain...

                    This seriously makes me want to move and find a new community where I
                    feel safe and free to walk with my growing family. There is a
                    preschool and a children's dance studio in the depot district for
                    Pete's sake. This is putting a lot of people in danger - even you -
                    you live even closer to the depot than we do. I'm not sure whose back
                    is getting scratched here but this is not a healthy decision for the
                    community of Berwyn.

                    It has been sad to watch the depot district just sit there when it
                    could be thriving. Maybe I will just uproot my family and move to
                    LaGrange where things are beautiful and kids feel free to hang out in
                    the depot district, watch movies, take the train, go to great
                    restaurants and book stores.

                    This meth clinic is ridiculous and I hope you will find it in the
                    deepest part of your heart to vote again and SAY NO!

                    I do expect a timely response. Thank you.

                    Considering moving -

                    Gayle Bisesi
                    1st Ward


Have a fast connection and want more features? Try the full version to see message previews in your inbox. (It's free, too.)

© 2008 Microsoft | Privacy | Legal                                              Help Central | Account | Feedback

---

🌐 You forwarded this message on 7/11/2008 4:07 PM.

**Mayor O'Connor**

| | | | |
|---|---|---|---|
| **From:** | Kim Wade | **Sent:** | Fri 7/11/2008 2:16 PM |
| **To:** | Mayor O'Connor | | |
| **Cc:** | | | |
| **Subject:** | Fw: Re: Methadone clinic | | |
| **Attachments:** | | | |

-------Original Message-------

*From:* Kim Wade
*Date:* 7/11/2008 2:14:44 PM
*To:* aldchapmanward1;     2ndward@berwyn-il.gov; 3rdward@berwyn-il.gov; 4 thward@berwyn-il.gov; 5thward@berwyn-il.gov; 6thward@berwyn-il.gov; 7thward@berwyn-il.gov; joel@berwynfirst.com; mocommor@ci.berwyn.il.us
*Subject:* Fw: Re: Methadone clinic

Hello.

First off, I want to tell you all how much I appreciate the service you provide to our community. I know it takes up a lot of your time and isn't always easy. So, on behalf of all of us, thank you.

Secondly, I have yet to hear back from you, Nona. I am sure you are busy today as I know of many others who are trying to get you to call them back, please respond to someone.

I am writing to all of you (Nona, Robert, Michael and Michelle) who want to add another drug rehab center into our district to please explain your thinking to us who are trying to raise a family here. I can not imagine taking my preschoolers for a walk up and down the district or on a train ride when there are addicts and users coming in and out of therapy during the morning and afternoon hours. For our protection and, for God sake, their privacy, I do not understand why you would take our prime retail location, our downtown most populated area, to give way for opening up yet another drug clinic. I am told we have 3 rehab facilities in Berwyn already. Please explain.

Also, I challenge you all to explain it to the 70 + families that are in an uproar about this. We need to vote on this issue again. We need a re-vote when all the alderman are in attendance after you can hear what the residents think and what the residents want. I believe that is fair. The issues: why do we need another rehab center in Berwyn? Why in our prime retail area? What about the family friendly ideas we have been making billboards and commercials and campaigns about? How does this project coming into our district area follow that? Why are we asking the riff-raff and gangbangers from Chicago and the west side to jump off at our Depot? I can not think of any reason why this would be a good idea. Please explain.

To Mr. Day and Mr. Ramos, please consider this vote very carefully. I hope you will get a chance to vote. To me, it seems that Berwyn really does want to make a change in a different direction. We want Berwyn to continue to be a family friendly, safe and thriving community. The residents are behind this. We will stand together. Please vote No against this use.

To Mayor O'Connor, Mark Weiner and Joel Erickson, thank you for standing firm. It is much appreciated. You are taking Berwyn where the residents want it to go and it will be apparent in the elections. We appreciate all that you are doing for us and our families.

Most sincerely,
Kim Wade
3rd Ward

-------Original Message-------

**From:** Kim Wade
**Date:** 7/11/2008 8:41:56 AM
**To:** aldchapmanward1
**Subject:** Re: Methadone clinic

My cell number is

-------Original Message-------

**From:** aldchapmanward1
**Date:** 7/10/2008 4:54:19 PM
**To:** synchro77
**Subject:** Re: Methadone clinic

Please send me you phone number and when you can be reached.

Thanks,

Nona

-----Original Message-----
From: Kim Wade
To: 1stward@berwyn-il.gov
Sent: Thu, 10 Jul 2008 12:23 pm
Subject: Methadone clinic

FLAVOR00-NONE-0000-0000-000000000000 0.000000 ;
Hello, Nona.

Word is out that you have voted yes to allow the opening of a methadone clinic in our depot district.  I can't imagine how anyone could think this is a good idea for Berwyn.  The whole idea of using the depot district to lift Berwyn and it's reputation up is counter productive to approving this type of a clinic in this type of location.

Having a rehab or detox facility in our 'downtown' area will restrict businesses from wanting to come here.  It will most certainly influence the types of businesses that do come.  It will prevent the children and families that would want to walk and shop in the area from feeling comfortable due to the loitering and traffic coming in and out.  It is putting a face on Berwyn that is not in line with what we say we are trying to do.

I am not opposed to having a facility to rehabilitate drug users, but I am extremely opposed to it being in this area - our 'prime' location.

I am not able to attend the meeting on July 22nd.  Please let me know your thoughts.
Kim Wade

---

The Famous, the Infamous, the Lame - in your browser. Get the TMZ Toolbar Now!

---

FREE Animations for your email – by IncrediMail! Click Here! 

## Thomas J. Pavlik

**From:** aldchapmanward1@aol.com
**Sent:** Friday, September 26, 2008 6:51 AM
**To:** Thomas J. Pavlik
**Subject:** Fwd: Methadone Clinic Re: FOIA 08-210

-----Original Message-----
From: aldchapmanward1@aol.com
To: l
Sent: Mon, 14 Jul 2008 11:04 pm
Subject: Re: Methadone Clinic

Micheal,

In order to reconsider my vote I need to hear from residents like yourself. I will do what my constituents request when I get some responses. That is why I distributed the letter, if it is better to spend the money for legal action, and deny the clinic (temporally), I will do so. I appreciate your response and it will be counted.

Thanks,

Nona

-----Original Message-----
From: Micheal Heavens <                    >
To: aldchapmanward1@AOL.com
Sent: Sun, 13 Jul 2008 8:03 pm
Subject: Methadone Clinic

Ms. Chapman,

As a homeowner in your ward I have been disappointed in some of your past decisions but this current one, to vote yes to the Methadone Clinic just shows me that you seem to care more about politics than the people of your ward, the children of Berwyn, and everything that  ;Berwyn stands for. In your flyer that was handed out you speak of how committed you are to Berwyn, how hard you worked for making Berwyn a better place but then vote yes for a clinic like this one to be put up in the heart of our town, in the path to where our children wa lk to school, and in the neighborhoods of Berwyn. If you were as committed to Berwyn and its residents a "no" vote would have been your only vote, even if it didn't mean anything, or change anything, at the very least it would have shown all of us your true commitment to the safety of the people of Berwyn.

Have you considered these facts that have been found about these types of clinics? It is a fact that when one of these clinics opens up that instead of the drug addicts going home they hang around the clinic or the neighborhood so they don't have to travel back to it, it is a fact that when this is done these drug addicts like to look around at houses and see which ones are good targets to get money from for their drugs, since not all of these drug users have insurance that will pay for their drugs. have you considered how the children of Berwyn will

Case: 1:08-cv-06687 Document #: 1 Filed: 11/21/08 Page 62 of 92 PageID #:62

be impacted by this clinic opening up early in the morning and the children walking or riding their bikes to school, how people will not feel safe just going out for a20simple walk in our depot area, or even in their own neighborhoods?

Thank you Ms. Chapman, thank you for showing us the voters of=2 0the 1st ward and the residents of Berwyn just where you stand when it comes to the safety of all the people of Berwyn.

---

The Famous, the Infamous, the Lame - in your browser. Get the TMZ Toolbar Now!

---

Find phone numbers fast with the New AOL Yellow Pages!

9/27/2008

0414

**Thomas J. Pavlik**

| | |
|---|---|
| **From:** | aldchapmanward1@aol.com |
| **Sent:** | Friday, September 26, 2008 6:51 AM |
| **To:** | Thomas J. Pavlik |
| **Subject:** | Fwd: Methadone Clinic Re: FOIA 08-210 |

-----Original Message-----
From: aldchapmanward1@aol.com
To:
Sent: Mon, 14 Jul 2008 11:05 pm
Subject: Re: Methadone Clinic

Tony,

In order to reconsider my vote I need to hear from residents like yourself. I will do what my constituents request when I get some responses. That is why I distributed the letter, if it is better to spend the money for legal action, and deny the clinic (temporally), I will do so. I appreciate your response and it will be counted.

Thanks,

Nona

-----Original Message-----
From: Anthony Harris < >
To: Nona Chapman <aldchapmanward1@aol.com>
Sent: Sun, 13 Jul 2008 6:15 pm
Subject: Methadone Clinic

Hello Nona,

I hope that you are well.

I am writing to express my extreme disagreement with your support for the Methadone Clinic. The rate of success for the treatment of addicts is very small and so the cline will draw active drug addicts from all alone the Burlington Metra line. Many will not wish to stray very far from there source of Methadone and settle down in Berwyn. I believe that there will be a dramatic increase in crime. Below is a posting from the BTF from Rita she works for the Berwyn Police Department and has a brother that is a heroin

addict,

"This is *SUCH* an incredible disappointment to me. Not that I thought Berwyn would ever become Winnetka or anything but this really sucks for our community.

My brother was a heroin addict. He was eventually put on a high dosage of methadone, and weaned to a lesser dosage, though once he went off the met hadone, he turned to crack. No matter what *BS* people tell you and how they may try to pull the wool over your eyes, do not believe it. Once an addict, always an addict. Sure, there may be the one out of a thousand who finally stops using, but that is definitely *NOT* the norm. These people usually remain on methadone forever. And the 'jonesing'=2 0is just as bad w/out methadone as it is w/out heroin. No matter how much I loved my brother, I would not have let him dupe me into thinking that he was any different from any other addict. They lie and steal to get a few cents here and there, just to keep up their habit.

If/when this clinic comes to our city, we most definitely will see a rise in crime and I'm sure there will be *ALOT* of unnecessary police hours spent, on these disgusting slime balls. So f**king what if the clinic closes at noon...what, you think these addicts are then going to hop back on the train to get back to their lovely homes and families? Yeah right! Many of these scum wads are homeless and their families no longer want anything to do with them. Some of them may park their asses here in Berwyn, simply because it's closer to the clinic. Others may come out here and befriend the Berwyn addicts and thus, spend more time with their newfound friends.

Do not let people deceive you. They'll feed you the lines 'The face of the 'user' has changed...', 'Many users are just like you and me...' - BULLSHIT!!! Would you20rob (or let your addict friends rob) your parents house to sell the TV etc, in order to get your fix? Would you give up your family and friends for heroin? That's bullshit. I didn't cause them to do drugs and they are not 'just like you and me'!

I may complain about many things here in Berwyn, but *this* is the straw that just may break this camels back –"

I have read your letter and understand your concern that there could be a law suit. However, I believe that a lawsuit would be worth the cost and in the long run much cheaper that the additional police that will be needed to control that increase in crime.

I happen to think very highly of Sal and Liz, however, I do not support there business venture in the depot district. I believe that this will be very harmful to Berwyn.

Sincerely,

Tony Harris

---

The i'm Talkaton. Can 30-days of conversation change the world? Find out now. =

---

The Famous, the Infamous, the Lame - in your browser. Get the TMZ Toolbar Now!

---

Find phone numbers fast with the New AOL Yellow Pages!

9/27/2008                                                                 0416

## Thomas J. Pavlik

**From:** aldchapmanward1@aol.com
**Sent:** Friday, September 26, 2008 7:24 AM
**To:** Thomas J. Pavlik
**Subject:** Fwd: Methadone Clinic to open in Depot District?! Re: FOIA 08-210

-----Original Message-----
From: aldchapmanward1@aol.com
To: Info@berwyninformer.com
Sent: Sat, 19 Jul 2008 4:28 am
Subject: Re: Methadone Clinic to open in Depot District?!

Please see the attached communication for Tuesdays council meeting changing my vote to "No" and not allowing the Bobby Buonauro clinic.

Thanks,

Nona

-----Original Message-----
From: Info@berwyninformer.com
To: AldChapmanWard1@AOL.com
Sent: Mon, 14 Jul 2008 6:20 pm
Subject: Methadone Clinic to open in Depot District?!

There will be a meeting in the municipal parking lot on Grove Avenue in the 3300 block at 6 pm on Wednesday, July 16th to discuss this potential clinic.
0A
A note from the Mayor:

"The city council led by Alderman Chapman, Skryd, Phelan and Lovero have approved the addition of a Metadone clinic to move into the Odeh Medical building across from the Salerno 's restaurant on Grove Ave in the Depot Business District. (Methadone is a drug used to treat Heroin addicts) I have called for an open Air Town meeting to present the facts to the community and encourage the residents to voice their opinion along with mine against allowing this clinic to open at this location. I will be inviting all of the aldermen, the owner of the building as well as the owner of the clinic to present their side of the story. I agree that these types of clinics are necessary but not in the heart of our most important business district. The meeting will be held in the municipal parking lot on Grove Ave. in the 3300 block at 6 pm on Wednesday July 16th. Any questions may be directed to my e-mail or to my office at city hall 788-2660 ext 231, thank you."

Do we really want this clinic?!

The location of this clinic has been chosen because of its nearness to public transportation and will,

9/27/2008                                                                                                      0517

therefore, attract a very large number of drug addicts from all along the Burlington Metra line. The clinic will not only treat drug addicts in Berwyn but possibly thousands of others, bringing in a population with a strong tendency to commit crime. This will unavoidably result in an increase in crime. The owners of the clinic will make money hand over=2 0fist; however, the community as a whole will suffer. The clinic will be located 3245 Grove Avenue and that is a District 100 approved path for students to cross the Metra Tracks to go to school. So every school day, there will be a mix of drug addicts and young students.

You be the judge

Please pass this e-mail to anyone who might be able to attend the meeting.

------
PLEASE DO NOT REPLY TO THIS EMAIL.
You can email the Berwyn Informer at the following email address: berwyn_informer@hotmail.com

------
If you do not want to receive any more newsletters, this link

To update your preferences and to unsubscribe visit this link



The Famous, the Infamous, the Lame - in your browser. Get the TMZ Toolbar Now!
----------MB_8CAB798FDED4A06_16A0_687B_FWM-M14.sysops.a ol.com--

Find phone numbers fast with the New AOL Yellow Pages!

9/27/2008

## Thomas J. Pavlik

| | |
|---|---|
| **From:** | aldchapmanward1@aol.com |
| **Sent:** | Friday, September 26, 2008 7:29 AM |
| **To:** | Thomas J. Pavlik |
| **Subject:** | Fwd: Methadone Clinic???? Re: FOIA 08-210 |
| **Attachments:** | Bobby_Buonauro_Clinic_reconsideration_vote_7-17-08[1].pdf |

-----Original Message-----
From: aldchapmanward1@aol.com
To: donalddriesse
Sent: Sat, 19 Jul 2008 4:43 am
Subject: Re: Methadone Clinic????

Please see the attached communication for Tuesdays council meeting changing my vote to "No" and not allowing the Bobby Buonauro clinic.

Thanks,

Nona

-----Original Message-----
From: Donald J. Driessen
To: aldchapmanward1@aol.com
Sent: Fri, 11 Jul 2008 9:46 pm
Subject: Re: Methadone Clinic????

I read it and I understand your position in this.......but if its allowed under city ordinance we should get about making it illegal.    Nothing bad may come of it, but if it brings some bad sorts to this area.....and perhaps an addict abuses some child in our neigborhood......who do you think will be blamed.   If I can forsee this now, would you not be judged at such if it does happen...I am on record.

Best,

*__aldchapmanward1@aol.com__* wrote:

> Donald,
>
> Please see the attached. Feel free to pass it on. Or give me a call to discuss.
>
> Thanks,
>
> Nona
> 708-484-6662

-----Original Message-----
From: Donald J. Driessen
To: aldchapmanward1@aol.com
Sent: Fri, 11 Jul 2008 11:57 am
Subject: Methadone Clinic????

What were you thinking........I will ensure your opponent gets unlimited support in this election cycle--If this vote does not get reconsidered on July 22nd.   Drug addicts from chicago taking the train out to Berwyn get their fix, like our image is not bad enough?     Votes like this that are done without a full council present are the reason consequences occur in Elections and we have some pretty upset folks at the moment.

There is currently about 70 families upset about this and I sure you will be hit with more than this emial.


**Donald J. Driessen**
**Realtor/Consultant**
**Prudential Source One**
**Printers Row**

**www.BuyandSellChicago.com**
**www.Asset-Exports-From-US.com**



The Famous, the Infamous, the Lame - in your browser. Get the TMZ Toolbar Now!


**Donald J. Driessen**
**Realtor/Consultant**
**Prudential Source One**
**Printers Row**

**www.BuyandSellChicago.com**
**www.Asset-Exports-From-US.com**



The Famous, the Infamous, the Lame - in your browser. Get the TMZ Toolbar Now!


9/27/2008                                                                              0586

Find phone numbers fast with the New AOL Yellow Pages!

Exhibit G

**Thomas J. Pavlik**

| | |
|---|---|
| **From:** | Robert Lovero |
| **Sent:** | Wednesday, September 17, 2008 12:00 PM |
| **To:** | Thomas J. Pavlik |
| **Subject:** | Fwd: Bobby Buonauro Clinic |

---------- Forwarded message ----------
From: Robert Lovero
Date: Fri, Jul 11, 2008 at 10:43 PM
Subject: Fwd: Bobby Buonauro Clinic
To:

Forwarded conversation
Subject: Bobby Buonauro Clinic
------------------------

From: Robert Lovero
Date: Fri, Jul 11, 2008 at 1:14 PM
To:

Barnali and Leah,

I voted for the clinic because legally there was no legitimate reason to deny. The building they are going in consists of medical related offices and clinics. It will not be generating retail taxes in the district and therefore does not violate the intent of the retail overlay, especially since the whole building is considered amedical clinic. The use is consistent. The zoning board reviewed this petition and after concluding it should be approved, the Council remanded it back for reconsideration. The Executive Secretary of the Board, an attorney and a gentleman who has directed the ZBA for as long as I can remember, on both occasions determined that the initial denial from the City should never have occurred and their was no reason to send the matter to zoning in the first place, nor any legal reason to deny the use of this office space by the clinic.

In addition, the circumstances surrounding this applicant, was further incentive to me to not incur yet another lawsuit against the City because of a total disregard for proper procedure. The operators and owners are Berwyn residents with a current clinic in Evanston which has experienced no detrimental incidents as conjured up when non-medical folk like myself think of a methadone clinic. I performed my due diligence by asking questions and doing a little research before my first vote on this matter. With little or no proof that this clinic in this location would result in the problems that I could conceive of, I was reluctant to invite a lawsuit by denying a business use that would eventually cause the City a finacial liability in a case that I believe we could not win.

Please visit the numerous websites that review and explain the services and treatments provided by the "Bobby Buonauro Clinic" as well as the many uses for methadone treatment. The services range from post partum depression for women to drug and alcohol treatment. I addition this clinic is a private pay clinic. Speak to the owner who shows the same concern for the City of Berwyn that we share.
Understand her passion for the medical area that she has persued.

I hope that you can understand why I voted the way I did. Sometimes we have hard decisions which seem to go against your gut reactions. It becomes important for me to do step back, do the due diligence and decide in a fair and impartial manner. Never, however, does my decision subtract from my desire to do the best for Berwyn. Thanks for your time, patience and support.

Bob Lovero

--

1

0315

Robert J. Lovero

Berwyn, IL 60402

----------
From: Barnali Das Khuntia <         m>
Date: Fri, Jul 11, 2008 at 3:33 PM
To: Robert Lovero              , "Name missing –                    m"

Bobby,

Thank you for your prompt response. While we understand why you voted in favor of the clinic, our concern is that this issue is being used against you as propaganda by your opposition. In fact, in the last three hours, I have received over thirty emails from the Berwyn Families list regarding this issue. This morning an email was sent out from Gerry Galloway asking everyone to attend City Council on the 22nd and help the Mayor set up a Town Hall meeting next week to discuss the issue. At this point, I believe that we need a response from you. I will be happy to forward your letter to the group – with of course written permission from you or perhaps the adding of "please forward to friends & family." to your previous email.

Although we understand your rationale for your voting the way you did, it is in complete opposition to the views of your constituents. We hope that you will reconsider bringing this up for a re-vote.

If you would like to read the emails that are being being circulated I will forward them to you.

As we look forward to your Mayoral Campaign, we encourage you to use electronic communications more aggressively since it is clear that other local politicians and activists are using it to spread news/propaganda without response from your party.

Look forward to hearing from you,

Barnali & Alok Khuntia


From: Robert Lovero
Sent: Friday, July 11, 2008 1:14 PM
To:                 m ;                    λ
Subject: Bobby Buonauro Clinic
----------
From: Robert Lovero
Date: Fri, Jul 11, 2008 at 7:30 PM
To: "Michele D. Skryd" <mskryd(          >


----------
From: Leah Garcia <
Date: Fri, Jul 11, 2008 at 7:37 PM
To: Robert Lovero

Bob,

I appreciate the quick response and am glad hear your explanation. I am confused, however, about why the council voted on approving the petition from this business. Is this commonplace for all businesses to have to get "voted in" or could this possibly be

2

going back and forth because of ethical nature of this issue?

I really don't think that this clinic would pose any problem to the neighborhood just as any other kind of doctor's office wouldn't.  I think that the people who would use the clinic would be doing so in order to try to better their lives and in turn, their communities.

There is a lot of negative talk going around Berwyn these past couple of days regarding the clinic.  I just don't think that there is enough knowledge about what it is really about, just a lot of hearsay and ignorance.

Leah


> Barnali and Leah,
>
> I voted for the clinic because legally there was no legitimate reason to deny. The building they are going in consists of medical related offices and clinics. It will not be generating retail taxes in the district and therefore does not violate the intent of the retail overlay, especially since the whole building is considered a medical clinic. The use is consistent. The zoning board reviewed this petition and after concluding it should be approved, the Council remanded it back for reconsideration. The Executive Secretary of the Board, an attorney and a gentleman who has directed the ZBA for as long as I can remember, on both occasions determined that the initial denial from the City should never have occurred and their was no reason to send the matter to zoning in the first place, nor any legal reason to deny the use of this office space by the clinic.


--
Leah ----------
From: Robert Lovero
Date: Fri, Jul 11, 2008 at 7:39 PM
To: Barnali Das Khuntia <            .com>


Barnali and Alok,

Thank you for your concern. My views for the betterment of Berwyn have not changed nor been altered by this vote. Mr. Gerry Gallaway is the Mayor's campaign manage, a fact he fails to mention in his e-mail. If in fact this vote is overturned a lawsuit surely will be filed and I believe we will lose and the City will just be in more debt. And the clinic will still be there. Please feel free to circulate my response to everyone. Thank you.


----------
From: Robert Lovero
Date: Fri, Jul 11, 2008 at 7:42 PM
To: Leah Garcia <                    n>


Leah, the City Council votes on all matters which are sent to the zoning board. Not all businesses are sent there. In this case the zoning board advised that they saw no reason to send this business to them and saw ne legal reason to deny them. Thus my vote. Thanks for sharing your thoughts and feel free to share my response with anyone you deem necessary. Bob
----------
From: Leah Garcia <                    .com>
Date: Fri, Jul 11, 2008 at 7:44 PM
To: Robert Lovero <


Sounds great, Bob.  I'm with you all the way.
--
Leah


--

3

Robert J. Lovero

Berwyn, IL 60402

e-mail:

4

Exhibit H

# Alderman
# Nona N. Chapman
### Berwyn, Illinois

To all who are concerned,

Regarding the Bobby Buonauro Clinic I am the most concerned. I am a life long resident of the 3400 block of Home Ave. I am very passionate about the Berwyn community. I became involved with the city 8 years ago, when Michael A. O'Connor was still the First Ward Alderman. He implored me to get involved for a better Berwyn because I am a strong, level headed, common sense person with a lot of passion for this community. Today, I am still that same person but with more knowledge of the law. I am the strongest supporter of the Historic Depot District, and also a founding member of the "Special Events Committee". No other elected official has put more sweat into this area than I have. I work very hard with our special events to attract business to the Depot District.

That being said, I have been in touch with the owners of the Bobby Buonauro Clinic on and off for over 2 years. Three times I have persuaded them not to use unsuitable locations in storefronts in the Depot District. This final time was out of anyone's control. The owners requested space in a medical office building with related offices and clinics, and yes, it is in the Depot District. The "use" does not violate the intent of the retail overlay, because the whole building is considered medical offices/clinic.

The zoning board reviewed this petition and approved the medical center. But, prior to the meeting a member of the zoning board did an area investigation, spoke with the owners of the clinic and the building, had the zoning hearing and reported this should be approved. This medical facility is to have hours of operation Monday thru Friday 5am to 12pm and Saturdays 7am to 10am. During the April 8, 2008 City Council meeting, the council denied the decision 4 to 4, with the mayor breaking the tie. After that decision, the legal council for the owner and the legal council for the city began discussing the decision. Legal council brought it back to the city council in a closed meeting, and after hearing the evidence the city council remanded it back to the Executive Secretary of the Zoning Board for reconsideration. The Executive Secretary of the Board, an attorney and a gentleman who has directed the Zoning Board of Appeals for at least 20 years, determined that the initial denial from the City Council should never have occurred. It should not have gone to zoning in the first place, because there was no legal reason to deny the use of this office space by this clinic. The communication was placed on the council floor by the Law Department, there was no intent to not allow all the Alderman to vote, but all of the council knew they were not going to be there 2 weeks prior. When any of the Alderman miss a council meeting, there is always a chance of missing an opportunity to hear from all the Alderman, on every issue. Both zoning board communications were further proof for me to not invite another lawsuit against the city because of improper procedure.

The owners of the Bobby Buonauro Clinic are Berwyn residents with a current clinic in Evanston which has experienced no detrimental incidents as the average person would think of a methadone clinic. I spoke with 3 independent attorneys and asked the hard questions, from my discussion with them, I do not see any way out but to allow this clinic.

I hope that you can understand why I voted the way I did. Sometimes we have to make hard decisions which go against your passion for the area. If I voted only with my heart and the passion for the area I would have said "NO! Not in our Depot Bubble", but with my knowledge as to what will be in store I am reluctant to invite more lawsuits by denying this business. With the legal fees and the loss of funds to our city the clinic would still be in this location. I had to try to do what I thought was financially best and legal for our city.

I voted for the clinic because legally there was no legitimate reason to deny it.

*Nona N. Chapman*

Nona N. Chapman
1st Ward Alderman
AldChapmanWard1@AOL.com

Exhibit I

## Thomas J. Pavlik

| | |
|---|---|
| **From:** | aldchapmanward1@aol.com |
| **Sent:** | Friday, September 26, 2008 7:06 AM |
| **To:** | Thomas J. Pavlik |
| **Subject:** | Fwd: Please reconsider Re: FOIA 08-210 |
| **Attachments:** | Meth_1st_ward_residents_4-12-08.pdf |

-----Original Message-----
From: aldchapmanward1@aol.com
To: _____ t
Sent: Wed, 16 Jul 2008 3:20 pm
Subject: Re: Please reconsider

There was a public hearing @ the Zoning Board of Appeals. It was a 7-0 vote in favor. The city council remanded it back to zoning and we were told we basically did not have a chance. We can't afford to waist hundreds of thousands unless the citizens really care. How can we win when Zoning approved this issue? No one came to the Zoning and raised any concerns, it was published and announced.

Unless I sent out this letter, who would have known? I need feedback and we were not getting any.

In order to reconsider my vote I need to hear from residents like yourself. I will do what my constituents request when I get some responses. That is why I distributed the letter, if it is better to spend the money for legal action, and try to deny the clinic, I will do so. (Many communities have lost.) I appreciate your response and it will be counted.

Thanks,

Nona

-----Original Message-----
From: _ _____ t
To: aldchapmanward1@aol.com
Sent: Wed, 16 Jul 2008 3:05 pm
Subject: Please reconsider

Nona,

We are writing to ask you to reconsider your approval vote of the methadone clinic in the Depot District. We understand that you have received lots of input regarding this matter. We feel strongly that this is a mistake. The Depot District has the potential to be a thriving retail/residential area. The potential problems that come with the presence of drug addicts will not help the Depot District thrive nor do they make Berwyn the place we want to raise our daughter. Please reconsider your vote.

Thank you,

Kara Kesselring & Patrick Williams

--
Kara Kesselring
www.karakesselring.com

---

The Famous, the Infamous, the Lame - in your browser. Get the TMZ Toolbar Now!

---

Find phone numbers fast with the New AOL Yellow Pages!

Exhibit J

**Mayor O'Connor**

| | | | |
|---|---|---|---|
| **From:** | Michael O'Connor | **Sent:** | Sun 7/13/2008 11:41 AM |
| **To:** | Mayor O'Connor | | |
| **Cc:** | | | |
| **Subject:** | Methadone Clinic proposal | | |
| **Attachments:** | | | |

The city council led by Alderman Chapman, Skryd, Phelan and Lovero have approved the addition of a Metadone clinic to move into the Odeh Medical building across from the Salerno's restaurant on Grove Ave in the Depot Business District. (Methadone is a drug used to treat Heroin addicts) I have called for an open Air Town meeting to present the facts to the community and encourage the residents to voice their opinion along with mine against allowing this clinic to open at this location. I will be inviting all of the aldermen, the owner of the building as well as the owner of the clinic to present their side of the story. I agree that these types of clinics are necessary but not in the heart of our most important business district. The meeting will be held in the municipal parking lot on Grove Ave. in the 3300 block at 6 pm on Wednesday July 16th. Any questions may be directed to my e-mail or to my office at city hall 788-2660 ext 231, thank you.

Exhibit K



# The City of Berwyn

# Michael A. O'Connor
Mayor

## A Century of Progress with Pride

6700 West 26th Street   Berwyn, Illinois  60402-0701   Telephone: (708) 788-2660   Fax: (708) 788-2567
www.berwyn-il.gov

Date:      July 18, 2008

To:        Members of the City Council

From:      Mayor Michael A. O'Connor

Re:        Ordinance to Prohibit Methadone Clinics in Berwyn

Ladies and Gentlemen:

I would like to introduce a referendum for the November ballot which would prohibit methadone clinics in the City of Berwyn.

Upon your approval please, refer to the Law Department.

Sincerely,

Michael A. O'Connor
Mayor

0001

Exhibit L

**MICHAEL A. O'CONNOR**
**MAYOR**

**THOMAS J. PAVLIK**
**CITY CLERK**

## MINUTES
## BERWYN CITY COUNCIL
## JULY 22, 2008

1. The regular meeting of the Berwyn City Council was called to order by Mayor O'Connor at 8:21 p.m. Upon the call of the roll, the following responded present: Chapman, Ramos, Weiner, Skryd, Day, Phelan, Lovero, Erickson. Absent: none.

2. The Pledge of Allegiance was recited and a moment of silence was observed for the safety of our armed forces, police, firefighters, and paramedics.

3. The Open Forum portion of the meeting was announced. Mayor O'Connor informed all, of the City Council rule regarding agenda items, which does not allow anyone to speak in Open Forum regarding any item on the Council agenda, and stated that the rule will be enforced, due to the volume of residents in attendance, regarding the Methadone Clinic. The Mayor recognized Sandy Van Goethem of 7124 Riverside Drive, who spoke on the 16th Street Theater and the financial difficulties because a Grant was not received and requested contributions and support from all, the Mayor recognized Mick Ross of the AFSCME union who read a statement into the record regarding prescription drug coverage co-pay and requested to provide relief for lower income employees and also spoke regarding the RFP on the agenda and feared the RFP for insurance broker would be counter productive and is in support of current Blue Cross/Blue Shield insurance broker and stated that he was dropping the appeal regarding the FOIA about same, Alderman Skryd questioned the Mayor about the possibility of changing the location for tonight's meeting due to the volume of people, to the community center, the Mayor said that it was considered, but feared notification would have been difficult and most would not have known about the change.

4. The minutes of the regular Berwyn City Council meeting of July 8, 2008 were submitted. Thereafter, Chapman made a motion, seconded by Erickson, to reconsider item #21, of the July 8, 2008 minutes. The motion to reconsider carried by the following roll call: Yeas: Chapman, Weiner, Skryd, Phelan, Lovero, Erickson. Nays: none. Abstain: Ramos, Day. Thereafter, Chapman made a motion, seconded by Erickson, to amend the motion in item #21, the motion to amend the motion carried by a unanimous roll call vote. Thereafter, Chapman made a motion, seconded

0821

BERWYN CITY COUNCIL MEETING
JULY 22, 2008

by Erickson, to deny the request of Conditional Use to be granted in a C-2 District regarding the Bobby Buonauro Clinic, 3245 Grove Avenue. The motion to deny, carried by a unanimous roll call vote.

5. The minutes of the regular Berwyn City Council meeting and the Committee of the Whole of July 8, 2008 were submitted. Thereafter, Chapman made a motion, seconded by Skryd, to concur and approve the minutes as amended and to approve the Committee of the Whole minutes of July 8, 2008 as submitted. The motion carried by a voice vote.

6. Erickson made a motion, seconded by Lovero, to suspend the rules and bring forth item I-4. The motion carried. Item I-4 is a communication from the Fire and Police Commissioners regarding the appointment of Carl J. Reina, Jr. to the rank of Lieutenant. Thereafter, Lovero made a motion, seconded by Skryd, to concur and approve the appointment as submitted. Thereafter, Clerk Pavlik administered the oath of office and the Mayor and City Council extended congratulations.

7. Chapman made a motion, seconded by Skryd, to suspend the rules and bring forth item G-1. The motion carried. Item G-1 is a communication from the City Clerk regarding Dollars for Scholars recipients. Thereafter, Clerk Pavlik announced the 2008, Fall Scholarships winners as follows: Alexander Grozdic, graduate of Morton West High School, and Elizabeth McKinley, graduate of Fenwick High School, and presented an Award Certificate to Alexander Grozdic, who was in attendance. Thereafter, Clerk Pavlik congratulated the recipients and acknowledged the BDC Depot District Events committee for their continued support and the Berwyn Township, Board of Trustees for their $500 grant for the 2008 scholarship and the pledge of $500 for the 2009 school year. Thereafter, Lovero made a motion, seconded by Skryd, to accept the matter as informational. The motion carried by a voice vote.

8. Weiner made a motion, seconded by Chapman, to suspend the rules and bring forth item F-8. Item F-8 is a communication from the Mayor regarding the appointment of Rebecca Houze to the Berwyn Historic Preservation Commission. Thereafter, Weiner made a motion, seconded by Skryd, to concur and approve the appointment as submitted. The motion carried by a voice vote. Thereafter, the Mayor and Council recognized and congratulated Ms. Houze.

9. Weiner made a motion, seconded by Skryd, to suspend the rules and bring forth item J-7. The motion carried. Item J-7 is a communication from the Berwyn Park District requesting the installation of a wireless antennae facility at Proksa Park, located at the corner of 29th Place and Home

2

0822

BERWYN CITY COUNCIL MEETING
JULY 22, 2008

Avenue. Thereafter, Weiner made a motion, seconded by Erickson, to refer the matter to the Zoning Board of Appeals. The motion carried by the following roll call: Yeas: Chapman, Weiner, Skryd, Day, Lovero, Erickson. Nays: Phelan.

10. Chapman made a motion, seconded by Lovero, to suspend the rules and bring forth item F-1 and to bring forth items J-3 and J-4 from the Berwyn Police department regarding "National Night Out" and "Take Back the Night Rally" and mark as germane. The motion carried. Item F-1 is a Proclamation from the Mayor recognizing "National Night Out" on Tuesday, August 5, 2008 to be held at the Morton West Stadium and fields supporting the 25th "Annual National Night Out event". Thereafter, Lovero made a motion, seconded by Skryd, to adopt the Proclamation as presented. The motion carried by a voice vote.

11. The Berwyn Development Corporation submitted a communication regarding the Cermak Road Median Construction. Thereafter, Skryd made a motion, seconded by Lovero, to concur and approve the attached change order in an amount not to exceed $151,890. The motion carried by a unanimous roll call vote.

12. The Mayor submitted a communication regarding a parking plan at 32nd and Harlem Avenue. Thereafter, Chapman made a motion, seconded by Skryd, to defer the matter until the end of the meeting. The motion carried by a voice vote.

13. The Mayor submitted a communication regarding RFP for Health Insurance. After discussion, Erickson made a motion, seconded by Weiner, to concur and approve the RFP as amended and to seek bids for a 3 year insurance contract. The motion carried by a unanimous roll call vote.

14. The Mayor submitted a communication for a proposed Referendum from Alderman Erickson regarding a non-partisan election. After discussion, Erickson made a motion, seconded by Day, to concur and approve the proposed Referendum to be placed on ballot for a non-partisan election. The motion failed on the following roll call: Yeas: Weiner, Day, Erickson. Nays: Chapman, Ramos, Skryd, Phelan, Lovero. After further discussion, Lovero made a motion, seconded by Ramos, to refer the matter to the Committee of the Whole. The motion carried by a voice vote.

15. The Mayor submitted a communication regarding Rain Barrels and a request to amend current ordinance. Thereafter, Erickson made a motion, seconded by Weiner, to refer the matter to the Law department. The motion carried by a voice vote with Phelan voicing a contrary nay.

3

0823

BERWYN CITY COUNCIL MEETING
JULY 22, 2008

16.   The Mayor submitted a communication regarding the Berwyn Development Corporation Mid Year Update, Special Committee of the Whole meeting to be held on Tuesday, July 29, 2008 at 7:30 p.m. at the Berwyn City Hall. Thereafter, Erickson made a motion, seconded by Skryd, to concur and approve the meeting as called and amend on face regarding time and location. The motion carried by a unanimous roll call vote.

17.   The Mayor submitted a communication regarding the veto of Item I-6 and its germane items I-1, J-3, and G-3 at the July 8, 2008 City Council meeting which approved the reinstatement of laid off city employees. Thereafter, Lovero made a motion, seconded by Chapman, to override the Mayor's veto. The motion to override was defeated by the following roll call: Yeas: Chapman, Skryd, Phelan, Lovero. Nays: Ramos, Weiner, Day, Erickson, O'Connor.

18.   The Mayor submitted a communication regarding Mailing equipment upgrade. Thereafter, Erickson made a motion to concur and approve as submitted. The motion failed for lack of a second. After discussion, Skryd made a motion, seconded by Chapman, to refer the matter to the Committee of the Whole. The motion carried by a voice vote.

19.   The Mayor submitted an ordinance to prohibit Methadone Clinics in Berwyn. Thereafter, Erickson made a motion, seconded by Weiner, to concur and to prepare an advisory referendum for the November, 2008 ballot to limit use regarding Medical Clinics and to refer the matter to the Law department for drafting. During the call of the roll, several questions and comments were submitted from the audience. After discussion, the Mayor cautioned the audience not to comment during the call of the roll. After order was restored by the Mayor, the motion carried by a unanimous roll call vote.

20.   The Clerk submitted a communication requesting approval of closed Committee of the Whole minutes for June 10, 2008 and June 24, 2008 as reviewed in closed session on July 8, 2008. Thereafter, Ramos made a motion, seconded by Skryd, to concur and approve as submitted. The motion carried by a voice vote.

21.   Alderman Chapman submitted a communication regarding the reconsideration of item #21 of the City Council minutes of July 8, 2008, regarding the Bobby Buonauro Clinic. Thereafter, Chapman made a motion, seconded by Ramos, to accept the matter as informational. The motion carried by a voice vote.

4

BERWYN CITY COUNCIL MEETING
JULY 22, 2008

22. Alderman Skryd submitted a communication regarding a traffic control device at 26th Street and Scoville. After discussion, Skryd made a motion, seconded by Chapman, to concur and authorize the Public Works department to install signage to prohibit left turns at the intersection of 26th Street and Scoville as recommended by the Traffic Engineer. The motion carried by a unanimous roll call vote.

23. Alderman Lovero submitted an ordinance entitled:

**AN ORDINANCE AMENDING THE TRAFFIC CODE OF THE CITY OF BERWYN, REGARDING PARKING RESTRICTIONS ON WENONAH AVENUE**

Thereafter, Lovero made a motion, seconded by Skryd, to concur and **adopt** the ordinance as amended, section 484.02 (c) and to authorize the corporate authorities to affix their signatures thereto. The motion carried by a unanimous roll call vote.

24. A deferred communication from the Law department regarding the Parking ordinance. After discussion, Erickson made a motion, seconded by Day, to separate the ordinances and label "A", "B", "C", and "D". The motion carried by a voice vote.
Thereafter, ordinance "A" entitled:

**AN ORDINANCE AMENDING CHAPTER 484 OF THE CODIFIED ORDINANCES OF THE CITY OF BERWYN, COOK COUNTY, ILLINOIS REGARDING TEMPORARY VISITOR PARKING PASSES**

Thereafter, Erickson made a motion, seconded by Day, to concur and **adopt** the ordinance as presented and to authorize the corporate authorities to affix their signatures thereto. The motion carried by the following roll call: Yeas: Chapman, Ramos, Skryd, Day, Phelan, Lovero, Erickson. Nays: Weiner.

25. A deferred communication from the Law department regarding the Parking ordinance "B" entitled:

**AN ORDINANCE AMENDING CHAPTER 484.04 OF THE CODIFIED ORDINANCES OF THE CITY OF BERWYN, COOK COUNTY, ILLINOIS REGARDING VISITOR PARKING PASSES**

Thereafter, Erickson made a motion, seconded by Day, to concur and **adopt** the ordinance as presented and to authorize the corporate authorities to affix their signatures thereto. The motion carried by the

0825

following roll call: Yeas: Chapman, Ramos, Skryd, Day, Lovero, Erickson. Nays: Weiner, Phelan.

26. A deferred communication from the Law department regarding the Parking ordinance "C" entitled:
**AN ORDINANCE AMENDING CHAPTER 484 OF THE CODIFIED ORDINANCES OF THE CITY OF BERWYN, COOK COUNTY, ILLINOIS REGARDING NO OVERNIGHT PARKING**

Thereafter, Erickson made a motion, seconded by Chapman, to concur and **adopt** the ordinance as presented and to authorize the corporate authorities to affix their signatures thereto. The motion carried by the following roll call: Yeas: Chapman, Weiner, Skryd, Day, Phelan, Lovero, Erickson. Nays: Ramos.

27. A deferred communication from the Law department regarding the Parking ordinance "D", School District and Church parking passes. After discussion, Lovero made a motion, to concur and adopt the ordinance as presented. After further discussion, the motion was withdrawn. Thereafter, Lovero made a motion, seconded Erickson, to refer the matter to the Law department to amend the ordinance Chapter 484.04(A). The motion carried by a voice vote.

28. The Police chief submitted a communication requesting hiring to fill vacancies created by resignations. After discussion, Erickson made a motion, seconded by Skryd, to waive the hiring freeze. The motion carried by a unanimous roll call vote. Thereafter, Erickson made a motion, seconded by Skryd, to concur and approve the hire of 2 candidates from the Lateral Hire List effective August 1, 2008. The motion carried by a unanimous roll call vote.

29. The Community Development director submitted a Resolution regarding the CDBG Ninth Year Action Plan. Thereafter, Erickson made a motion, seconded by Ramos, to concur and **adopt** the Resolution as presented and to authorize the corporate authorities to affix their signatures thereto. The motion carried by the following roll call: Yeas: Ramos, Weiner, Skryd, Day, Phelan, Lovero, Erickson. Nays: Chapman.

30. The Centennial Chairman submitted a communication regarding Centennial volunteer omissions. Thereafter, Chapman made a motion, seconded by Ramos, to accept the matter as informational. The motion carried by a voice vote.

BERWYN CITY COUNCIL MEETING
JULY 22, 2008

31.  The Mayor submitted a communication regarding a parking plan at 32nd and Harlem Avenue. After discussion, Ramos made a motion, seconded by Chapman, to defer the matter for 3 weeks. The motion carried by a voice vote.

32.  Consent Agenda items K-1 through K-16. After discussion, Erickson made a motion, seconded by Day, to suspend the rules and bring forth item K-5 from the consent agenda. The motion failed by the following roll call: Yeas: Day, Erickson. Nays: Chapman, Ramos, Weiner, Skryd, Phelan, Lovero.
   K-1   Budget chairman, payroll for July 9, 2008 in the amount of $885,631.51
   K-2   Budget chairman, payables for July 22, 2008 in the amount of $1,970,662.42
   K-3   The collector, business licenses issued during June, 2008
   K-4   The building director, building permits issued June, 2008
   K-5   Skryd, handicap request, R. Gilbert, 2812 Highland, **deny**
   K-6   Lovero, handicap request, A. Bolwin, 1941 Kenilworth, **approve**
   K-7   Firefighters Local 506 Muscular Dystrophy Drive-Saturdays in August
   K-8   CBC Shoe Corporation, sidewalk sale, August 7th thru August 10th
   K-9   Commodore Barry Post 256, annual picnic, August 9, 2008
   K-10  1st Congregational Church, festival and car show, August 24, 2008
   K-11  Block party, 3100 Wenonah Avenue, August 23, 2008
   K-12  Block party, 1800 Home Avenue, August 16, 2008
   K-13  Block party, 1600 Maple Avenue, August 3, 2008
   K-14  Block party, 3200 Wisconsin Avenue, August 9, 2008
   K-15  Block party, 2100 Cuyler Avenue, August 16, 2008
   K-16  Block party, 3600 Maple Avenue, August 2, 2008
   Thereafter, Ramos made a motion, seconded by Skryd, to concur and approve the Consent Agenda by Omnibus Vote Designation. The motion carried by the following roll call vote. Yeas: Chapman, Ramos, Weiner, Skryd, Day, Phelan, Lovero. Nays: Erickson.

33.  The Mayor announced the Committee of the Whole, as previously called, for Tuesday, July 29, 2008 at 7:30 p.m. at the Berwyn City Hall for the Berwyn Development Corporation presentation.
   The Mayor called a Committee of the Whole for Tuesday, August 12, 2008 at 6:00 p.m. for referrals.

34.  Skryd made a motion, seconded by Erickson, to recess the City Council meeting to go into Closed Executive session. The Mayor interjected and stated that the call of the Chair was not complete.

35.  Alderman Phelan called a Public Works committee meeting for Monday, July 28, 2008 at 7 p.m. for referrals.

0827

BERWYN CITY COUNCIL MEETING
JULY 22, 2008

36.     Alderman Skryd called an Administration committee meeting for Thursday, July 31, 2008 at 5 p.m. for referrals

37.     Ramos made a motion, seconded by Skryd, to go into Closed Executive Session of the   City Council meeting to discuss contract negotiations at 9:50 p.m.  The motion carried by a voice vote.

38.     Ramos made a motion, seconded by Skryd, to reopen the City Council meeting at 10:55 p.m.   The motion carried.

39.     There being no further business to come before the meeting, same was, after a motion by Ramos, seconded by Skryd, to adjourn at the hour of 10:55 p.m. The motion carried by a voice vote.

Respectfully submitted,

Thomas J. Pavlik
City Clerk

8

0828