

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ELIZABETH BUONAURO**, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 08 C 6687 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| **CITY OF BERWYN**, ) | Magistrate Judge |
| ) | Martin C. Ashman |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Elizabeth Buonauro's, Sal Sottile's, and the Bobby Buonauro Clinic, Inc.'s ("Plaintiffs") Motion to Compel the City of Berwyn ("the City" or "Defendant") to produce transcripts and audio recordings allegedly taken during various City Council meetings for the City in 2008-2010. Plaintiffs also seek to compel individual members of the City Council to answer certain deposition questions that they previously declined to respond to on the advice of counsel. The Court rules on this motion under District Judge Sharon Johnson Coleman's referral for a decision pursuant to N.D. Ill. Rule 72.1. Based on the parties' briefs and a hearing held on December 14, 2010, the Court finds that Plaintiffs' motion is granted in part and denied in part.

### I. Background

The Bobby Buonauro Clinic ("the clinic") is an Illinois corporation that has operated a substance abuse clinic in Evanston, Illinois since 2002. Elizabeth Buonauro ("Buonauro") acts as

the clinic's director, and Sal Sottile ("Sottile") is its assistant director. In 2007, Buonauro and Sottile planned to open a new substance abuse clinic in the City and reached an initial agreement to lease space in an existing medical building there. The lease contained a specific agreement requiring the clinic to obtain a business license from the City to operate such a facility. The clinic applied for the license, but the City denied it on January 24, 2008, noting that it required zoning approval and directing the clinic to seek a variation from the Berwyn Zoning Board of Appeals. According to the Plaintiffs, the Appeals Board unanimously approved the clinic's application, and the City Council placed the item on its agenda for April 8, 2008. The City Council's vote at that meeting resulted in a 4-4 tie, and Mayor Michael O'Connor cast the deciding vote against the resolution.

On July 8, 2008, however, the matter was once again before the City Council, and this time the Council approved it. Plaintiffs allege that Mayor O'Connor subsequently began a "political crusade" (Second Amend. Compl. at ¶ 31) to organize community opposition against the clinic and that a "community meeting" was held in a municipal parking lot on July 16 during which a "lynch mob mentality" was engendered against Buonauro. (*Id.* at ¶ 33.) Six days later, the City Council again met and reconsidered its July 8 approval of the license. By unanimous roll call, the City Council voted to rescind its former approval and "to deny the request of conditional use to be granted in a C-2 District regarding the Clinic." (*Id.* at ¶ 39.) A motion was also entered to prepare an advisory referendum for the November 2008 ballot that would ban all methadone clinics in the City from being considered as medical facilities.

Plaintiffs subsequently brought the instant suit which, in its current state, alleges violations of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the

Rehabilitation Act, 29 U.S.C. § 794. It also contains a declaratory judgment claim that is currently subject to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On May 7, 2010, Plaintiffs propounded their first set of discovery requests. Request for Production No. 29 seeks:

> Any and all transcripts or video or audio recordings relating to any of the above topics or subjects, including but not limited to Zoning Board of Appeals and City Council proceedings where the Clinic's Business License Application was discussed[,] considered[,] and/or voted upon.

The City answered that it had no current response to this request, but that an investigation into the topics raised by the Plaintiffs was continuing. Plaintiffs also took the depositions of the City's current mayor, Robert Lovero, and of City Council members Michele Skryd and Nona Chapman.[1] Plaintiffs inquired into issues related to the City Council's consideration of the clinic's application, including allegedly discriminatory motives that led the City Council to deny it. Defendant's counsel advised each of the witnesses not to respond to questions on these topics based on a claimed legislative privilege.[2] Plaintiffs subsequently brought the instant action to

---

[1] At the oral argument heard on December 14, 2010, the Court allowed Plaintiffs to file a reply brief by December 21, 2010. Plaintiffs did so but also submitted transcripts from deposition testimony given by a number of City officials, including former Mayor Michael O'Connor. The instant motion, however, identifies only the three individuals named above as the persons whose testimony is sought. Accordingly, the Court does not consider any City official other than Lovero, Skryd, and Chapman as part of its order.

[2] Plaintiffs also allege that the City's counsel based his instruction on the alleged irrelevance of Plaintiffs' inquiries. Relevance, however, is not a proper basis for directing a witness not to testify. Federal Rule of Civil Procedure 30(c)(2) only permits a party not to answer deposition questions on three grounds: (1) to preserve a privilege; (2) to enforce a court-ordered limitation, and (3) to present a Rule 30(d)(3) motion. Fed. R. Civ. P. 30(c)(2). As relevance is not a ground for a motion under Rule 30(d)(3), it is not a basis for instructing a witness not to testify. See Fed. R. Civ. P. 30(d)(3).

compel the City to respond to Production Request No. 29 and to compel Lovero, Skryd, and Chapman to respond to its deposition questions.

## II. Discussion

A party may file a motion to compel under Fed. R. Civ. P. 37 whenever another party fails to respond to a discovery request or when its response is insufficient. Fed. R. Civ. P. 37(a). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Wilstein v. San Tropai Condo. Master Assoc.*, 189 F.R.D. 371, 375 (N.D. Ill. 1999). Federal Rule of Civil Procedure 26(b)(1) provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discoverable information is not limited to evidence admissible at trial. Instead, such information is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, while the scope of permissible discovery is broad, it is not unlimited. A court can limit discovery if the court believes it is unreasonably cumulative, if the party seeking discovery has already had ample opportunity to do so, or if the burden of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2).

### A. Audio Tapes and Transcripts

The City's Code of Ordinances provides that the City shall keep "a verbatim record of all closed or executive session meetings of the corporate authorities of the city" in the form of an audio or video recording. City of Berwyn Code, § 210.07(A). The City is also required to keep

recordings of executive sessions "in accordance with the requirements of the Open Meetings Act." *Id.* at § 210.07(C). Under the Open Meetings Act ("OMA"), the City is allowed to destroy the verbatim record without notification eighteen months after the completion of the recorded meeting. 5 ILCS 120/2/06(c). As noted, Plaintiffs seek recordings of discussions on "any of the above topics or subjects" mentioned in their Requests for Production, including "Zoning Board of Appeals and City Council proceedings where the Clinic's Business license Application was discussed[,] considered[,] and/or voted upon." (Pl's. Mot., Ex. 2 at 9.)

The City's answer to this request was quite clear during discovery – "None at this time, investigation continues." (*Id.*) Its response at this stage is less straightforward, pointing out that Illinois law provides that such records are "not open for public inspection or subject to discovery in any administrative proceeding other than one brought to enforce [the OMA]." (Def's. Resp. at 4.) It is not clear from the City's brief if it is asserting an OMA privilege to prevent production of the recordings. Insofar as it does, however, the Court finds that no privilege applies. By its own terms, the statutory language cited by the City extends only to administrative proceedings, and the City has not presented any argument on why it should be applied to a lawsuit like the one the parties are involved in here.

Even if the OMA's privilege could be extended to suits, moreover, the City has not carried its burden of proof to show that it applies under these facts. The OMA provides a privilege under Illinois law, but the Court is not bound to apply state-law privileges where federal law supplies the rule of decision. *See Mem. Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). In order to show that the OMA privilege applies, the City must demonstrate how "the need for truth [weighs] against the importance of the relationship or policy

sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Id.* at 1061-62 (internal quote and citation omitted). Courts do not ordinarily apply the OMA's privilege in the absence of such a showing. *See, e.g., Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 451-52 (N.D. Ill. 2006); *Sronkoski v. Schaumburg School Dist., No. 54*, No. 08 C 721, 2009 WL 1940779, at *3-4 (N.D. Ill. July 1, 2009). The City, however, has not presented any argument on this issue and merely quotes the Illinois statute without applying it to the facts of this case. Thus, the Court finds that the City has not shown why any privilege that exists under the OMA should be applied here to prevent the production of the tapes and transcripts.

Nevertheless, the City also raises two stronger arguments against the production of the recordings requested by the Plaintiffs. According to the minutes of the City Council's meetings, the City argues, the clinic was not discussed between the end of 2008 and the November 23, 2010 session. The City contends that the tapes for the 2008 meetings, where the clinic was discussed, have already been erased in compliance with the OMA and that the tapes of the intervening sessions up to November 23, 2010 do not refer to the clinic. Thus, the City argues, the 2008 tapes are unavailable, and the remaining tapes up to November 23, 2010 are unresponsive to the request.

Clearly, the City cannot be required to produce tapes that have been erased. As Plaintiffs point out, however, Request No. 29 is not limited to City Council meetings where the clinic was discussed. The request plainly states that Plaintiffs also seek "all transcripts" of "the above topics or subjects including *but not limited to* Zoning Board of Appeals and City Council proceedings where the Clinic's Business License Application was discussed and/or voted upon." (Pl's. Mot.,

Ex. 2 at 9) (emphasis added.) This request is broader than the tape recordings of City Council meetings, which the City claims do not contain clinic-related material. How broad it is, or what items it specifically includes, is not at issue here. Neither party has asked the Court to interpret Request No. 29, and the City did not object to it as improper, overly broad, or ambiguous in its response to Plaintiffs' discovery requests or in its response to the instant motion.[3]

Instead, it argues for the first time that Plaintiffs' request is irrelevant to the issues in this suit. The time for posing this objection, however, was in the City's initial response to Plaintiffs' discovery requests. Federal Rule of Civil Procedure 34(b)(2) requires a party to respond to requests for production within thirty days and to state its specific objections. Fed. R. Civ. P. 34(b)(2)(A) & (B). It is well-established that the failure to do so in a timely manner waives a subsequent assertion of objections in the absence of good cause. *See, e.g., Hall v. Sullivan*, 231 F.R.D. 468, 473-74 (D. Md. 2005) (citing cases); *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988). The City's failure to object in a timely manner means that it must respond to Request No. 29 to the extent

---

[3] The City has recently filed a separate motion to strike this portion of the Plaintiffs' motion to compel, claiming for the first time that Request No. 29 is "unreasonably broad" and "unclear" and objecting generally to Plaintiffs' reply brief. This motion has not yet been presented for consideration pursuant to N.D. Ill. Rule 5.3, and the Court does not address its merits. As it raises issues related to the instant motion, however, the Court makes two observations. First, if the City had concerns related to Plaintiffs' reply, it should have sought leave to file a sur-reply instead of submitting a separate motion after this Court has already expended considerable time in reviewing the motion to compel and holding a hearing on it. Second, the time for posing objections to Request No. 29 has expired, as discussed below. The City did not raise these objections in its response to the production requests, its response to the motion to compel, or during the hearing held on the motion. Without ruling on the merits of the City's new motion, the Court notes that the objections raised there have not been presented as part of this motion and are not under consideration here.

that any transcripts and tapes are available and responsive to the full scope of Plaintiffs' request, including discussions of the clinic at the Zoning Board of Appeals.

As for the November 23, 2010 meeting, the City argues that it is not required to produce any tapes and minutes even though the clinic came up as a topic of discussion at that time. According to the City, the recording of this meeting is protected by the attorney-client privilege because the City's attorney updated the City Council on this lawsuit at the meeting. In support of this claim, the City relies exclusively on an affidavit of City Clerk Thomas Pavlik, who states in summary fashion that the clinic was discussed during the November 23 meeting "when the City's attorney . . . briefed the City Council on status [sic] and strategy of this case." (Def's. Resp. at Ex. 2.)

The attorney-client privilege promotes open discussions between attorneys and their clients by preventing the disclosure of certain kinds of attorney-client communications. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The Seventh Circuit has adopted eight principles that define the existence and scope of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (internal quote and citation omitted). Only communications that are made for the purpose of obtaining legal advice are protected by the attorney-client privilege. *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir. 1990). The party asserting a privilege has the burden of showing all of its elements. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003).

The Court finds the City's privilege argument to be unpersuasive under this well-established standard. The November 23 meeting post-dates Plaintiffs' May 7, 2010 discovery request, but Rule 26(e)(1) required the City to supplement its discovery response when it knew that it had "additional or corrective information [that] has not otherwise been made known to the other parties during discovery[.]" Fed. R. Civ. P. 26(e)(1)(A). The City, however, has not presented any evidence suggesting that it complied with Rule 26(e)(1) or, more specifically, that it properly asserted an attorney-client privilege to shield it from producing the November 23 tapes sought by the Plaintiffs.

Federal Rule of Civil Procedure 26(b)(5) states that when a party withholds discoverable information based on a privilege, it is required: (1) to expressly make the claim and (2) do so by describing the documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). In other words, the party must provide a privilege log. *See Gardner v. Johnson*, No. 08 C 50006, 2009 WL 5215589, at *3 (N.D. Ill. Dec. 30, 2009) ("Without a privilege log . . . [t]he court cannot weigh the importance of the privilege."). The City, however, has provided no evidence that it submitted a privilege log to the Plaintiffs or this Court that would have enabled Plaintiffs to assess the claimed privilege. Instead, the City raised the attorney-client privilege issue for the first time in its response to Plaintiffs' motion, an untimely act that this Court has found can be a procedural bar to asserting a privilege. *See Padilla v. City of Chicago*, No. 06 C 5462, 2009 WL 4891943, at *2 (N.D. Ill. Dec. 14, 2009).

Moreover, the fact that the City's attorney updated City Council members on this suit at the November 23 meeting is insufficient, without more, to show that any discussion the City

Council had about the clinic falls within the attorney-client privilege. Only conversations that were held in response to legal advice the City Council sought from its attorney are protected. *White*, 950 F.2d at 430. "To determine whether communications were made primarily for the purpose of providing legal services, the court must consider the context in which they were made." *United States v. Cohn*, 303 F. Supp.2d 672, 684 (D. Md. 2003). Under these facts, however, the Court has no context by which it can decide the extent to which legal advice was sought or given at the November 23 meeting or the degree to which the discussion of the clinic was based on such advice. Pavlik's statement that the City attorney briefed the City on the "strategy of this case" does not inform the Court what the attorney said, what the City Council discussed, or what links the Council's discussion to the attorney's legal advice. *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 139 (N.D. Ill. 1993) ("[M]ere conclusory statements will not suffice to meet [the] burden."). For all the Court can tell, the relevant conversation could have occurred before the City's attorney spoke or could have been otherwise independent of the attorney's status report. Accordingly, the City has not shown the elements required for finding an attorney-client privilege, *White*, 950 F.2d at 430, and Plaintiffs are entitled to receive a recording of the November 23 meeting.

For these reasons, the Court finds that Plaintiffs' Motion to Compel the transcripts and recordings sought in Request for Production No. 29 is granted, and the City must produce all items that are available and responsive to Plaintiffs' request within fourteen days of the entry of this Order.

## B. Deposition Testimony

As noted, the City's attorney instructed the current mayor of the City and two members of its City Council not to respond to deposition questions concerning their acts, intentions, and thought processes involved in the City Council's decision to reject the clinic's application. The City claims now, as it did at the depositions, that the City Council members are protected from such questions by the testimonial privilege given to legislators. Plaintiffs counter that no such privilege applies in this case because the City Council members' motives go to the heart of Plaintiffs' claims under the ADA and the Rehabilitation Act.

The question of whether the City's deposition witnesses are immune from Plaintiffs' inquiries poses a difficult issue that the parties have only partially addressed. Plaintiffs rely primarily on the Supreme Court's decision in *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) and this Court's unpublished opinion in *Trombetta v. Bd. of Educ.*, No. 02 C 5895, 2004 WL 868265 (N.D. Ill. April 22, 2004) (Kennelly, J.). Neither of these decisions, however, answers the question posed in this case.

Plaintiffs argue that *Arlington Heights* gives them the right to inquire into the Council members' motives, but as one court has remarked under facts similar to those here, "it has done very nearly the opposite." *Dyas v. City of Fairhope*, No. 08-0232-WS, 2009 WL 3151879, at *9 (S.D. Ala. Sept. 24, 2009). *Arlington Heights* involved claims of racial discrimination against a municipality based on the denial of a zoning request that was necessary to build low and moderate income housing. Recognizing that proof of a discriminatory intent was required to establish such claims, the Court outlined the sources from which evidence could be derived: the historical background of a decision, legislative or administrative history, minutes and reports of

meetings, and contemporary statements made by members of the legislative body. *Arlington Heights*, 429 U.S. at 267-68. Although the Court acknowledged that legislative members might be individually questioned concerning the intent of an official act "[i]n some extraordinary instances," *id.* at 268, it immediately qualified that rare possibility by noting that "even then such testimony frequently will be barred by privilege." *Id.* As *Arlington Heights* cautions, "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government" and are ordinarily avoided. *Id.* at 268 n.18. Plaintiffs do not argue that the "extraordinary instances" *Arlington Heights* contemplates – whatever they may be in a given case – exist here, and as a result, they have not demonstrated how that decision supports their motion to compel. Indeed, without such a showing, *Arlington Heights'* cautionary language concerning privilege works against, rather than for, Plaintiffs' request.

Instead, Plaintiffs jump directly to *Trombetta, supra*, to argue that direct questioning of a legislator's intent must be allowed when a plaintiff alleges that a decision was motivated by forbidden, discriminatory factors. *Trombetta* involved an employment dispute in which the plaintiff argued that he had been terminated by a school district in retaliation for exercising his First Amendment rights. Contrary to the Plaintiffs' implication, however, *Trombetta* did not find that the defendant school board members were subject to questioning about their subjective motives; the board members had already waived any testimonial privilege that may have existed by appearing without objection at their depositions. *Trombetta*, 2004 WL 868265, at *5. Speaking in the hypothetical, *Trombetta* did reject the argument that, in the absence of such a waiver, a testimonial privilege would impose a blanket rule against all questions involving the

board members', or any legislative member's, private motives. "If the purported evidentiary privilege proposed by [defendants] barred inquiry into the motivations of the members of a public entity that made *employment decisions*, it effectively would amount to a grant of immunity not just to the entity's individual members, but to the entity as a whole." *Id.* (emphasis added.)

This Court fully agrees with *Trombetta*'s reasoning. That fact, however, does not require a finding that Plaintiffs are entitled to the deposition questions they seek. Plaintiffs overlook that *Trombetta* involved an employment discrimination case and that its ruling was limited to that issue. *Trombetta* noted that the motion under consideration had been presented only on the eve of trial and that the court had not been able to undertake the research it would ordinarily devote to the motion. *Id.*, at *1. Perhaps for that reason, *Trombetta* did not distinguish between employment actions and the kind of non-employment issues presented here. Employment decisions made by local governmental bodies are ordinarily considered administrative rather than legislative acts. *See, e.g., Coffey v. Quinn*, 578 F. Supp. 1464, 1467 (N.D. Ill. 1983); *see also Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995); *Schlarp v. Dern*, 610 F. Supp.2d 450, 457-58 (W.D. Pa. 2009) (stating that an employment decision affecting only a single employee is an administrative action). The distinction is important because legislators are entitled to immunity only for legislative, not administrative, acts. *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988) ("Absolute immunity . . . only applies to those legislators acting in their legislative capacity. Administrative or executive acts of legislators are not protected."); *see also Biblia Abierta v. Banks*, 129 F.3d 899, 903-04 (7th Cir. 1997). Presuming that the employment decision in *Trombetta* constituted an administrative act, therefore, no testimonial immunity

would have applied to the school board members in the first instance, and Plaintiffs cannot generalize *Trombetta's* holding without showing that administrative acts are also at issue here.[4]

Although the parties have not addressed this key point, the Court cannot determine whether the City's legislative immunity claim has merit without first deciding if the City Council's actions were legislative or administrative in nature. Plaintiffs' claims involve zoning determinations, as well as land-use decisions based in large part on zoning issues. Zoning and land-use decisions present complex issues under Illinois state law, but the existence of legislative immunity is a function of federal common law. *See Fowler-Nash v. Democratic Caucus of Pa. House of Representatives*, 469 F.3d 328, 331 (3d Cir. 2006) (discussing the development of legislative immunity). It is to that body of law that the Court turns to determine if the City's denial of the clinic's application was a legislative or an administrative act.

Legislative functions generally implicate broad policy issues that establish guidelines within which future conduct can be judged. *See Coffey*, 578 F. Supp. at 1465; *see also Smith*, 45 F.3d at 406 ("A legislative act involves policymaking rather than mere administrative application of existing policies."). These include core legislative acts as well as activities essential to

---

[4] In their reply, Plaintiffs also rely on *Vision Church, United Methodist v. Village of Long Grove*, 226 F.R.D. 323 (N.D. Ill. 2005) to argue that no privilege applies to claims that involve a legislator's private motives. This reliance is seriously misplaced. *Vision Church* involved, in part, a claim under the Equal Protection Clause in which the plaintiff alleged it qualified as a "class of one." *Vision Church*, 226 F.R.D. at 325-26. Contrary to Plaintiffs' implication, the court specifically declined to compel the depositions of municipal officials until it had more opportunity to assess the merits of the constitutional claims at issue in that case. *Id.* at 327. Plaintiffs have presented no evidence that the depositions were ever ordered, and the constitutional claims in *Vision Church* were eventually denied in full. *See Vision Church, United Methodist v. Village of Long Grove*, 397 F. Supp.2d 917 (N.D. Ill. 2005). The Court notes that in this case Plaintiffs' earlier "class of one" claim under the Equal Protection Clause has already been dismissed. (Dckt. #32.)

facilitating the legislative process. *Biblia*, 129 F.3d at 903. By contrast, administrative acts "involve the application of already enacted ordinances or recognized policies to specific instances." *Unity Ventures v. County of Lake*, 631 F. Supp. 181, 206 (N.D. Ill. 1986). Some courts have found that decisions that only impact specific individuals are more likely to be administrative. In *Crymes v. DeKalb County*, 923 F.2d 1482 (11th Cir. 1991), for example, the Eleventh Circuit determined that county commissioners who denied the approval of a development permit acted administratively when they applied a general policy to a specific party. *Crymes*, 923 F.2d at 1485 ("If the facts utilized in making a decision are specific, rather than general, in nature, then the decision is more likely administrative," particularly if it impacts only a small number of individuals). The Seventh Circuit, however, has stressed that the availability of absolute immunity "does not depend upon the number of people that a law happens to affect at the time of its passage." *Biblia Abierta*, 129 F.3d at 904.

Based on this standard, the Court finds that the City Council's decision to deny the clinic's application was a legislative act. Plaintiffs allege that the decision not to approve the permit involved substantial community opposition to treating drug addicts in the City and that at the same City Council meeting at which the clinic's application was denied Mayor Michael O'Connor submitted a resolution to ban all methadone clinics in the City. (Second Amend. Compl. at ¶¶ 36-39.) Another City Council member also moved to prepare an advisory referendum for the November 2008 ballot to ban methadone clinics from being considered "medical clinics." (*Id.* at ¶ 39.) As Plaintiffs allege, the City's existing zoning code permitted conditional use licenses for "medical clinics," and it was under that provision that the Zoning Board of Appeals initially approved the clinic's application to operate a drug-rehabilitation facility. (*Id.* at ¶¶ 29-30.) In

changing the classification of drug clinics and in proposing a ban on future methadone clinics, the City's actions that accompanied the denial of the clinic's license go beyond the application of an existing policy to the clinic. They indicate a broader community debate over the appropriateness of all future drug-treatment clinics in the City and the formation of a new proposal designed to prevent what were perceived to be the deleterious effects of such facilities. As such, the City's acts involved the "general ramifications" necessary for finding an act to be legislative. *See Rateree v. Rockett*, 630 F. Supp. 763, 772 (N.D. Ill. 1986).

Plaintiffs do not address the legislative issue itself, but they argue in general terms that the City Council members cannot be immune from testifying because they were motived by a discriminatory intent. Their motives, however, do not determine the legislative/administrative nature of the decision to deny the clinic's application; only the nature of the act itself is considered. *Bogan v. Scott-Harris*, 525 U.S. 44, 545 (1998). Given that the City denied the clinic's application as part of a larger agenda that changed the classification of drug clinics and potentially restricted their future presence in the City, the Court finds that the facts alleged in the Second Amended Complaint "reflect[] a discretionary, policymaking decision," *id.* at 55, that was essentially legislative in nature. *See Bannum, Inc. v. City of Beaumont, Tx.*, 236 F. Supp.2d 633, 636-37 (E.D. Tex. 2002) (finding that a city council's discretionary rejection of an application to open a halfway house was a legislative act).

Plaintiffs counter that local officials like the City Council members are not entitled to the same immunities that are given to state legislators. Relying on *Progress Dev. Corp. v. Mitchell*, 286 F.2d 222 (7th Cir. 1961), Plaintiffs point out that the Seventh Circuit has stated that "the common law immunity of state legislators for their acts . . . does not extend to local officials

charged with administering in a discriminatory manner the laws[.]" *Mitchell*, 704 F.2d at 231. The Seventh Circuit, however, has since construed the language on which Plaintiffs rely as allowing absolute immunity to local officials when they act in a legislative capacity. *See Reed v. Village of Shorewood*, 704 F.2d 943, 953 (7th Cir. 1983) (explaining that *Mitchell*'s language "could but does not have to be read to mean that local officials are entitled only to qualified immunity from damage suits based on their legislative acts."); *see also Rateree*, 852 F.2d at 949-50 (stating that local legislators are entitled to absolute immunity for legislative acts); *Bogan*, 525 U.S. at 55 ("The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators."). Plaintiffs have not accounted for *Reed* or *Rateree*, relying instead on the quote from *Mitchell* without applying it to the facts of this case. In the absence of such an argument, the Court finds that Plaintiffs have not shown how *Mitchell* restricts immunity from being available to the individuals Plaintiffs seek to question in deposition.[5]

Absolute immunity from suit, however, is not necessarily the same as a blanket immunity from giving all the testimony a plaintiff seeks. Instead, the testimonial privilege is an outgrowth of legislative immunity designed "to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves." *Schlitz v. Commonwealth of Virginia*, 854 F.2d 42, 46 (4th Cir. 1988). Some courts have construed the

---

[5] Legislative immunity applies only insofar as the member of a public body is acting in a legislative capacity. It does not necessarily apply to all actions that occur even in a deliberative session that is inherently legislative, and the Seventh Circuit has noted limitations on such immunity. *Hansen v. Bennett*, 948 F.2d 397, 401-02 and n.7 (7th Cir. 1991). As the parties have not addressed this issue, however, the Court does not determine whether any limitation applies to the deponents in this case.

testimonial privilege broadly to include virtually everything related to legislative acts, including matters that are not otherwise protected under legislative immunity. *See, e.g., Miles-Un-Ltd., Inc. v. Town of New Shoreham, R.I.*, 917 F. Supp. 91. 98 (D.N.H. 1996); *Dyas*, 2009 WL 3151879, at *9 (stating that the testimonial privilege includes "questioning concerning acts that are not themselves legislative and thus not independently privileged."). Other courts have applied a balancing test that measures the need for a full development of the facts against the legislative independence that the privilege is designed to protect. *See, e.g., In re Grand Jury (Granite Purchases)*, 821 F.2d 946, 957 (3d Cir. 1987); *Manzi v. DiCarlo*, 982 F. Supp. 125 (E.D.N.Y. 1997).

In this case, the deponents have already waived any broad testimonial privilege they may have asserted by appearing for depositions without objection, and the City's opposition to Plaintiffs' questions is limited to the deliberations, thought processes, and the motivations behind the City Council's decision to deny the clinic's application. (Def's. Resp. at 5.) Although the parties' briefs only partially describe the issues included in the scope of this claim, the items the City seeks to protect appear to fall well within the ambit of legitimate legislative activity. The weight of authority, therefore, supports a conclusion that the testimonial privilege asserted by the City prevents inquiries into the subjective intent of the City Council members during their deliberations and their voting that resulted in denying the clinic's license. *See, e.g., Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 14 (D.C. Cir. 2006) (applying the privilege to members of Congress); *Burnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996); *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297-98 (9th Cir. 1984); *Joseph's House and Shelter, Inc. v. City of Troy, N.Y.*, 641 F. Supp.2d 154, 158 (N.D.N.Y. 2009); *Miles-Un-Ltd., Inc.*, 917 F. Supp. at 102;

*Cunningham v. Chapel Hill, ISD*, 438 F. Supp.2d 718, 722-23 (E.D. Tex. 2006); *Knights of Columbus v. Town of Lexington*, 138 F. Supp.2d 136, 139 (D. Mass. 2001).

Accordingly, the Court finds that Plaintiffs are not entitled to inquire into the deliberations, thoughts, or motives of Mayor Lovero or City Council members Skryd and Chapman, and these persons are protected from responding to the deposition questions at issue here by a testimonial privilege.

### III. Conclusion

For the reasons stated herein, Plaintiffs' motion to compel (Dckt. #112) is granted in relation to Plaintiffs' Request for Production No. 29. Defendant shall produce all transcripts and recordings that are currently available and responsive to Request No. 29 as described above within fourteen days of the entry of this Order. The motion to compel is denied insofar as it seeks to require Robert Lovero, Michele Skryd, and Nona Chapman to answer deposition questions concerning the deliberative processes of the City Council or the Council members' motives for City Council votes.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: January 10, 2011.