# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH BUONAURO**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 08 C 6687 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| **CITY OF BERWYN**, | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant City of Berwyn's ("the City") Motion to Reconsider and/or Clarify the Court's January 10, 2011 Order granting, in part, Plaintiff Elizabeth Buonauro's, Sal Sottile's, and the Bobby Buonauro Clinic, Inc.'s ("Plaintiffs") Motion to Compel. As outlined in the Court's Order, Plaintiffs sought the production of documents related to deliberations the City held concerning Plaintiffs' application for a license to operate a substance abuse clinic ("the clinic") in the City. Plaintiffs' Request for Production No. 29 specifically sought:

> Any and all transcripts or video or audio recordings relating to any of the above topics or subjects, including but not limited to Zoning Board of Appeals and City Council proceedings where the Clinic's Business License Application was discussed[,] considered[,] and/or voted upon.

*See Buonauro v. City of Berwyn*, No. 08 C 6687, 2011 WL 116870, at *2 (N.D. Ill. Jan. 10, 2011). The City responded to this request by stating that it had no responsive documents, but that an investigation into the issues raised by the request was continuing. As neither party asked the Court to interpret the scope of what was included in Request No. 29, the Court granted Plaintiffs' Motion to Compel on this issue. The City now asks the Court to reconsider that part

of its Order or, in the alternative, to clarify the scope of what is contained in Request No. 29.[1] For the reasons stated below, the City's motion is granted in part.

A motion for reconsideration is narrowly designed "to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource, Inc. v. Walker-Davis Publications, Inc*., 762 F.2d 557, 561 (7th Cir. 1985). Thus, a party that does not rely on new facts or law must show that the court has patently misunderstood its position and has "made an error not of reasoning, but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). The City argues that is the case here because the Court overlooked its objections to Request for Production No. 29. The City directs the Court's attention to paragraph four of its discovery responses, which objects to all the City's production requests generally as "duplicative, vague, ambiguous, overbroad, unduly burdensome, conclusory and/or argumentative." (Def's. Mot., Ex. 3 at 2).

Contrary to this claim, the Court was aware that the City's response to Plaintiffs' First Request for Production contained a list of objections that purportedly applied to all of Plaintiffs' requests. The Court did not discuss them in its Order, in part, because the City did not rely on these objections in its response to the Plaintiffs' Motion to Compel and, in part, because it is well-established that the kind of generalized objections the City cites are improper. *See*, *e.g.*, *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 306-07 (N.D. Ill. 1997) (denying similar objections as "pat, generic, non-specific" responses that "are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure"); *Hobley v. Burge*,

---

[1] The City argued at the hearing on its motion that Request No. 29 does not include closed sessions of the City Council's meetings. The Court disagreed and required the City to produce transcripts of the closed sessions that fall within the scope of Plaintiffs' request.

No. 03 C 3678, 2003 WL 22359520, at *2 (N.D. Ill. Oct. 15, 2003) ("It is well-settled that general objections are insufficient to voice a successful objection."); *Novelty, Inc. v. Mountain View Marketing, Inc*., 265 F.R.D. 370, 375 (S.D. Ind. 2009) (stating that general objections, "whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all – and will not be considered.").

Responses to production requests must clearly assert the basis of a party's objection, if any, in relation to the specific documents in question, and broad objections to all of a party's requests are unavailing. *In re Aircrash Disaster*, 172 F.R.D. at 307. As the Court noted, the City did not pose a specific objection to Request No. 29; it only stated that no responsive documents existed. This Court has remarked on the continued use of general objections with some impatience, and has advised litigants in clear terms that their "burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad," or irrelevant. *United Auto. Ins. v. Veluchamy*, No. 09 C 5487, 2010 WL 749980, at *5 (N.D. Ill. March 4. 2010) (finding that such "boilerplate responses" are waived as improper) (internal quotes and citation omitted). Accordingly, the City has not set forth a ground for reconsideration on this basis.

The City's motion also asks the Court to reconsider its finding that the attorney-client privilege does not apply to Plaintiffs' request. In its earlier response, the City briefly contended that discussions the City Council held on November 23, 2010 concerning the clinic were protected from discovery on this basis. The City, however, did not provide a privilege log on this issue and failed to adequately explain why the attorney-client privilege applied under the facts of this case. The City corrected the first of these omissions in the instant motion by

providing a brief privilege log covering two City Council sessions. The Court noted at the hearing on the motion that the City's log did not provide sufficient information for the Court to determine if the attorney-client privilege applies. However, the Court also recognized that the City's hands were tied to some degree from revealing more information about the City Council's discussions at these meetings.

Accordingly, the Court allowed the City to amend its privilege log and to submit transcripts of all the relevant City Council meetings, together with a new privilege log, for an *in camera* review. The City has submitted minutes and/or transcripts of twelve City Council meetings ranging from May 27, 2008 through November 23, 2010 for the Court's inspection. Its new privilege log also expands on the earlier claim of an attorney-client privilege to include new claims of a legislative privilege, a deliberative process privilege, and a settlement privilege. Not all these privileges necessarily apply to the City's documents, however, and the Court must first determine the nature and scope of the privileges on which the City relies.

The deliberative process privilege prohibits the discovery of communications that are used by governmental bodies in formulating a policy. *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The privilege extends only to communications that reflect the give-and-take of the consultative process. *United States v. Bd. of Educ. of City of Chicago*, 610 F. Supp. 695, 698 (N.D. Ill. 1985). In order to invoke the privilege, a party must show three elements: (1) the department head with control over the information has made a formal claim of privilege; (2) the responsible official must demonstrate, usually by affidavit, the reasons for preserving the confidentiality of the documents; and, (3) the official must specifically identify and describe the documents in question. *Ferrell v. U.S. Dept. of Housing and Urban*

*Development*, 177 F.R.D. 425, 428 (N.D. Ill. 1998) (internal quote and citation omitted). As the City has not shown that it has met any of these requirements, the City cannot rely on the deliberative process privilege to protect the transcripts it has submitted for review. *See Parvati Corp. v. City of Oak Forest*, No. 08 C 702, 2010 WL 2836739, at *5 (N.D. Ill. July 19, 2010) (denying the deliberative process privilege when a party does not bear its burden of showing why it applies); *see also Dellwood Farms, Inc. v. Cargill, Inc*., 128 F.3d 1122, 1126 (7th Cir. 1997) ("[A] privilege can be waived and, once waived, is lost.").

The City also claims a "settlement discussion" privilege for seven of the twelve City Council meetings noted in its privilege log. The Court assumes that by settlement discussions the City means communications concerning possible settlement negotiations between itself and the Plaintiffs. As this Court has explained, the question of whether settlement negotiations are privileged is not always easily answered. *Pfizer, Inc. v. Apotex, Inc*., 731 F. Supp.2d 754, 763-64 (N.D. Ill. 2010). In general, the discovery of settlement negotiations is disfavored in order to protect a party's litigation strategy from being revealed. *Mars Steel Corp. v. Continental Illinois Nat. Bank and Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987); *see also In re General Motors, Corp*., 594 F.2d 1106, 1124 n.20 (7th Cir. 1979) (stating that "the existence of such [settlement] privileges is best determined in the context of particular demands for discovery."). The context here, of course, involves a deliberative body whose purpose is to discuss civic matters, including ongoing litigation involving the City. The City has not argued how the privilege it relies on should be applied, but its assertion of the privilege in very general terms, and for large portions of the transcripts, suggests that the City seeks to suppress all materials in which the possibility of settlement is mentioned, regardless of whether those discussions reveal

the City's litigation strategy or not. The Court finds this approach to be overly broad under these facts. In the absence of any argument by the City on how this privilege applies, the Court considers the settlement privilege only when the disclosure of City Council deliberations concerning settlement would reveal the City's litigation strategy.

In its earlier Order, the Court found that a legislative privilege protected City Council members from answering deposition questions related to their deliberations concerning the Plaintiffs' application for a license to operate a substance abuse clinic in the City. The Plaintiffs have not objected to this finding, and the Court sees no reasonable basis for not extending this privilege to the transcripts of City Council meetings that involve the same issues. This does not mean, however, that the legislative privilege protects all deliberations in which the clinic was discussed. That was not the Court's ruling, and the City has not provided any argument for extending the application of the legislative privilege beyond the scope of the Court's prior Order. Privileges should be narrowly construed and applied. *Memorial Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). The Court carefully stated in its Order that the legislative privilege applies to "the City Council's decision to deny the clinic's application," an act that involved discussions concerning the City's zoning ordinances and their application to the Plaintiffs' license request. *See City of Berwyn*, 2011 WL 116870, at *8-9. In the absence of any argument by the City as to why this finding should be extended to include other issues concerning the clinic, only those portions of the submitted documents that involve discussions about the approval or denial of the clinic's license application, or that involve issues integrally related to the application of the City's zoning laws to the clinic, are protected by the legislative privilege.

The attorney-client privilege promotes open discussions between attorneys and their clients by preventing the disclosure of certain kinds of attorney-client communications. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). The Seventh Circuit has adopted eight principles that define the existence and scope of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (internal quote and citation omitted). Only communications that are made for the purpose of obtaining legal advice are protected by the attorney-client privilege. *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir. 1990). Assuming that a city council can invoke the privilege as the client of the city's attorney, *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998), the privilege applies to the City's documents where these factors are met. With these principles in mind, the Court turns its attention to the City's documents.

    1.    <u>May 27, 2008</u>

The City has submitted minutes (Bates 398-99) of a closed session the City Council held on this date at which the City's attorney, Mr. Bruen, the mayor, and City Council members discussed issues concerning the Zoning Board's recommendation on the clinic's application, the City Council's denial of it, and various legal issues concerning what is noted as "pending litigation" – even though the meeting pre-dates the filing of the instant lawsuit. The first nine lines of paragraph nine of this document concern communications the City's attorney had with Plaintiffs' counsel, or other issues that are not protected by any privilege. The remaining portions of paragraph nine indicate the legal advice Mr. Bruen gave to the City Council on the

clinic's application. They also refer to discussions concerning the application of the City's zoning ordinances to the clinic. These portions are protected by the attorney-client privilege and the legislative privilege. Accordingly, the City shall produce the first nine lines of paragraph nine to Plaintiffs.

2. June 24, 2008

Paragraph five of the minutes (Bates 400-01) of a closed City Council meeting held on this date indicates that attorney Bruen updated City Council members about the status of the potential suit between the City and the Plaintiffs and provided legal advice concerning the City's options. As such, the document is protected by the attorney-client privilege. The City Council also discussed matters related to the Zoning Board's consideration of the Plaintiffs' license application, and the legislative privilege also protects the minutes from disclosure. The City is not required to produce the minutes for this meeting.

3. July 22, 2008

Paragraph six of these minutes (Bates 405) of a closed City Council meeting includes discussions by attorney Bruen on the nature of Plaintiffs' contemplated suit and issues related to municipal law. Mr. Bruen gave the City Council his opinion on the Zoning Board's handling of Plaintiffs' license application. The City Council also discussed matters related to the Council's prior approval of the clinic's application, which as this Court noted in its prior Order took place on July 8. Thus, paragraph six is protected by the attorney-client privilege and the legislative privilege.

Paragraph seven of the minutes (Bates 405) also concerns the clinic. The mayor and a City Council member are noted as discussing the clinic, but legal advice was not sought or given

by the City's attorney. The minutes indicate that discussions were held concerning how the City might defend itself against the expected suit by the Plaintiffs, but that statement, standing alone, is not protected by the attorney-client privilege because it does not reveal the substance of any legal advice. *See Heriot v. Byrne*, 257 F.R.D. 645, 665 n.14 (N.D. Ill. 2009) (stating that the privilege only applies when a communication tends, directly or indirectly, to reveal the substance of a confidential attorney-client communication). Accordingly, paragraph seven is not privileged, and the City shall produce a copy of this portion of the minutes to the Plaintiffs.

4. September 9, 2008

Paragraph ten of the minutes (Bates 409) for this date includes the City attorney's opinion concerning the Plaintiffs' lawsuit. The minutes state that the City attorney had already expressed the same opinions to Plaintiffs' counsel, indicating that no confidential communication was involved at the City Council meeting. The minutes also note that the City attorney briefed the City Council on zoning issues, but the minutes do not reveal the substance of this discussion. As a result, neither the attorney-client privilege nor the legislative privilege protects these minutes, and the City shall produce paragraph ten.

5. September 8, 2009

The transcript of the meeting held on this date (Bates 428-49) shows that Mr. Bertuca, another City attorney, reported to the City Council on settlement discussions the City had with the Plaintiffs. Mr. Bertuca played little part in the Council's discussions, and the transcript contains no confidential communication between Mr. Bertuca and the City Council. With the exception of a brief exchange, moreover, the settlement issues that were discussed involved matters that had already been raised with the Plaintiffs themselves, precluding any application of a settlement

privilege. The City did discuss its litigation strategy in the context of settlement efforts at Bates 440 at line 18 of minute 1:42 through Bates 441 at line 12 of minute 1:44.[2] This portion of the transcript is protected by the settlement privilege.

The City also discussed possible changes to the City's zoning ordinances that would have an effect on the clinic and its location in the City. Based on the Court's discussion of the legislative privilege in its prior Order, the following lines are protected by this privilege :

- a. Bates 434 from line 22 of minute 1:22 through Bates 436 at line 8 of minute 1:28 and,
- b. Bates 444 at line 19 of minute 1:57 through Bates 446 at line 11 of minute 2:04.

The City shall produce all other portions of the transcript to the Plaintiff.

The City shall also produce paragraph three of the minutes for the meeting (Bates 412-13), with the exception of lines 7-9. These lines refer to the City's zoning ordinances and their application to the clinic and are protected by the legislative privilege.

6. September 22, 2009

Paragraph one of the minutes (Bates 414), as well as the complete transcript (Bates 450-64), for this closed meeting involve discussions between the City Council and the City's litigation attorney, Mark Sterk. Mr. Sterk advised the City Council on various aspects of the suit between the City and Plaintiffs and gave his legal opinion concerning its merits and the City's

---

[2] The City's exhibit appears to reflect photocopies of an earlier transcript whose pagination does not directly match the pages of the City's exhibit. Thus, most of the individual pages of the City's exhibit contain unpredictable line numbers instead of a uniform numbering system. For the sake of clarity, the Court refers the Bates number for each page, together with the line number and minute within which the line number falls.

chances of success. As such, the attorney-client privilege applies, and these documents are protected from disclosure.

7.      October 6, 2009

Paragraph one of the minutes (Bates 415) and the transcript (Bates 465-75) for this meeting involve discussions the City Council held concerning changes to the City's zoning laws and the application of those laws to the clinic. As such, these discussions fall within the Court's discussion of the legislative privilege in its prior Order, and both the minutes and the transcript are protected by the legislative privilege. The City is not required to produce these documents.

8.      December 22, 2009

Paragraph three of the minutes (Bates 417-18) and the transcript (Bates 476-90) submitted for the City Council's meeting on this date deal with the lawsuit pending between Plaintiffs and the City. The City's litigation attorney was present, and the transcript shows that the mayor and Council members sought his advice on the suit and on the City's zoning ordinances. In response, Mr. Sterk provided extensive commentary on both issues. Both the minutes and the transcript are protected by the attorney-client privilege, and the City need not produce them to the Plaintiffs.

9.      February 9, 2010

Paragraph four of the minutes (Bates 419) and the transcript (Bates 491-93) for this meeting involve an account by the City's mayor of proceedings that occurred during a settlement conference held before this Court, during which the Court urged the City to find a location for the clinic. The mayor's statements do not contain any material protected by the attorney-client privilege or the legislative privilege. They also do not show the City's litigation strategy and are

not protected by a settlement privilege. The City shall produce paragraph four of the minutes, as well as the complete transcript for the February 9, 2010 meeting to the Plaintiffs.

    10.    <u>August 24, 2010</u>

Paragraph five of the minutes (Bates 421-22) and the transcript (Bates 494-511) for this meeting between the mayor, City Council, and City attorney Bertuca involve discussions related to the City's efforts to settle this case by finding a suitable location for the clinic. Two brief sections of the transcript involve questions by a City Council member to the City's attorney and the legal advice he provided in return. The attorney-client privilege, therefore, protects:

    a.    Bates 503 from line 14 of minute 5:00 through line 20, and
    b.    Bates 504 from line 5 of minute 5:04 through Bates 505 at line 24 of minute 5:05.

The City Council also discussed the City's zoning laws and possible changes to them that could affect the clinic. The legislative privilege protects these discussions from production, including:

    a.    Bates 502 at line 19 of minute 4:56 through line 6 of minute 4:56;
    b.    Bates 504 at line 14 of minute 5:03 through Bates 505 at line 24 of minute 5:05; and,
    c.    Bates 506 at line 24 of minute 5:10 through Bates 507 at line 10 of minute 5:11.

Some portions of the City's discussion of settlement efforts with the Plaintiffs reveal the City's litigation strategy. These discussions are protected by the settlement privilege and include:

    a.    Bates 495 at line 19 of minute 4:37 through line 2 of minute 4:38;
    b.    Bates 495 at line 14 of minute 4:39 through line 18 of minute 4:39;
    c.    Bates 497 at line 12 of minute 4:44 through Bates 498 at line 23 of minute 4:44;
    d.    Bates 501 at line 15 of minute 4:53 through Bates 502 at line 18 of minute 4:56; and,
    e.    Bates 503 at line 6 of minute 4:59 through line 13 of minute 5:00

Finally, the minutes for this meeting briefly note in lines 9-10 certain legal advice that the City's litigation counsel gave the City on a possible means of settling the case. Lines 9-10, therefore, are protected by the attorney-client privilege, though the remainder of the minutes do not show that any privilege applies. The City shall produce the minutes and transcript for this meeting, with the exception of the privilege sections noted.

11.  September 14, 2010

Paragraph eleven of the minutes (Bates 425) and the transcript of the meeting (Bates 512-18) held on this date reflect a brief discussion the mayor, the City Council, and City attorney Bertuca had concerning upcoming depositions of some City Council members. Mr. Bertuca was asked why the Plaintiffs had chosen to depose some Council members and not others, replying that he did not know. This exchange does not involve a confidential communication by the City Council, nor does it show that Mr. Bertuca's response was either based on a confidential communication or that it revealed the substance of such an exchange. Thus, no privilege applies here, and the City shall produce paragraph eleven of the minutes and the complete transcript for the meeting held on this date.

12.  November 23, 2010

Paragraph two of the minutes (Bates 426) and the transcript for this meeting (Bates 519-56) involve lengthy discussions between the mayor, the City Council, and Mr. Sterk concerning a variety of legal issues surrounding the Plaintiffs' suit with the City, including zoning issues, legal strategies, and potential liabilities. The City clearly sought legal advice from its litigation attorney, who answered the Council members' questions at considerable length.

Paragraph two of the minutes, as well as the transcript, are protected by the attorney-client privilege.

**<u>Conclusion</u>**

For the foregoing reasons, the City's Motion to Reconsider and/or Clarify (Dckt. # 130) is granted in part. The City shall produce within fourteen days of the entry of this order the following portions of the minutes submitted for *in camera* review:

1. Lines 1-9 of paragraph 9 of the minutes for the May 27, 2008 meeting (Bates 398-99);

2. Paragraph 7 of the minutes for the July 22, 2008 meeting (Bates 405);

3. Paragraph 10 of the minutes for the meeting on September 9, 2008 (Bates 409);

4. Lines 1-6 and 10-14 of paragraph 3 of the minutes for the September 8, 2009 meeting (Bates 412-13);

5. Paragraph four of the minutes for the February 9, 2010 meeting (Bates 419);

6. Lines 1-8 and 11-19 of the minutes for the August 24, 2010 meeting (Bates 421-22); and,

7. Paragraph eleven of the minutes for the September 14, 2010 meeting (Bates 425).

The Court recognizes that the minutes contain a variety of entries on issues that have no relationship to this motion. Accordingly, the Court's Order is strictly limited to the portions of the minutes that are ordered to be produced herein. All other portions of the minutes that are not specifically ordered to be produced are not discoverable.

In addition, the City shall also produce the following portions of the meeting transcripts referenced in the City's privilege log:

1. The transcript for the September 8, 2009 meeting (Bates 428-49), with the exception of the following portions:

    a. Bates 440 at line 18 of minute 1:42 through Bates 441 at line 12 of minute 1:44;

    b. Bates 434 from line 22 of minute 1:22 through Bates 436 at line 8 of minute 1:28; and,

    c. Bates 444 at line 19 of minute 1:57 through Bates 446 at line 11 of minute 2:04.

2. The complete transcript for the February 9, 2010 meeting (Bates 491-93);

3. The transcript for the August 24, 2010 meeting, with the exception of the following portions:

    a. Bates 503 from line 14 of minute 5:00 through line 20;

    b. Bates 504 from line 5 of minute 5:04 through Bates 505 at line 24 of minute 5:05;

    c. Bates 502 at line 19 of minute 4:56 through line 6 of minute 4:56;

    d. Bates 504 at line 14 of minute 5:03 through Bates 505 at line 24 of minute 5:05;

    e. Bates 506 at line 24 of minute 5:10 through Bates 507 at line 10 of minute 5:11;

    f. Bates 495 at line 19 of minute 4:37 through line 2 of minute 4:38;

g. Bates 495 at line 14 of minute 4:39 through line 18 of minute 4:39;

h. Bates 497 at line 12 of minute 4:44 through Bates 498 at line 23 of minute 4:44;

i. Bates 501 at line 15 of minute 4:53 through Bates 502 at line 18 of minute 4:56; and,

j. Bates 503 at line 6 of minute 4:59 through line 13 of minute 5:00; and,

4. The complete transcript for the September 14, 2010 meeting (Bates 512-18).

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

DATED: May 25, 2011.