# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH BUONAURO**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 08 C 6687 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| **CITY OF BERWYN**, | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the latest in a series of disputes concerning items Plaintiffs Elizabeth Buonauro, Sal Sottile, and the Bobby Buonauro Clinic, Inc. ("Plaintiffs") sought to discover from Defendant City of Berwyn ("the City") through their Request for Production No. 29. That request specifically asked for:

> Any and all transcripts or video or audio recordings relating to any of the above topics or subjects, including but not limited to Zoning Board of Appeals and City Council proceedings where the Clinic's Business License Application was discussed[,] considered[,] and/or voted upon.

The parties previously filed a motion to compel, a motion to strike, a motion to clarify, a motion to correct, two privilege logs, and documents for an *in camera* review associated with Plaintiffs' seemingly straightforward request. Plaintiffs now present their motion for sanctions asking the Court to wade full force into what they characterize as a history of misconduct by the City and to impose the severe sanction of dismissal or, in the alternative, a conclusive evidentiary inference that the City acted with an improper motive. The Court rules on this motion under District Judge Sharon Johnson Coleman's referral for a decision pursuant to N.D. Ill. Rule 72.1. For the

reasons discussed below, the Court finds that Plaintiffs' motion should be granted but that the two sanctions requested by Plaintiffs are unduly harsh. Instead, the Court finds that the lesser sanction of an adverse inference should be imposed for the City's conduct.

## I. Factual and Procedural Background

The Bobby Buonauro Clinic ("the clinic") is an Illinois corporation that has operated a substance abuse clinic in Evanston, Illinois since 2002. Elizabeth Buonauro acts as the clinic's director, and Sal Sottile is its assistant director. In 2007, Buonauro and Sottile planned to open a new methadone clinic in the City and reached an initial agreement to lease space in an existing medical building there. The lease contained an agreement requiring the clinic to obtain a business license from the City to operate such a facility. The clinic applied for the license, but the City denied it on January 24, 2008, noting that it required zoning approval and directing the clinic to seek a variance from the Berwyn Zoning Board of Appeals. The Appeals Board approved the clinic's application, and the City Council placed the item on its agenda for April 8, 2008. The City Council's vote at that meeting resulted in a 4-4 tie, with Mayor Michael O'Connor casting the deciding vote against the resolution.

On July 8, 2008, the matter was once again before the City Council, and this time the Council approved it. Plaintiffs allege that Mayor O'Connor subsequently began a "political crusade" (Second Amend. Compl. at ¶ 31) to organize community opposition against the clinic and that a "community meeting" was held in a municipal parking lot on July 16 during which a "lynch mob mentality" was engendered against Plaintiffs. (*Id*. at ¶ 33.) Six days later, the City

Council again met and reconsidered its July 8 approval of the license. By unanimous roll call, the City Council voted to rescind its former approval and deny the request. (*Id.* at ¶ 39.)

This suit soon followed on November 21, 2008. Discovery was stayed on September 24, 2009 pending settlement discussions between the parties but was re-opened on April 6, 2010 when it was clear that the parties could not reach an agreement. Plaintiffs quickly filed their written discovery requests on May 7, including Request No. 29 cited above seeking recordings and minutes of City Council meetings in which the clinic's license application was discussed or voted on. Significantly, as noted below, Plaintiffs had earlier made the same request on September 5, 2008 by means of the Illinois Freedom of Information Act ("FOIA"). (App., Ex. I.) The FOIA request included over thirty specific entries covering a broad range of files, notes, recordings, and emails related to the clinic's license application.

The tapes and minutes Plaintiffs sought involve recordings required under both the City's Code and the Illinois Open Meeting Act ("OMA"). The City's Code of Ordinances provides that the City shall keep "a verbatim record of all closed or executive session meetings of the corporate authorities of the city" in the form of an audio or video recording. City of Berwyn Code § 210.07(A). The City is also required to keep recordings of executive sessions "in accordance with the requirements of the Open Meetings Act." *Id.* at § 210.07(C). Both the City Code and the OMA permit the destruction of these recordings without notification eighteen months after the completion of the recorded meeting, provided that the public body approves the destruction and adequate minutes of the meeting have been taken and approved. 5 ILCS 120/2/06(c)(1) & (2). The City Code authorizes the City Clerk to take such action, again

provided that it has been approved by the corporate authorities and no court order requires the tapes' preservation.  City of Berwyn Code § 210.07(H).

The recordings included the Council's Committee of the Whole ("COW") meetings.  As described by City Council members in deposition testimony, the City's aldermen held COW meetings, in either open or closed sessions, prior to scheduled City Council meetings.  COW meetings often involved discussions of issues that the Council anticipated would be addressed in the public City Council meetings that would follow, and much of the deliberative processes involved in the Council's decision making occurred in the COW meetings.  Former Mayor O'Conner described the COW meetings as opportunities for Council members to be informed about issues that were pending on the current public agenda as well as items outside the scheduled topics.  City Clerk Thomas Pavlik testified that the City records COW meetings.

The City's response to Plaintiffs' Request No. 29 was clear and definite: "None at this time, investigation continues."  Plaintiffs were not satisfied with this response, and believing that the clinic had been discussed on at least six specific dates, they brought their motion to compel the City to provide transcripts or recordings of those meetings.[1]  The City responded by arguing that minutes of City Council meetings showed that the clinic's license application was not discussed in closed sessions between the end of 2008 and a November 23, 2010 session.  Moreover, the City had already destroyed tapes for the 2008 meetings in reliance on the provisions of the OMA.  The City further claimed that tapes of the intervening sessions up to November 23, 2010 were unresponsive to Request No. 29.

---

[1] These dates included April 8, 2008, July 8, 2008, November 11, 2008, November 9, 2010, and November 23, 2010.  (Motion to Compel at p. 3.)

The City made no objection to the scope or potential ambiguity of Request No. 29 in either its discovery response or in its response to the motion to compel.[2]  Nevertheless, the Court found that it should be interpreted more broadly than the City had done to include *all* issues related to the clinic, not just its license application.  The Court ordered the City to produce tapes or minutes of discussions related to the broader range of topics that Request No. 29 included.  The Court also rejected the City's argument that discussions at the November 23 meeting were privileged merely because the City's attorney was present.  The City did not make any argument concerning what confidential communications, if any, had been made at the meeting, had not properly asserted a privilege objection in its discovery response, and had not provided a privilege log to either Plaintiffs or the Court.  As the Court noted, this was insufficient to show that the attorney-client privilege applied to the November 23 meeting.  Instead, the City based its answer to Request No. 29 – "None at this time" – on its own decision that a privilege exempted the City from disclosing the existence of the minutes or tapes of the November 23 meeting.[3]

The City subsequently filed its motion to clarify and asked the Court to reconsider portions of its ruling.  For the first time, the City objected to the scope of Request No. 29 and contended that it did not include transcripts or recordings of closed sessions of the City Council because the request mentioned only "proceedings," an argument reiterated at the hearing on the City's motion.  The Court rejected this distinction and found that Plaintiffs were plainly asking

---

[2]  The City first raised such objections in its motion to strike Plaintiffs' reply brief as part of the motion to compel.  The Court did not consider the motion to strike because the City did not notice it for a hearing before the Court's order was issued.  The City later withdrew its motion.

[3]  After the City provided a proper privilege log, together with copies of the relevant transcripts for an *in camera* review, the Court agreed that the November 23 meeting was protected by the attorney-client privilege.

for items related to *all* City Council meetings, open as well as closed. The City also submitted two additional items. A "corrective affidavit" of City Clerk Pavlik showed for the first time that the clinic had, in fact, been discussed at the July 22, 2008 meeting. The affidavit was based on the newly-discovered fact that two closed sessions had taken place on that date, and it corrected Pavlik's earlier affidavit testimony that the clinic was not discussed on July 22. Second, the City submitted a privilege log for the first time, claiming that minutes and recordings of the July 22, 2008 and November 23, 2010 meetings were protected by the attorney-client privilege. The Court rejected the log because it was not specific enough to allow a meaningful assessment of the attorney-client privilege, and the Court ordered to City to produce the relevant documents, together with a proper privilege log, for an *in camera* review.

The City did so, but its amended privilege log greatly expanded the scope of both the documents at issue and the privileges asserted. Based presumably on the Court's rejection of the City's distinction between "meetings" and "proceedings," the City now claimed that the clinic was discussed at twelve City Council meetings ranging from May 27, 2008 through November 23, 2010. It also asserted the legislative privilege, the deliberative process privilege, and the settlement privilege for many entries, including the two meetings that had previously been the only ones allegedly protected by the attorney-client privilege. The Court addressed the City's arguments in full, finding that some of the claimed privileges applied and some did not. The City was required to produce minutes and transcripts of relevant meetings that were not privileged. *See Buonauro v. City of Berwyn*, No. 08 C 6687, 2011 WL 2110133 (N.D. Ill. May 25, 2011).

On May 23, 2011, two days before the Court issued its order, Plaintiffs filed their motion for partial summary judgment and the instant motion for sanctions with Judge Coleman, who referred the sanctions motion to this Court for a decision.

## II. <u>Legal Standard</u>

Courts have the power to impose discovery sanctions either pursuant to Fed. R. Civ. P. 37(b)(2), which requires the violation of a court order, or under its own "inherent power to impose sanctions for the abuse of the judicial system, including the failure to preserve or produce documents." *Northington v. H & M Int'l*, No. 08 C 6297, 2011 WL 663055, at *12 (N.D. Ill. Jan. 12, 2011); *see also Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993) (stating that this power stems from a court's authority to manage its own affairs). The analysis is the same under either standard. *Danis v. USN Communications, Inc*., No. 98 C 7482, 2000 WL 1694325, at *30 (N.D. Ill. Oct. 20, 2000).

When a party first reasonably foresees that litigation is on the horizon, it is required to suspend its ordinary policies governing how information is retained or destroyed and to put into place a litigation hold to preserve relevant material. *Krumwiede v. Brighton Associates, L.L.C.*, No. 05 C 3003, 2006 WL 1308629, at *8 (N.D. Ill. May 8, 2006) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003)). This extends to all evidence that is discoverable under Fed. R. Civ. P. 26. *Wiginton v. Ellis*, No. 02 C 6832, 2003 WL 22439865, at *4 (N.D. Ill. Oct. 27, 2003). In analyzing whether sanctions are appropriate, a court is guided by three factors: (1) a breach of the duty to preserve or produce documents; (2) the level of culpability for the breach; and, (3) the prejudice that results from the breach. *Danis*,

2000 WL 1694325, at *31. Sanctions can be imposed on a finding of bad faith, wilfulness, or fault, *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994), and are proper only when a party knew or had reason to know that litigation was on the horizon. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).

Fault can suffice for less harsh sanctions, but bad faith is required for a severe sanction such as dismissal or an adverse inference. *Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422, 428 (7th Cir. 2010) ("In order to draw an inference that the missing documents contained information adverse to the defendants, [Plaintiff] must demonstrate that the defendants intentionally destroyed the documents in bad faith."). The crucial element is not whether a party failed to preserve documents, but the reason for their destruction. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008). In this context, bad faith means "destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). This can be shown by conduct that is either intentional or reckless. *See Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) (stating that "wilfulness and bad faith are associated with conduct that is intentional or reckless"); *see also Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992) (stating that bad faith "is characterized by conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order"); *Rosenthal Collins Group, LLC v. Trading Technologies Int'l, Inc.*, No. 05 C 4088, 2011 WL 722467, at *11 (N.D. Ill. Feb. 23, 2011) (Coleman, J.) (finding that severe sanctions require only gross negligence or recklessness); *Grubb v. Board of Trustees of the Univ. of Illinois*, 730 F. Supp.2d 860, 863-64 (N.D. Ill. 2010); *Northington*, 2011 WL 663055, at *13.

### III.  Discussion

Plaintiffs' argument is direct and to the point: the City was obligated to preserve tapes and transcripts of all closed City Council meetings in which the clinic was discussed once the City had reason to know that litigation was on the horizon; the fact that the City destroyed a number of the relevant City Council recordings violated this duty, and sanctions are warranted for spoliating evidence that should have been preserved.  The City responds on four grounds: (1) Request No. 29 was ambiguous and did not refer to closed sessions; (2) the City did not act in bad faith because any destruction that took place was authorized by the OMA and the City Code; (3) the City preserved evidence as soon as it had adequate notice that it was required to do so; and, (4) sanctions are not warranted because most of the 2008 sessions were protected by various privileges.  As discussed below, the City's arguments are not persuasive because they fail to account for the full range of obligations that took effect once the City had reason to know that Plaintiffs would file suit to contest the City's consideration of their license application.

The Court has already rejected the first of the City's arguments in the hearing on the City's motion to clarify.  The City argued at that point that it could not conclude from Request No. 29's use of the word "proceeding" that Plaintiffs were asking for recordings and minutes of closed sessions; the City contended that a "proceeding" involves meetings where the City Council had the authority to make official decisions and that closed sessions did not fall within this category.  (Def's. Mot. to Clarify at 6-7.)  The Court emphatically rejected this distinction at the hearing, and the City has presented no other reason in its current response supporting a claim that Plaintiffs' request is ambiguous.  Request No. 29 explicitly refers to "all transcripts or audio recordings" that relate to the topics raised in the previous twenty-eight requests for production,

"including but not limited" to the "proceedings" on which the City relies to make its strained distinction. Plaintiffs' other requests included COW meetings, the Council's reconsideration of the clinic's application, and "any City Council . . . *meetings* or hearings related to the" license. (Mot. to Compel, Ex. 1 at ¶¶ 15, 18, 19) (emphasis added). These requests do not distinguish between closed and open Council meetings, and the City's reliance on the Council's decision-making authority as a means for excluding closed sessions from Request No. 29 unreasonably creates a distinction that is not supported by the language of Plaintiffs' requests or, for that matter, by a common-sense interpretation of Request No. 29 itself.

If the City believed that Request No. 29 was ambiguous, as it now claims, it should have objected to it on that ground in the City's discovery responses. Those responses included several objections to specific requests as being ambiguous and overly broad, but the City did not pose any objection to Request No. 29. It also failed to raise any ambiguity objection in response to Plaintiffs' motion to compel. It was only in its motion to clarify that the City argued that it had objected to Request No. 29 by means of a list of standard objections – ambiguity, breadth, relevance, *etc*. – that was included in its discovery responses as general objections that were not directed to any specific request. As the Court noted, however, courts in this District have rejected such generalized, non-specific objections as improper. *See*, *e.g.*, *In re Aircrash Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 306-07 (N.D. Ill. 1997) (denying similar objections as "pat, generic, non-specific" responses that "are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure."); *United Auto. Ins. v. Veluchamy*, No. 09 C 5487, 2010 WL 749980, at *5 (N.D. Ill. March 4, 2010) (finding that such "boilerplate responses" are waived as improper).

Responses to requests for production must clearly assert the basis of a party's objections to the specific documents in question, and broad objections to all of a party's requests are insufficient. *In re Aircrash Disaster*, 172 F.R.D. at 307. Indeed, some courts have rejected such objections even when they are directed to individual requests but are not tailored to the specific items being sought. *See Novelty, Inc. v. Mountain View Marketing, Inc*., 265 F.R.D. 370, 375 (S.D. Ind. 2009) (stating that general objections, "whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all – and will not be considered."). The City provides no argument in its response to the instant motion on why the Court erred in its decision or why the City's generalized list of objections was proper. The City also fails to explain why it did not raise these objections in response to Plaintiffs' motion to compel. Thus, the City cannot rely at this point on a claim that Request No. 29 was ambiguous when it did not raise that issue at the appropriate time earlier.

The City's second argument that Plaintiffs' September 5, 2008 FOIA request did not put it on notice that litigation was on the horizon is equally misplaced. In fact, it is essentially moot at this point because the City conceded at the hearing on the motion that the City knew that there was "possible litigation" even as early as May 27, 2008. The record evidence confirms the basis for the City's admission. Minutes for the closed COW meeting on May 27 were earlier submitted to the Court for an *in camera* review, and the Court found that all but nine lines of the minutes were protected by the attorney-client privilege. The nine non-privileged lines clearly show that the Council's denial of the Zoning Board's recommendation was before the Council and that the Council understood that its consideration of this issue included potential litigation. The minutes' heading unambiguously states, "[p]ending litigation, agenda item J-9, regarding the Bobby Buonauro Clinic." In light of the City's concession that it had reason to believe that

litigation was "possible" as of May 27, 2008, the Court finds that the City's litigation hold responsibilities began on that date.

Even if the May 27 meeting did not put the City on notice that Plaintiffs might bring suit against the City, the FOIA request did. The City contends that a FOIA request cannot operate as notice of possible litigation because FOIA is not a substitute for the discovery process.[4] This argument significantly misses the mark because "a formal discovery request is not necessary to trigger the duty to preserve." *Krumwiede*, 2006 WL 1308629, at *8. The proper inquiry is not when a lawsuit was filed, much less when discovery was properly served under the Federal Rules of Civil Procedure, but when a party had "reason to anticipate litigation." *Trask-Morton*, 534 F.3d at 681 (stating that the duty to preserve evidence begins when a party "knew, or should have known, that litigation was imminent"); *Jones v. Bremen High School Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010) (finding that such a duty "arises when a reasonable party would anticipate litigation"); *Larson v. Bank One Corp.*, No. 00 C 2100, 2005 WL 4652509, at *10 (N.D. Ill. Aug. 18, 2005) ("Even prior to a complaint, however, a party may have a duty to preserve when it has notice of pending litigation or that litigation is likely to commence.").

Plaintiffs' FOIA requests are virtually identical to their later requests for production, and the City also relies on the same argument discussed above: the FOIA requests did not distinguish between closed and open meetings, and the City had no reason to believe that Plaintiffs were

---

[4] The City's response goes farther and shifts the responsibility in this matter to Plaintiffs by arguing that they failed to indicate that the City's FOIA responses were inadequate and waited until May 7, 2010 to serve their discovery requests. As stated above, this argument overlooks that the duty to preserve evidence is not triggered by formal discovery demands but by a party's reasonable notice that litigation is in the works. The City knew this long before the 2010 discovery requests were issued, and the City's preservation obligations pre-dated Request No. 29.

asking for recordings of the closed meetings.  This contention fails for the same reasons the

City's ambiguity argument concerning Request No. 29 falls short.  Plaintiffs' requests were both

specific and wide-ranging, and any distinction between closed and open meetings is misplaced at

best.

Moreover, the City's argument misapprehends the proper analysis at issue here.  The

relevant question is not whether the FOIA requests *specifically* notified the City that Plaintiffs

were seeking recordings of the closed meetings, but whether a reasonable party would have

anticipated litigation in light of the FOIA requests.  Whether the FOIA requests specified

recordings of closed minutes or not does not define the scope of the City's duties that arose once

such notice was given.  A defendant who reasonably foresees litigation cannot pick and choose

what potential evidence should be preserved and what can be destroyed.  Instead, a litigant must

"preserve what it knows, or reasonably should know, is relevant in the action, is reasonably

calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested

during discovery, and/or is the subject of a pending discovery request."  *Danis*, 2000 WL

1694325, at *32; *see also Northington*, 2011 WL 663055, at *11 ("A party's duty to preserve

extends to evidence over which it had control and reasonably knew or could reasonably foresee

was material to a potential legal action.") (internal quotes and citation omitted).  In light of the

City's admission that it knew as of May 27, 2008 that litigation was possible, the Court finds that

its duty to preserve evidence potentially relevant to Plaintiffs' concerns over the treatment of its

application to operate a methadone clinic in the City arose as of that date and that the City's duty

to preserve evidence extended to all City Council meetings, open or closed, in which items

related to that issue were discussed.

It is undisputed that the City did not do so. As its third defense, the City argues that it was justified in erasing the tapes for the 2008 closed meetings in reliance on the OMA and the City's own Code.[5] The OMA permits a public body like the City to destroy recordings of its closed sessions after eighteen months have elapsed from the time of the meeting. However, the City's reliance on the OMA and its own Code as a justification for erasing tapes it knew or should have known would be relevant to pending litigation is misplaced under these facts. The City has provided no authority for the proposition that the City can rely on a statute like the OMA to erase tapes that it should have known were relevant to a forthcoming lawsuit. The City does not contend, for example, that the OMA's provisions somehow trump its well-established obligation to preserve evidence under federal law. The eighteen-month preservation period required by the OMA for the earliest closed session at issue – May 27, 2008 – did not expire until around November 27, 2009, over one year after this suit was actually filed on November 21, 2008. The City's obligation not to erase recordings of its closed sessions, therefore, was governed at all relevant times by federal law, and the City has presented no explanation of why it should be excused from that duty by relying on the OMA.[6] Whether or not its actions in doing

---

[5] Plaintiffs contend that the City was required by the OMA to give prior notice to the State Archivist before doing so, but the OMA states that recordings "may be destroyed without notification to or the approval of a records commission or the State Archivist . . . ." 5 ILCS 120/2.06(c). Notwithstanding, the OMA allows such action only after "the public body approves the destruction of a particular recording." *Id.* Plaintiffs argue that the City did not do so, and the City has not responded to this claim. In fact, City Clerk Pavlik testified that he erased recordings of the 2008 closed session meetings pursuant to a City Council resolution passed in either January, 2006 or January, 2007. (App., Ex. SS at 22.) The City has pointed to no evidence that the erasure of any "particular recording" in this case was ever approved.

[6] By contrast, in cases arising under a federal court's diversity jurisdiction, which is not the case here, a party's pre-suit duty to preserve evidence is governed by state law. *Allstate Ins. Co. v. Sunbeam*, 53 F.3d 804, 806 (7th Cir. 1995); *Thomas v. Bombardier-Rotax Motorenfabrik,*
(continued...)

so constitute bad faith is discussed more fully below. The City's argument at this point, however, is that it was not even at *fault* for failing to preserve the tapes because state law authorized such action. In the absence of any argument supporting such a claim, the Court is not persuaded that is the case.

The City next argues that it was not at fault because discussions in the closed COW meetings were privileged, and Plaintiffs have not been prejudiced by their destruction because the tapes would never have been discoverable. The City made clear at the hearing that its argument is based on the assumption that a litigant can discard evidence based on its own decision that a privilege will protect that evidence from discovery. Moreover, the City contends, Plaintiffs have all that they would ever have been entitled to because the City has already turned over the non-privileged portions of the minutes of the closed meetings in accordance with the Court's order.

The Court finds these arguments unpersuasive. The City has not cited any authority for its contention that it had the right to destroy evidence based on a *sua sponte* assessment that it was privileged. *See Zimmerman v. Poly Prep Country Day School*, No. 09 CV 4586, 2011 WL 1429221, at *20 (E.D.N.Y. April 13, 2011) (noting the absence of caselaw supporting such a claim). Here, the eighteen-month period for each of the closed sessions expired after this case was filed. Once litigation begins, both the letter and the spirit of Fed. R. Civ. P. 26(b)(5) require a party served with discovery requests to provide a privilege log concerning relevant documents it believes are responsive but protected by a privilege. Rule 26(b)(5) expressly states that:

---

[6](...continued)
*GmbH*, 869 F. Supp. 551, 553-54 (N.D. Ill. 1994).

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). The responding party also bears the burden of demonstrating that the claimed privileges apply on a document-by-document basis. *See*, *e.g.*, *MSTG, Inc. v. AT&T Mobility LLC*, No. 08 C 7411, 2011 WL 221771, at *10 (N.D. Ill. Jan 20, 2011). A litigant cannot withhold documents after it is served with discovery requests based merely on its own decision that a privilege exists, and the failure to provide a privilege log can result in a waiver of the protection that would otherwise be available. *See United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *Babych v. Psychiatric Solutions, Inc*., 271 F.R.D. 603, 608 (N.D. Ill. 2010) ("[A] timely and adequate privilege log is required by the federal rules, and . . . failure to serve an adequate privilege log may result in a waiver of any protection from discovery.").

The City's position means that entirely different rules would apply to litigants after suit is filed but before formal discovery begins. The Court recognizes that the duty to preserve evidence extends to what would be discoverable under Rule 26, *Wiginton*, 2003 WL 22439865, at *4, and privileged information is protected from discovery (though Rule 26(b)(5) describes such privileged evidence as "otherwise discoverable"). But Rule 26 itself does not authorize the kind of blanket immunity from revealing the very existence of information a party believes is privileged, and the Court sees no reason why litigants should play by different rules before discovery starts. Privileges can be difficult to apply, and even litigants arguing in good faith

frequently assert privileges that courts later find do not apply. Indeed, this Court did so in this case by finding that not all portions of the documents submitted for an *in camera* review were protected and that some of the City's claimed privileges were not applicable at all. If the City could destroy evidence before discovery is served merely on the basis of its assumption that a privilege would apply during formal discovery, significant and relevant evidence might not be available at a later date. Moreover, as the spoliated evidence would by definition never be available for a proper privilege review, courts could never assess whether a party's belief that a privilege existed was well founded, and parties rather than courts would essentially be in charge of deciding how and when privileges should apply to evidence. The result would be that a meaningful privilege review could never take place for documents that are destroyed based on a party's own decision about whether they are protected by a privilege.

The City's argument also assumes that because the Court found the minutes of some of the closed meetings to be privileged, therefore the full transcripts would also have been privileged had they been available for review. But this argument overlooks that minutes of a meeting are not the same as a full and accurate transcript of what transpired in the meeting itself. If transcripts of the missing recordings were available, the Court's examination might have resulted in a finding that not all of the transcript material was privileged. This was the case for material earlier submitted by the City for an *in camera* review, where some transcripts of meetings were found to be privileged only in part. The fact that the Court found the minutes of some closed sessions to be privileged does not mean that all portions of the transcripts would also have been protected in full. The Court's analysis of the minutes and transcripts began with the transcripts themselves, as these were far more detailed and showed the context in which statements were made. Only then did the analysis extend to the minutes' summary accounts.

The context in which statements occur can be a critical element in determining whether privileges apply. *See United States v. Cohn*, 303 F. Supp.2d 672, 684 (D. Md. 2003) ("To determine whether communications were made primarily for the purpose of providing legal services, the court must consider the context in which they were made.").  But that is what is missing here, and the City cannot claim, without more, that Plaintiffs are not prejudiced by the tapes' destruction merely because the transcripts could have been privileged.

For similar reasons, the Court also finds unpersuasive the City's argument that Plaintiffs are not prejudiced by the erased tapes because it has provided minutes of those closed meetings. Minutes are only summaries of the particulars that are discussed at City Council meetings and do not necessarily reflect the full range of details that would be shown by a transcription of the meetings themselves.  This is easily seen in the documents submitted for an *in camera* review. The minutes for the November 23, 2010 meeting, for example, contain a one paragraph summary of a thirty-seven page transcript.  Although the minutes accurately reflect that certain "discussions" ensued and even detail some of the comments made, they omit many of the specific remarks that were offered at the meeting.  This is both necessary and appropriate in writing minutes, which are not intended to replace a full transcript of the discussions.  But in their efforts to find evidence supporting the claim that the City acted with an improper motive, Plaintiffs are seeking specific, and potentially more elaborate, comments that might support Plaintiffs' version of events in this case.  This is the very evidence whose discovery is now precluded by the City's action.  *See Marrocco*, 966 F.2d at 223 ("We find it ironic that the plaintiffs also contend that GM has not adequately explained what an intact bearing assembly would have shown, for it was the plaintiffs' own misconduct which prevented GM from acquiring that very information.  Perhaps that evidence was an irreplaceable part of GM's

- 18 -

defense . . . . Then again, perhaps not. But therein lies the prejudice – GM was denied any opportunity to find out one way or the other.").

The City's second privilege log strongly suggests that discussions at the closed sessions appear to have been relevant to Plaintiffs' claims. The log states that the City Council discussed the City's "motivations and intent" at the May 27, June 24, and July 22, 2008 meetings, and the City indicates that at least some relevant information concerning the City's response to the clinic's application could have been part of the erased tapes. The City does not dispute that this is what Plaintiffs are trying to discover in this matter, either by demonstrating the City's motive or by showing that its purported reasons for denying the license application were pretextual. *See DeLuca v. Winer Inds., Inc.*, 53 F.3d 793, 797 (7th Cir. 1995); *Anderson v. United Conveyor Supply Co.*, 461 F. Supp.2d 699, 707-08 (N.D. Ill. 2006) (outlining the standards for proving ADA claims). Whether they would, in fact, be relevant or discoverable is speculative at this point because the tapes have been erased, and the City cannot invoke a privilege for evidence it decided to destroy.

Based on these facts, the Court finds that the City's unwarranted erasure of the closed meeting prevents Plaintiffs from "using evidence essential to its underlying claim," *Krumwiede*, 2006 WL 1308629, at *10, and that Plaintiffs have been prejudiced. Prejudice occurs when the lost evidence prevents a party from using evidence essential to its underlying claim. *Langley by Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997); *Krumwiede*, 2006 WL 1308629, at *10. Some courts in this District have presumed both bad faith and prejudice when parties have altered or destroyed evidence. *See, e.g., Rhodes v. LaSalle Bank, N.A.*, No. 02 C 2059, 2005 WL 281221, at *3 (N.D. Ill. Feb. 1, 2005) ("The decisions in these cases are premised on the fact that a litigant cannot be permitted to say 'opps, [sic] you've caught me,' and thereafter be

'allowed to continue to play the game.'" (citing *Dotson v. Bravo*, 202 F.R.D. 559, 570 (N.D. Ill. 2001)).

The City defends itself against Plaintiffs' claim that it acted in bad faith by relying primarily on the procedures provided under the OMA and its own destruction policies, as discussed above. The Court rejects this argument for the reasons stated earlier. More broadly construed, the City appears to be contending that it could not have acted in bad faith because its actions were taken pursuant to its ordinary course of business. This is a potentially successful argument because the destruction of evidence by means of a party's ordinary document retention policy can be a sign that it did not act in bad faith. *See Diersen v. Walker*, No. 00 C 2437, 2003 WL 21317276, at *7 (N.D. Ill. June 6, 2003); *see also Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 681 (7th Cir. 1985) (stating that a litigant's usual practice of eliminating data or records is not an indication of bad faith when the party was not on notice that a suit was likely to be filed). As this Court has explained, however, a party's internal policies cannot operate under all circumstances as a shield against the fundamental duty to preserve evidence. At a certain point, "the failure to prevent the destruction of relevant documents crosses the line between negligence and bad faith, even where the documents are destroyed according to a routine document retention policy." *Krumwiede*, 2006 WL 1308629, at *8. *See also Wiginton*, 2003 WL 22439865, at *7 ("However, once a party is on notice that specific relevant documents are scheduled to be destroyed according to a routine document retention policy, and the party does not act to prevent that destruction, at some point it has crossed the line between negligence and bad faith."); *MacNeil Automotive Prods. Ltd. v. Cannon Automotive Ltd*., No. 08 C 139, 2010 WL 5904124, at *6 (N.D. Ill. Nov. 2, 2010).

The City argues that it has not crossed that line and relies on *Jacobeit v. Rich Township School Dist.*, No 09 C 1924, 2011 WL 2039588 (N.D. Ill. May 25, 2011).  In *Jacobeit*, a school district erased an April 15, 2008 recording of a school board meeting at which the board discussed an administrative grievance by an assistant coach concerning his alleged wrongful termination.  The erasure took place approximately eighteen months after the hearing, and after the date on which the district's duty to preserve evidence arose when the plaintiff filed an EEOC complaint alleging race, age, and disability discrimination.  The court found that the district did not act in bad faith, in part, because it erased the tape in accordance with its ordinary retention policy and, in part, because the district had no reasonable ground to believe at the time of the erasure that the tapes' topic – the wrongful termination grievance – was related to the EEOC charges that were filed after the board meeting.  *Jacobeit*, 2011 WL 2039588, at *5-6.

This case is distinguishable from *Jacobeit* on each of these grounds.  Unlike *Jacobeit*, the City has no reasonable basis for claiming that it did not understand that the discussions that took place in the closed meetings could have been relevant to Plaintiffs' claims.  The City knew that litigation on the license issue was a distinct possibility as of May 27, 2008, and Plaintiffs' September 5, 2008 FOIA requests made the full scope of what Plaintiffs would be requesting very clear.  The City contends that there was a "good faith misunderstanding" on this issue, but any claim that the FOIA requests only sought a limited or ambiguous set of data is seriously misplaced.  These detailed requests left little doubt as to what was at stake, and they did so in a form virtually identical to what later became Plaintiffs' Requests for Production, including Request No. 29 that has generated such a kerfuffle in this case.

Again unlike *Jacobeit*, the City did not destroy only one tape in accordance with its ordinary policy but acted at least four separate times to erase tapes for the May 27, June 24,

- 21 -

July 22, and September 9, 2008 meetings. The Court presumes that the City destroyed these recordings in succession as the eighteen-month period elapsed for each one, although the City's response provides little or no explanation of who, where, when, or how the tapes were erased.[7] As the Court understands the circumstances from other parts of the record, City Clerk Pavlik erased the tapes on a rolling basis pursuant to a general authorization from the City Council to do so for all recordings older than eighteen months. Even if the failure to preserve one recording could be construed as constituting less than bad faith, as in *Jacobeit*, the continued failure to preserve several recordings over a more extended period of time cannot, or at least it cannot be understood that way in light of the strained reasoning provided by the City. A party must carry out its preservation duty with diligence by actively ensuring that appropriate steps are taken. *See Danis*, 2000 WL 1694325, at *32 (stating that the duty "must be discharged actively").

The Court is troubled by the City's failure to explain why it took no action to preserve evidence, other than the mistaken contention that it was not obligated to do so. The eighteen-month period for each of the contested dates in this case expired after this suit was filed and long after the relevant City Council meetings occurred. The City had ample time, notice, and opportunity to take appropriate action, and its reason for failing to do so is one of the critical

---

[7] Plaintiffs argue that the City went even farther and erased tapes of meetings on April 8, July 8, and November 11, 2008, which were not included in the City's privilege log and for which not even minutes were produced for an *in camera* review. The City counters that the affidavit of City Clerk Pavlik shows that the clinic's application was not discussed on these dates. The City overlooks, however, that Pavlik's original affidavit was not entirely correct. It had stated that the clinic was not discussed at the July 22, 2008 meeting, but Pavlik was later required to furnish a corrected affidavit stating that further review indicated that a previously undiscovered closed session on July 22 *did* discuss this issue. The Court accepts Pavlik's combined affidavits and notes that the City correctly submitted minutes of that meeting for review. Nevertheless, the City has not explained why it initially overlooked the second closed session on July 22 or what procedures were undertaken to ensure that the same mistake did not take place for the April 8, July 8, and November 11, 2008 meetings.

elements at issue here. *See Faas*, 532 F.3d at 644. The City's response, however, presents no rationale other than what is described above. That is to say, the City essentially admits that it knew what it was doing, acted intentionally, and was justified in doing so. The City does not claim, for example, that it simply forgot to keep the tapes or that the administrative processes involved in erasing them somehow led to confusion or oversight. Either set of reasons, or some other explanatory facts, might lead the Court to find that the City's action resulted from negligence, mistake, or "fault," as that term is used in this context, none of which could support the sanctions that Plaintiffs seek here. But the Court cannot invent reasons for the City's action that the City itself has not put forward, and it is left with the rationales discussed above.[8] Those explanations, however, do not provide a reasonable basis for the City's action.

Therefore, in light of the fact that the City knew that litigation had actually commenced by the time the first tape was erased and knew that the tapes contained information potentially relevant to Plaintiffs' claims, the Court finds that the City destroyed the tapes of the closed meetings with a reckless disregard of its well-established duty to preserve evidence and that its action constitutes bad faith. *See Marrocco*, 966 F.2d at 224 (stating that bad faith "is characterized by conduct which is either intentional or in reckless disregard of a party's obligations[.]"); *Rosenthal Collins Group, LLC*, 2011 WL 722467, at *7 ("A party's failure to preserve evidence alone constitutes bad faith[.]").

---

[8] The City also does not contend that Pavlik was unaware of the duty to preserve evidence, but even if it did make such a claim "a party cannot defend its failure to preserve relevant evidence by arguing that its employees who disposed of such evidence documents were not on notice of the issues involved in the lawsuit or the relevancy of such documents." *Northington*, 2011 WL 663055, at *11. The City's municipal officers had an obligation to communicate that duty to the City Clerk. *Id.*

For these reasons, the Court believes that sanctions are warranted in this case. The Seventh Circuit has directed courts to impose discovery sanctions only in proportion to the offending conduct. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994). Plaintiffs seek the extreme sanction of dismissal or, somewhat less draconian, the still harsh finding that they are entitled to a conclusive inference that the erased recordings prove that the City's actions were motivated by a discriminatory intent. However, courts must be mindful that such penalties should be imposed only infrequently and that lesser sanctions are more appropriate when they serve the purpose of deterring future misconduct by others. *See Grubb*, 730 F. Supp.2d at 864 (citing cases).

The Court finds that under this standard the sanctions Plaintiffs request are too harsh in light of the facts of this case. If the minutes of the closed sessions had not been preserved, Plaintiffs might be entitled to these sanctions. Accordingly, the Court believes that the lesser sanction of an adverse inference is more proportional to the City's conduct. The "bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985) (citation omitted). Such an instruction allows a finder of fact to conclude that the destroyed evidence, "if produced, would have contained information adverse to the [spoliator's] case." *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002). Based on the City's lack of a reasonable basis for destroying the tapes of closed session meetings, the Court concludes that Plaintiffs are entitled to such an adverse inference that, if the tapes were available, they would contain evidence favorable to Plaintiffs in this case.

## IV. Conclusion

For all these reasons, the Court finds that Plaintiffs' motion for sanctions [Dckt. 156] is granted and that sanctions should be imposed on the City for its destruction of potentially relevant evidence, as stated herein.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** August 25, 2011.